SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Paul D. Leake
Lisa Laukitis
Shana A. Elberg
Evan A. Hill
One Manhattan West
New York, New York 10001
Telephone: (212) 735-3000
Fax: (212) 735-2000

*Proposed Counsel to Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *In re* | **Chapter 11** |
| **ENDO INTERNATIONAL plc, *et al.*,** | **Case No. 22-22549 (___)** |
| **Debtors.**[1] | **(Joint Administration Pending)** |

**MOTION OF THE DEBTORS FOR ENTRY OF
INTERIM AND FINAL ORDERS (I) PROHIBITING
UTILITIES FROM ALTERING, REFUSING, OR DISCONTINUING
SERVICE; (II) DEEMING UTILITIES ADEQUATELY ASSURED OF
FUTURE PERFORMANCE; AND (III) ESTABLISHING PROCEDURES FOR
DETERMINING REQUESTS FOR ADDITIONAL ADEQUATE ASSURANCE**

Endo International plc and its debtor affiliates, as debtors and debtors in possession

(collectively, the "Debtors") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"),

respectfully represent in support of this motion (this "Motion") as follows:

---

[1]     The last four digits of Debtor Endo International plc's tax identification number are 3755. Due to the large number of debtors in these chapter 11 cases, a complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/Endo. The location of the Debtors' service address for purposes of these chapter 11 cases is: 1400 Atwater Drive, Malvern, PA 19355.

**RELIEF REQUESTED**

1.      By this Motion, and pursuant to sections 105(a) and 366 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 9013-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules"), the Debtors seek entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** (the "Proposed Interim Order") and **Exhibit B** (the "Proposed Final Order," and together with the Proposed Interim Order, the "Proposed Orders"), respectively, (a) prohibiting the Debtors' utilities (as that term is used in section 366 of the Bankruptcy Code and as described herein, the "Utility Providers") from altering, refusing, or discontinuing service on account of prepetition amounts outstanding or on account of any perceived inadequacy of the Debtors' proposed adequate assurance, (b) determining that the Utility Providers have been provided with adequate assurance of payment within the meaning of section 366 of the Bankruptcy Code, (c) approving the Debtors' adequate assurance procedures as proposed herein and as set forth in the Proposed Orders (the "Adequate Assurance Procedures"), and (d) determining that the Debtors are not required to provide any additional adequate assurance beyond what is proposed by this Motion and the Adequate Assurance Procedures.

**JURISDICTION AND VENUE**

2.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.).  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

3.      Pursuant to the Bankruptcy Rule 7008, the Debtors consent to entry of a final order by this Court in connection with this Motion to the extent that it is later determined that this Court, absent consent of the parties, cannot enter a final order or judgment consistent with Article III of the United States Constitution.

2

4.      Venue of the Chapter 11 Cases and this Motion is proper in this district under 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

5.      On the date hereof (the "Petition Date"), the Debtors each commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors have requested that the Chapter 11 Cases be jointly administered.

6.      The Debtors are authorized to continue to operate their businesses and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7.      As of the date of this Motion, no trustee, examiner, or statutory committee of creditors has been appointed in the Chapter 11 Cases.

8.      Additional information regarding the Debtors, including their business operations, their corporate and capital structure, and the events leading to the commencement of the Chapter 11 Cases is set forth in the *Declaration of Mark Bradley in Support of Chapter 11 Petitions and First Day Papers* (the "First Day Declaration") filed contemporaneously herewith and incorporated herein by reference.

## THE UTILITY SERVICES

9.      In connection with the operation of their business and management of their properties, the Debtors purchase utility services, including, but not limited to, electricity, natural gas, waste, sewer, water, and telecommunications (collectively, the "Utility Services") from the Utility Providers.  Annexed as **Exhibit 1** to each of the Proposed Orders is a list (as may be supplemented from time to time, the "Utilities List") of Utility Providers that provide Utility Services to the Debtors as of the Petition Date.  The relief requested herein is for all Utility Providers providing Utility Services to the Debtors, and is not limited to the Utility Providers listed

on the Utilities List.  The Debtors have made an extensive and good faith effort to identify all of the Utility Providers that provide Utility Services to them and to include such Utility Providers on the Utilities List.  Nonetheless, the Debtors reserve the right to supplement the Utilities List by filing a notice at a later date with the Court, if necessary.

10.     Over the 12-month period ending on June 30, 2022, the Debtors paid an average of approximately $690,000 per month to their current Utility Providers.  To the best of the Debtors' knowledge, there are no material defaults or arrearages with respect to the Debtors' undisputed Utility Services invoices, other than payment interruptions that may be caused by the commencement of the Chapter 11 Cases.

## I.      Proposed Adequate Assurance Deposit

11.     The Debtors intend to pay all undisputed postpetition obligations owed to the Utility Providers in a timely manner.  Cash held by the Debtors and the cash generated in the ordinary course of business will provide sufficient liquidity to pay Utility Service obligations in accordance with prepetition practice.

12.     To provide adequate assurance to the Utility Providers as required under section 366(c) of the Bankruptcy Code, the Debtors propose to deposit a sum equal to two weeks' worth of Utility Services (the "Adequate Assurance Deposit"), calculated as a historical average over the past 12 months.[2]  As of the Petition Date, the Debtors estimate that the Adequate Assurance Deposit will equal $269,081.[3]  The Adequate Assurance Deposit will be deposited into an existing account of the Debtors that is not being used for operations (the "Utility Deposit

---

[2]     In such a situation where the Utility Provider has not provided Utility Services to the Debtors for the past 12 months, the Debtors calculated the Adequate Assurance Deposit using the number of months that the Utility Provider provided such Utility Services to the Debtors (e.g., a value less than 12).

[3]     The adequate assurance to Peco Energy Company as required under section 366(c) of the Bankruptcy Code was reduced by the value of a security bond.

Account"). The Debtors will not use the Utility Deposit Account for any purpose other than holding the Adequate Assurance Deposit. The Adequate Assurance Deposit will be held by the Debtors in the Utility Deposit Account until either (a) the Debtors' termination of Utility Services from such Utility Provider, at the earliest, if there are no outstanding disputes related to postpetition payments due, or (b) the conclusion of the Chapter 11 Cases, if not applied earlier.

13. The Debtors will deposit the Adequate Assurance Deposit in the Utility Deposit Account within 20 days of the Petition Date. The amount allocated for, and payable to, each Utility Provider shall be equal to the amount set forth on the Utilities List as to each Utility Provider or as otherwise agreed.

14. The portion of the Adequate Assurance Deposit attributable to each Utility Provider shall be returned to the Debtors upon the effective date of a chapter 11 plan for the Debtors. Additionally, if the Debtors terminate any of the Utility Services provided by a Utility Provider (after giving prior notice to the Ad Hoc First Lien Group (as defined in the First Day Declaration)), the Debtors request that they immediately be permitted to reduce the Adequate Assurance Deposit to reflect the termination of such Utility Services.

15. The Debtors submit that the Adequate Assurance Deposit, in conjunction with the Debtors' ability to pay for future Utility Services in the ordinary course of business (collectively, the "Proposed Adequate Assurance"), constitutes sufficient adequate assurance to each of the Utility Providers.

## II.     Proposed Adequate Assurance Procedures

16. Notwithstanding the Proposed Adequate Assurance, if any Utility Provider believes additional assurance is required, it may request such additional assurance solely pursuant to the Adequate Assurance Procedures:

(a)     The Debtors or their advisors will provide a copy of this Motion (including the Proposed Final Order) and the order approving the relief requested in this Motion on an interim basis to each of the Utility Providers listed on the Utilities List after entry of such order by the Court.

(b)     If a Utility Provider is not satisfied with the Proposed Adequate Assurance, it must serve a written request (a "Request") upon the Debtors, c/o Endo International plc, 1400 Atwater Drive, Malvern, PA 19355 (Attn: Matthew Maletta, Esq.), proposed counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, One Manhattan West, New York 10001 (Attn: Lisa Laukitis, Esq. (lisa.laukitis@skadden.com), Evan A. Hill, Esq. (evan.hill@skadden.com), and Bram A. Strochlic, Esq. (bram.strochlic@skadden.com)), and counsel to the official committee of unsecured creditors (if any). Should the Debtors receive such a notice, the Debtors shall promptly provide a copy of such notice to the Ad Hoc First Lien Group (email is sufficient). The Request must set forth (i) the location(s) for which Utility Services are provided, (ii) the account number(s) for such location(s), (iii) the outstanding balance for each account and a summary of the Debtors' payment history to such Utility Provider, including whether the Utility Provider holds any deposits or other security, and if so, in what amount, and (iv) an explanation of why the Utility Provider believes the Proposed Adequate Assurance is not sufficient adequate assurance of future payment. The Request must actually be received by the Debtors, the Debtors' proposed counsel, and counsel to the official committee of unsecured creditors (if any).

(c)     If the Debtors determine, in their sole discretion, that a Request (including as such Request may have been modified following negotiation) or any consensual agreement reached in connection therewith is reasonable, the Debtors, after consultation with the Ad Hoc First Lien Group, without further order of the Court, may enter into agreements granting additional adequate assurance to the Utility Provider serving such Request and, in connection with such agreements, provide the Utility Provider with additional adequate assurance of payment, including payments on prepetition amounts owing, cash deposits, prepayments, or other forms of security, with notice to the Office of the United States Trustee for the Southern District of New York, counsel to the Ad Hoc First Lien Group, counsel to the Ad Hoc Cross-Holder Group, and any counsel to any official committee appointed in the Chapter 11 Cases within 15 days of entering into such an agreement.

(d)     If the Debtors, in consultation with the Ad Hoc First Lien Group, determine that a Request is unreasonable, then they promptly shall negotiate with the requesting party and if unable to reach a prompt resolution to the Request, set the matter for hearing at the next regularly scheduled omnibus hearing date in the Chapter 11 Cases. Pending the hearing, the Utility Provider that

is the subject of the unresolved Request may not alter, refuse, or discontinue services to the Debtors.

(e)     Absent compliance with the Adequate Assurance Procedures set forth in this Motion and the Proposed Orders, the Debtors' Utility Providers are prohibited from altering, refusing, or discontinuing service on account of any unpaid prepetition charges and are deemed to have received adequate assurance of payment in compliance with section 366 of the Bankruptcy Code.

## III.   Subsequent Modifications of the Utilities List and Procedures for Subsequently Identified Utility Providers

17.     Although the Debtors have made a diligent and good faith effort to identify all of the Utility Providers that currently provide Utility Services to the Debtors, it is possible that some Utility Providers may not be listed on the Utilities List.  For any additional Utility Providers that the Debtors identify, the Debtors seek authority, in consultation with the Ad Hoc First Lien Group, to (a) file a supplemental notice with the Court (the "Supplemental Notice"), (b) serve a copy of this Motion, the signed order granting this Motion, and the Supplemental Notice on all Utility Providers listed in such Supplemental Notice, and (c) post the Supplemental Notice on the Debtors' case information website located at https://restructuring.ra.kroll.com/Endo.  In addition, the Debtors may, after consultation with the Ad Hoc First Lien Group, increase the Adequate Assurance Deposit in an aggregate amount equal to two weeks of Utility Services provided by such additional Utility Provider, calculated using the Debtors' historical average for such payments over the past 12 months.  The Debtors request that the interim and final orders approving the relief requested in this Motion be binding on all Utility Providers, regardless of whether or when such Utility Provider was added to the Utilities List by Supplemental Notice.

18.     Finally, the Debtors request that the Proposed Orders provide that the Debtors, in consultation with the Ad Hoc First Lien Group, may terminate the services of any Utility Provider by providing written notice (a "Termination Notice") to the Utility Provider.

Upon a Utility Provider's receipt of a Termination Notice, after giving prior notice to the Ad Hoc First Lien Group, the Debtors propose that they be permitted to immediately reduce an amount equal to the Debtors' outstanding obligations to such Utility Provider from the Utility Deposit Account, to the extent of such Utility Provider's proportion of the Adequate Assurance Deposit.

**BASIS FOR RELIEF**

19.     Uninterrupted Utility Services are essential to the Debtors' ongoing operations, and, therefore, maximizing the value of the Debtors' estates.  The Debtors depend on reliable delivery of power and other Utility Services to operate their businesses.  For example, the Debtors' corporate headquarters, manufacturing facilities, research and development facilities, and warehouses all depend on reliable delivery of power and other Utility Services.  Should any Utility Provider alter, refuse, or discontinue service, even for a brief period, the Debtors' operations could be severely disrupted, resulting in immediate and irreparable harm to the Debtors' business operations and jeopardizing the value of the Debtors' assets.

20.     The relief requested herein will ensure that the Debtors' operations will not be disrupted.  Furthermore, the relief requested provides the Utility Providers with a fair and orderly procedure for addressing requests for additional or different adequate assurance.  Without the Adequate Assurance Procedures, the Debtors could be forced to address numerous requests by the Utility Providers in a disorganized manner at a critical period in the Chapter 11 Cases and during a time when the Debtors' efforts could be more productively focused on the continuation of the Debtors' operations for the benefit of all parties-in-interest.

21.     Section 366 of the Bankruptcy Code protects a debtor against the immediate termination of utility services after commencing its case by providing that a utility company may not, during the first 30 days of a chapter 11 case, alter, refuse, or discontinue services to, or discriminate against, a debtor solely on the basis of the commencement of the case or the failure

of the debtor to pay a prepetition debt. 11 U.S.C. § 366. A utility company may, however, alter, refuse, or discontinue service following such 30-day period, if the debtor does not provide "adequate assurance" of payment for postpetition services in a form "satisfactory" to the utility company, subject to the Court's review and approval. *Id*. § 366(b), (c)(2). Pursuant to section 366(c)(3)(B) of the Bankruptcy Code, in determining whether an assurance of payment is adequate, the Court may not consider (a) the absence of security before the petition date, (b) the debtor's history of timely payments, or (c) the availability of an administrative expense priority.

22.     While the Bankruptcy Code provides guidance as to the required nature of adequate assurance, this Court retains the discretion to determine the amount of adequate assurance necessary or to change the fundamental requirement that assurance of payment must simply be adequate. *Compare* 11 U.S.C. § 366(b) ("On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment.") *with* § 366(c)(3)(A) ("On request of a party in interest and after notice and a hearing, the court may order modification of the amount of an assurance of payment under paragraph (2) [which is governed by an adequacy standard].") ; *see also In re Circuit City Stores, Inc.*, No. 08-35653, 2009 Bankr. LEXIS 237, at *15-16 (Bankr. E.D. Va. Jan. 14, 2009) (finding that determinations of adequate assurance remain within the Court's discretion).

23.     Courts construing section 366(b) of the Bankruptcy Code have long recognized that in determining adequate assurance, the Court is not required to give the Utility Providers the equivalent of a guaranty of payment but must only determine that the utility is not subject to an unreasonable risk of nonpayment for postpetition services. *In re Santa Clara Circuits West, Inc.*, 27 B.R. 680, 685 (Bankr. D. Utah 1982) ("[A]dequate assurance of payment does not

mean guaranty of payment; but the Court must find that the utility is not subject to an unreasonable risk of future loss.") (quoting *In re George C. Frye Co.*, 7 B.R. 856, 858 (Bankr. D. Me. 1980)); *see also In re Circuit City Stores, Inc.*, 2009 Bankr. LEXIS 237, at *12 ("A debtor need not provide utility companies an absolute guarantee of payment."); *accord Long Island Lighting Co. v. Great Atl. & Pac. Tea Co. (In re Great Atl. & Pac. Tea Co.)*, No. 11-CV-1338 (CS), 2011 U.S. Dist. LEXIS 131621, at *18 (S.D.N.Y. Nov. 14, 2011); *S. Cal. Edison Co. v. Crystal Cathedral Ministries (In re Crystal Cathedral Ministries)*, 454 B.R. 124, 131 (C.D. Cal. 2011); *In re New Rochelle Tel. Corp.*, 397 B.R. 633, 639 (Bankr. E.D.N.Y. 2008); *Steinebach v. Tucson Elec. Power Corp. (In re Steinebach)*, 303 B.R. 634, 641 (Bankr. D. Ariz. 2004); *In re Adelphia Bus. Sols., Inc.*, 280 B.R. 63, 80 (Bankr. S.D.N.Y. 2002). Historically, whether a utility is subject to an unreasonable risk of nonpayment must be determined from the facts and circumstances of each case. *See In re Santa Clara Circuits West*, 27 B.R. at 685; *see also In re Adelphia Bus. Sols., Inc.*, 280 B.R. at 80; *accord Long Island Lighting Co.*, 2011 U.S. Dist. LEXIS 131621, at *18; *Mass. Elec. Co. v. Keydata Corp. (In re Keydata Corp.)*, 12 B.R. 156, 158 (B.A.P. 1st Cir. 1981). While section 366(c) of the Bankruptcy Code limits the factors a court may consider, determinations of adequate assurance remain within the Court's discretion. *Cf. Long Island Lighting Co.*, 2011 U.S. Dist. LEXIS 131621, at *20; *Steinebach*, 303 B.R. at 641 ("Bankruptcy courts are afforded reasonable discretion in determining what constitutes adequate assurance including discretion to determine that no deposit or other security is necessary."); *In re Adelphia Bus. Sols., Inc.*, 280 B.R. at 80 ("Whether utilities have adequate assurance of future payment is determined by the individual circumstances of each case."); *Marion Steel Co. v. Ohio Edison Co. (In re Marion Steel Co.)*, 35 B.R. 188, 198 (Bankr. N.D. Ohio 1983) ("The determination of what constitutes 'adequate

assurance of payment' thus rests in the sound discretion of the trial court based on the facts and circumstances of each case." (citation omitted)).

24.     Here, the Debtors believe that the Utility Providers have "adequate assurance of payment" even without the proposed Adequate Assurance Deposit.  The Debtors have significant cash on hand, which will enable them to pay their operating costs, including any utility costs, as they come due.  The Debtors thus anticipate having sufficient resources to pay, and intend to pay, any and all valid postpetition obligations for Utility Services in a timely manner.

25.     In addition, the Debtors' reliance on Utility Services for the operation of their businesses provides them with a powerful incentive to stay current on their utility obligations. These factors, which the Court may (and should) consider when determining the amount of any adequate assurance payments, justify a finding that no adequate assurance payments are required in the Chapter 11 Cases.  Indeed, the Debtors respectfully submit that the Proposed Adequate Assurance is more than sufficient to assure the Utility Providers of future payment.

26.     Notwithstanding the foregoing, the Debtors believe that the Proposed Adequate Assurance and the Adequate Assurance Procedures are reasonable, satisfy the requirements of section 366(b) and (c)(2) of the Bankruptcy Code, and are necessary for the Debtors to carry out their reorganization efforts.  If they are not approved, the Debtors could be forced to address payment requests by any Utility Provider in a disorganized manner, which would distract management from focusing on the Debtors' reorganization.  Moreover, on the 30th day following the Petition Date, the Debtors could be surprised by a Utility Provider unilaterally (a) deciding that it is not adequately protected, (b) discontinuing service, or (c) making an exorbitant demand for payment to continue service.  Such discontinuation of Utility Service could jeopardize the Debtors' reorganization efforts.

27.     The Debtors' proposed Adequate Assurance Procedures also provide each Utility Provider with a fair and orderly process for seeking modification of the Proposed Adequate Assurance while protecting the Debtors from being forced to address numerous additional assurance requests in a disorganized manner at a time when the Debtors' efforts could be more productively focused on the seamless continuation of their operations in chapter 11.

28.     Here, notwithstanding the Debtors' belief that the Proposed Adequate Assurance constitutes sufficient adequate assurance, any rights the Utility Provider believe they have under sections 366(b) and (c)(2) of the Bankruptcy Code are wholly preserved under the Adequate Assurance Procedures. *See In re Circuit City Stores, Inc.*, No. 08-35653, 2009 WL 484553, at *6 (Bankr. E.D. Va. Jan. 14, 2009) (adopting similar adequate assurance procedures and holding that "notwithstanding [a] determination on an interim basis that the adequate assurance proposed by the [d]ebtors constitute[d] sufficient adequate assurance under 366(b), [the] utility companies . . . [could still] exercise their rights under 366(c)(2) in accordance with the [p]rocedures established by the [c]ourt"). The Utility Providers still may choose, in accordance with the established Adequate Assurance Procedures, to request modification of the Proposed Adequate Assurance. *See id.* On the other hand, the Adequate Assurance Procedures avoid a haphazard and chaotic process whereby each Utility Provider could make an extortionate, last-minute demand for adequate assurance, which the Debtors would be pressured to pay under the threat of losing critical Utility Services. *See id.*

29.     The relief requested in this Motion, including the Adequate Assurance Procedures proposed herein, is similar to the relief granted in this district in recent chapter 11 cases. *See, e.g.*, *In re Grupo Aeromexico, S.A.B. de C.V.*, Case No. 20-11563 (SCC) (Bankr. S.D.N.Y. Jul. 20, 2020) [Docket No. 135]; *In re Purdue Pharma L.P.*, Case No. 19-23649 (RDD)

(Bankr. S.D.N.Y. Oct. 16, 2019) [Docket No. 310]; *In re Synergy Pharms. Inc.*, Case No. 18-14010 (JLG) (Bankr. S.D.N.Y. Jan. 24, 2019) [Docket No. 261]; *In re Sears Holdings Corp.*, Case No. 18-23538 (RDD) (Bankr. S.D.N.Y. Nov. 5, 2018) [Docket No. 461]; *In re CM Wind Down Topco Inc.*, Case No. 17-13381 (SCC) (Bankr. S.D.N.Y. Dec. 21, 2017) [Docket No. 150]; *In re 21st Century Oncology Holdings, Inc.*, Case No. 17-22770 (RDD) (Bankr. S.D.N.Y. June 20, 2017) [Docket No. 135]; *In re DACCO Transmission Parts (NY), Inc.*, Case No. 16-13245 (MKV) (Bankr. S.D.N.Y. Dec. 22, 2016) [Docket No. 140]; *In re Fairway Grp. Holdings, Corp.*, Case No. 16-11241 (MEW) (Bankr. S.D.N.Y. June 1, 2016) [Docket No. 133]; *In re SunEdison, Inc.*, Case No. 16-10992 (SMB) (Bankr. S.D.N.Y. May 12, 2016) [Docket No. 254].[4]

30.     Based on the foregoing, the Debtors submit that the relief requested herein is in the best interests of the Debtors' estates and their creditors, is in keeping with the spirit and intent of section 366 of the Bankruptcy Code and is not prejudicial to the rights of any Utility Provider.

## RESERVATION OF RIGHTS

31.     Nothing contained herein is or should be construed as: (a) an implication or admission as to the validity of any claim against the Debtors, (b) a waiver of the Debtors' or any other party-in-interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtors, (c) a waiver of any claims or causes of action that may exist against any creditor or interest holder, (d) a promise to pay any claim, (e) a concession by the Debtors that any liens (contractual, common law, statutory or otherwise) satisfied pursuant to this Motion are valid (and all rights to contest the extent, validity or perfection or seek avoidance of all such liens are

---

[4]     Because of the voluminous nature of the orders cited herein, they are not attached to this Motion.  Copies of these orders, however, are available on request.

expressly reserved), (f) an approval, assumption, adoption, or rejection of any agreement, contract, program, policy, or lease between the Debtors and any third party under section 365 of the Bankruptcy Code, (g) a waiver of the obligation of any party in interest to file a proof of claim, or (h) otherwise affecting the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease.  If this Court grants the relief sought herein, any payment made pursuant to this Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

### DEBTORS HAVE SATISFIED BANKRUPTCY RULE 6003(B)

32.     Bankruptcy Rule 6003 provides that the relief requested in this Motion may be granted if the "relief is necessary to avoid immediate and irreparable harm."  Fed. R. Bankr. P. 6003; *see also In re First NLC Fin. Servs., LLC*, 382 B.R. 547, 549-50 (Bankr. S.D. Fla. 2008) (holding that Bankruptcy Rule 6003 permits entry of retention orders on an interim basis to avoid irreparable harm).  The Second Circuit has interpreted the language "immediate and irreparable harm" in the context of preliminary injunctions.  In that context, the Second Circuit has instructed that irreparable harm "'is a continuing harm which cannot be adequately redressed by final relief on the merits' and for which 'money damages cannot provide adequate compensation.'" *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002) (quoting *N.Y. Pathological & X-Ray Labs., Inc. v. INS*, 523 F.2d 79, 81 (2d Cir. 1975)).  Furthermore, the "harm must be shown to be actual and imminent, not remote or speculative." *Id.*; *see also Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1999).  The Debtors submit that, for the reasons already set forth herein, the relief requested in this Motion is necessary to avoid immediate and irreparable harm.

## **WAIVER OF STAY UNDER BANKRUPTCY RULE 6004(H)**

33.     The Debtors also request that this Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the court orders otherwise." Fed. R. Bankr. P. 6004(h). As described above, the relief that the Debtors seek in this Motion is necessary for the Debtors to operate without interruption and to preserve value for their estates. Accordingly, the Debtors respectfully request that this Court waive the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent applicable, as the exigent nature of the relief sought herein justifies immediate relief.

## **NOTICE**

34.     Notice of this Motion shall be given to (a) the Office of the United States Trustee for the Southern District of New York; (b) counsel to the administrative agent under the Debtors' prepetition credit agreement; (c) counsel to the indenture trustee under each of the Debtors' outstanding bond issuances; (d) Gibson, Dunn & Crutcher LLP, as counsel to the Ad Hoc First Lien Group; (e) Paul, Weiss, Rifkind, Wharton & Garrison LLP, as counsel to the Ad Hoc Cross-Holder Group (as defined in the First Day Declaration); (f) the U.S. Attorney for the Southern District of New York; (g) the attorneys general for all 50 states and the District of Columbia; (h) the Debtors' 50 largest unsecured creditors on a consolidated basis; (i) the Internal Revenue Service; (j) the Securities and Exchange Commission; (k) the Utility Providers; (l) any party that has requested notice pursuant to Bankruptcy Rule 2002; (m) the proposed future claimants representative in the Chapter 11 Cases; (n) any party that has requested notice pursuant to Bankruptcy Rule 2002; and (o) any other party entitled to notice pursuant to Local Rule 9013-1(b). The Debtors submit that no other or further notice need be provided.

## NO PRIOR REQUEST

35.     No previous request for the relief sought therein has been made to this Court

or any other court.


**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

WHEREFORE, the Debtors respectfully request that this Court (a) enter the

Proposed Orders in substantially the forms attached hereto as **Exhibit A** and **Exhibit B**, and

(b) grant such other and further relief as may be just and proper.

Dated: August 16, 2022
      New York, New York        SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

                    By:    */s/ Paul D. Leake*
                              Paul D. Leake
                              Lisa Laukitis
                              Shana A. Elberg
                              Evan A. Hill
                              One Manhattan West
                              New York, New York 10001
                              Telephone: (212) 735-3000
                              Fax: (212) 735-2000

                              *Proposed Counsel for the Debtors*
                              *and Debtors in Possession*

**EXHIBIT A**

**Proposed Interim Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| *In re* | **Chapter 11** |
| **ENDO INTERNATIONAL plc, *et al.*,** | **Case No. 22-22549 (___)** |
| **Debtors.**[1] | **(Joint Administration Pending)** |
|  | Related Docket No. ____ |

**INTERIM ORDER (I) PROHIBITING UTILITIES
FROM ALTERING, REFUSING, OR DISCONTINUING
SERVICE; (II) DEEMING UTILITIES ADEQUATELY ASSURED
OF FUTURE PERFORMANCE; AND (III) ESTABLISHING PROCEDURES
FOR DETERMINING REQUESTS FOR ADDITIONAL ADEQUATE ASSURANCE**

Upon the motion (the "Motion")[2] of the debtors and debtors in possession (collectively, the "Debtors") in the above-captioned cases (the "Chapter 11 Cases") for an interim order (this "Interim Order") and a final order (a) prohibiting the Debtors' Utility Providers from altering, refusing, or discontinuing service on account of prepetition amounts outstanding or on account of any perceived inadequacy of the Debtors' proposed adequate assurance, (b) determining that the Utility Providers have been provided with adequate assurance of payment within the meaning of section 366 of the Bankruptcy Code, (c) approving the Debtors' Adequate Assurance Procedures, and (d) determining that the Debtors are not required to provide any additional adequate assurance beyond what is proposed by the Motion and the Adequate Assurance Procedures, all as more fully set forth in the Motion; and the Court having reviewed the Motion,

---

[1]    The last four digits of Debtor Endo International plc's tax identification number are 3755.  Due to the large number of debtors in these chapter 11 cases, a complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/Endo. The location of the Debtors' service address for purposes of these chapter 11 cases is: 1400 Atwater Drive, Malvern, PA 19355.

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

the First Day Declaration and having heard the statements of counsel regarding the relief requested

in the Motion at a hearing before the Court, if any (the "Hearing"); and the Court having found

that (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the

Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); (b) this is a

core proceeding pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b); (c) venue is proper before the

Court pursuant to 28 U.S.C. §§ 1408 and 1409; and (d) due and proper notice of the Motion and

the Hearing was sufficient under the circumstances; and the Court having determined that the legal

and factual bases set forth in the Motion establish just cause for the relief granted herein; and it

appearing that the relief requested in the Motion is necessary to avoid immediate and irreparable

harm to the Debtors and their estates and is in the best interests of the Debtors, their estates,

creditors, and other parties-in-interest after taking into account the priority scheme of the

Bankruptcy Code; and upon all of the proceedings had before the Court and after due deliberation

and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED THAT:**

1.        The Motion is GRANTED on an interim basis as set forth herein.

2.        Until such time that the final order is entered by this Court, except in

accordance with the Adequate Assurance Procedures set forth below, all Utility Providers are

(a) prohibited from altering, refusing, or discontinuing Utility Services to the Debtors on account

of any unpaid prepetition charges or the commencement of the Chapter 11 Cases and (b) prohibited

from discriminating against the Debtors or requiring payment of a deposit or receipt of any other

security for continued service as a result of the Debtors' bankruptcy filing or any outstanding

prepetition invoices other than the Adequate Assurance Procedures established herein.

3.        Within 20 days of the Petition Date, the Debtors shall deposit a sum equal

to $269,081 (the "Adequate Assurance Deposit") into an existing account of the Debtors that is

not being used for operations (the "Utility Deposit Account") during the pendency of the Chapter 11 Cases, which shall be separately allocated for, and payable to, each Utility Provider in the amount set forth in the Utilities List attached hereto as **Exhibit 1**, as to each Utility Provider or, in consultation with the Ad Hoc First Lien Group, as otherwise agreed; *provided, however,* that to the extent any Utility Provider receives any other value from the Debtors on account of adequate assurance, the Debtors may reduce the Adequate Assurance Deposit for it in by such amount.

4.      The Utility Deposit Account shall be maintained with a minimum balance of $269,081, which may be adjusted by the Debtors (a) to account for the addition or removal of a Utility Provider from the Utilities List, as may be amended or modified in accordance with the Adequate Assurance Procedures set forth herein regardless of any Request (as defined below) and (b) in accordance with the terms of any agreement between the Debtors and the affected Utility Provider, in each case, after consultation with the Ad Hoc First Lien Group.

5.      The Adequate Assurance Deposit (a) demonstrates the Debtors' ability to pay for future Utility Services in the ordinary course of business and (b) constitutes adequate assurance of future performance to each of the Utility Providers (collectively, the "Proposed Adequate Assurance").

6.      The Debtors are authorized to pay on a timely basis, in accordance with their prepetition practices, all undisputed invoices for Utility Services rendered by Utility Providers to the Debtors after the Petition Date.

7.      If an amount relating to the Utility Services provided postpetition by a Utility Provider is unpaid, and remains unpaid beyond any applicable grace period under the applicable payment terms (including the passage of any cure period), the relevant Utility Provider shall provide notice of such default to the Debtors, and if within five business days of such notice,

3

the bill is not paid, the Utility Provider may file an application with the Court certifying that

payment has not been made and requesting the amount due up to an aggregate maximum equal to

the Adequate Assurance Deposit allocable to such Utility Provider.  Should the Debtors receive

such a notice, the Debtors shall promptly provide a copy of such notice to the Ad Hoc First Lien

Group (email is sufficient).

8.     The portion of the Adequate Assurance Deposit attributable to each Utility

Provider shall be returned to the Debtors upon the effective date of a chapter 11 plan for the

Debtors.  Additionally, if the Debtors terminate any of the Utility Services provided by a Utility

Provider (after giving prior notice to the Ad Hoc First Lien Group), the Debtors may reduce the

Adequate Assurance Deposit to reflect the termination of such Utility Services; *provided, however*,

that there are no outstanding disputes related to postpetition payments due.

9.     The Debtors' Utility Providers are prohibited from requiring additional

adequate assurance of payment other than in accordance with the following Adequate Assurance

Procedures:

(a)     The Debtors or their advisors shall provide a copy of the Motion (including the Proposed Final Order) and this Interim Order approving the relief requested in the Motion on an interim basis to each of the Utility Providers listed on the Utilities List after entry of this Interim Order by the Court.

(b)     If a Utility Provider is not satisfied with the Proposed Adequate Assurance, it must serve a written request (a "Request") upon the Debtors, c/o Endo International plc, 1400 Atwater Drive, Malvern, PA 19355 (Attn: Matthew Maletta, Esq.), proposed counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, One Manhattan West, New York, New York 10001 (Attn: Lisa Laukitis, Esq. (lisa.laukitis@skadden.com), Evan A. Hill, Esq. (evan.hill@skadden.com), and Bram A. Strochlic, Esq. (bram.strochlic@skadden.com)), and counsel to the official committee of unsecured creditors (if any).  Should the Debtors receive such a notice, the Debtors shall promptly provide a copy of such notice to the Ad Hoc First Lien Group (email is sufficient).  The Request must set forth (i) the location(s) for which Utility Services are provided, (ii) the account number(s) for such location(s), (iii) the outstanding balance for each account and a summary of the Debtors' payment history to such Utility

4

Provider, including whether the Utility Provider holds any deposits or other security, and if so, in what amount, and (iv) an explanation of why the Utility Provider believes the Proposed Adequate Assurance is not sufficient adequate assurance of future payment. The Request must actually be received by the Debtors, the Debtors' proposed counsel, and counsel to the official committee of unsecured creditors (if any).

(c)     If the Debtors determine, in their sole discretion, that a Request (including as such Request may have been modified following negotiation) or any consensual agreement reached in connection therewith is reasonable, the Debtors, after consultation with the Ad Hoc First Lien Group, without further order of the Court, may enter into agreements granting additional adequate assurance to the Utility Provider serving such Request and, in connection with such agreements, provide the Utility Provider with additional adequate assurance of payment, including payments on prepetition amounts owing, cash deposits, prepayments, or other forms of security, with notice to the Office of the United States Trustee for the Southern District of New York, counsel to the Ad Hoc First Lien Group, counsel to the Ad Hoc Cross-Holder Group, and any counsel to any official committee appointed in the Chapter 11 Cases within 15 days of entering into such an agreement.

(d)     If the Debtors, in consultation with the Ad Hoc First Lien Group, determine that a Request is unreasonable, then they promptly shall negotiate with the requesting party and if unable to reach a prompt resolution to the Request, set the matter for hearing at the next regularly scheduled omnibus hearing date in the Chapter 11 Cases.  Pending the hearing, the Utility Provider that is the subject of the unresolved Request may not alter, refuse, or discontinue services to the Debtors.

(e)     Absent compliance with the Adequate Assurance Procedures set forth in the Motion and this Interim Order, the Debtors' Utility Providers are prohibited from altering, refusing, or discontinuing service on account of any unpaid prepetition charges and are deemed to have received adequate assurance of payment in compliance with section 366 of the Bankruptcy Code.

10.     The Adequate Assurance Procedures as proposed are hereby approved, and the Debtors are not required to provide any additional adequate assurance beyond what is stated in this Interim Order.

11.     Unless and until (a) the Debtors, in consultation with the Ad Hoc First Lien Group, agree to an alternative assurance of payment with the Utility Provider or (b) the Court enters an order requiring that additional adequate assurance of payment be provided, the Utility

5

Providers (y) have been provided with adequate assurance of payment within the meaning of

section 366 of the Bankruptcy Code, and (z) are prohibited from altering, refusing, or discontinuing

Utility Services on account of prepetition amounts outstanding and on account of any perceived

inadequacy of the Adequate Assurance Procedures.

12.     The Debtors are authorized to amend the Utilities List, in consultation with

the Ad Hoc First Lien Group, to add any subsequently identified Utility Provider.  This Interim

Order shall be deemed to apply to any such Utility Provider regardless of when such Utility

Provider may be added to the Utilities List.  If the Debtors amend the Utilities List subsequent to

the filing of the Motion, the Debtors shall (a) file a supplemental notice with the Court

(the "Supplemental Notice"), (b) serve a copy of the Motion, the signed order granting the Motion,

and the Supplemental Notice on all Utility Providers listed in such Supplemental Notice, and

(c) post the Supplemental Notice on the Debtors' case information website located at

https://restructuring.ra.kroll.com/Endo.  If a Request is made, the Debtors and the Utility Provider

making the Request shall be bound by the Adequate Assurance Procedures set forth herein, as

applicable.

13.     In the event an additional Utility Provider is added to the Utilities List, the

Debtors may, after consultation with the Ad Hoc First Lien Group, increase the amount of the

Adequate Assurance Deposit by an amount equal to two weeks of Utility Services provided by

such additional Utility Provider, calculated using the Debtors' historical average for such payments

over the past 12 months.

14.     The Debtors may terminate the services of any Utility Provider, in

consultation with the Ad Hoc First Lien Group, by providing written notice (a "Termination

Notice") to the Utility Provider.

6

15.    The Debtors may, after giving prior notice to the Ad Hoc First Lien Group, reduce the Adequate Assurance Deposit by the amount held on account of such terminated Utility Service upon reconciliation and payment by the Debtors of the Utility Provider's final invoice in accordance with applicable non-bankruptcy law following the Debtors' termination of Utility Services from such Utility Provider; *provided, however*, that there are no outstanding disputes related to postpetition payments due.  To the extent the Debtors issue a Termination Notice or the services provided by the Utility Provider are otherwise terminated, any deposit held by such Utility Provider must be returned to the Debtors in accordance with the procedures of applicable non-bankruptcy law, and the Debtors may reduce the Adequate Assurance Deposit attributable to such Utility Provider accordingly.

16.    The Debtors may amend the Utilities List to delete a Utility Provider, in consultation with the Ad Hoc First Lien Group, only if the Debtors have provided two weeks' advance notice to such Utility Provider, in writing, and have not received any objection from such Utility Provider.  If an objection is received, the Debtors may request a hearing before the Court at the next omnibus hearing date, or such other date that the Debtors and the Utility Provider may agree.

17.    Nothing herein constitutes a finding that any entity is or is not a Utility Provider hereunder or under section 366 of the Bankruptcy Code, whether or not such entity is included in the Utilities List, and the Debtors retain the right to dispute whether any of the entities now or hereafter listed on the Utilities List are or are not "utilities" within the meaning of section 366 of the Bankruptcy Code.

18.    Any Utility Provider that does not make a Request or otherwise comply with the Adequate Assurance Procedures shall be prohibited from altering, refusing, or

discontinuing Utility Services, including as a result of the Debtors' failure to pay charges for

prepetition Utility Services or to provide adequate assurance of payment in addition to the

Proposed Adequate Assurance.

19.     Notwithstanding anything to the contrary contained herein, any payment to

be made hereunder, and any authorization contained, hereunder herein, shall be subject to any

interim and final orders, as applicable, approving the use of such cash collateral (the "Cash

Collateral Order" and any budget in connection with any such use of cash collateral. To the extent

there is any inconsistency between the terms of the Cash Collateral Order and any action taken or

proposed to be taken hereunder, the terms of the Cash Collateral Order shall control.

20.     The Debtors shall maintain a matrix/schedule of payments made pursuant

to this Interim Order, including the following information: (a) the names of the payee; (b) the

nature, date and amount of the payment; (c) the category or type of payment as characterized in

the Motion; and (d) the Debtor or Debtors that made the payment. The Debtors shall provide a

copy of such matrix/schedule to the U.S. Trustee, counsel to the Ad Hoc First Lien Group, counsel

to the Ad Hoc Cross-Holder Group, and any statutory committee appointed in the Chapter 11 Cases

every 30 days beginning upon entry of this Interim Order.

21.     Nothing contained in the Motion or this Interim Order, nor any payment

made pursuant to the authority granted by this Interim Order, shall be construed as: (a) an

implication or admission as to the validity of any claim against the Debtors, (b) a waiver of the

Debtors' or any other party-in-interest's rights to dispute the amount of, basis for, or validity of

any claim against the Debtors, (c) a waiver of any claims or causes of action that may exist against

any creditor or interest holder, (d) a promise to pay any claim, (e) a concession by the Debtors that

any lien (contractual, common law, statutory or otherwise) satisfied pursuant to the Motion are

8

valid (and all rights to contest the extent, validity or perfection or seek avoidance of all such liens are expressly reserved), (f) an approval, assumption, adoption, or rejection of any agreement, contract, program, policy, or lease between the Debtors and any third party under section 365 of the Bankruptcy Code, (g) a waiver of the obligation of any party in interest to file a proof of claim, or (h) otherwise affecting the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease.

22.     Nothing in the Motion or this Interim Order, nor as a result of any payment made pursuant to this Interim Order, shall be deemed or construed as a waiver of the right of the Debtors, or shall impair the ability of the Debtors, to contest the validity and amount of any payment made pursuant to this Interim Order.

23.     Nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by any party.

24.     Nothing in the Motion or this Interim Order shall be deemed to authorize the Debtors to make any payments not otherwise due prior to the date of the hearing to consider entry of an order granting the relief requested in the Motion on a final basis (the "Final Hearing").

25.     The Court finds and determines that the requirements of Bankruptcy Rule 6003 are satisfied and that the relief requested is necessary to avoid immediate and irreparable harm.

26.     Under the circumstances of the Chapter 11 Cases, notice of the Motion is adequate under Bankruptcy Rule 6004(a).

27.     Notwithstanding Bankruptcy Rule 6004(h), this Interim Order shall be effective and enforceable immediately upon entry.

9

28.     The Debtors are authorized and empowered to take all action necessary to effectuate the relief granted in this Interim Order.

29.     The Final Hearing on the Motion shall be held on _____ __, 202__ at __:__ A.M./P.M. (prevailing Eastern Time).  Any objections or responses to the entry of the Proposed Final Order shall be filed and served upon counsel for the Debtors so as to be received by 4:00 P.M. (prevailing Eastern Time) by no later than seven days before the Final Hearing (the "Objection Deadline")  If no objections or responses are filed and served by the Objection Deadline, the Court may enter a final order without any further notice of a hearing.

30.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Interim Order.

Dated: [●], 2022
           [●], New York

_____
THE HONORABLE [___]
U.S. BANKRUPTCY JUDGE

## **Exhibit 1**

**Utilities List**

| Utility Provider Name | Type of Service Provided | Mailing Address | Account Number(s) | Monthly Spend Average | Surety Bond | Adequate Assurance Deposit |
|---|---|---|---|---|---|---|
| Aqua Pennsylvania, Inc. | Water | 762 Lancaster Ave Bryn Mawr, PA 19010 | 19688671327688 19688671327689 | $1,882 | $0 | $869 |
| AT&T | Telecommunications | C/O Bankruptcy 4331 Communications Dr Floor 4W Dallas, TX 75211 | 875996108 171-787-8705 913 | $9,998 | $0 | $4,614 |
| Broadview Networks | Telecommunications | 800 Westchester Avenue Suite N-501 Rye Brook, NY 10573 | 609-409-AAF 322 | $2,170 | $0 | $1,001 |
| City of Rochester, MI | Water / Sewer | 400 Sixth Street Rochester, MI 48307 | PARK-000870-0000-00 | $41,069 | $0 | $18,955 |
| Colbanet Inc | Telecommunications | 6465 Route Trans Canadienne Ville Saint Laurent, QC H4T 1S3 Canada | Paladin | $52 | $0 | $24 |
| Comcast Corporation | Telecommunications | Comcast Center 1701 JFK Boulevard Philadelphia, PA 19103 | 8499052530174376 8499102530170526 935434208 8499101110112486 | $1,475 | $0 | $681 |
| Consolidated Edison, Inc. | Electricity /Natural Gas | 4 Irving Place Room 700 New York, NY 10003 | 544579160000002 (Electricity) 544880246000028 (Electricity / Natural Gas) | $4,277 | $0 | $1,974 |
| Constellation Energy Services | Natural Gas | 1716 Lawrence Drive De Pere, WI 54115 | BG-10565 | $26,960 | $0 | $12,443 |
| Consumers Energy | Natural Gas | One Energy Plaza Jackson, MI 49201 | 103013260734 | $11,113 | $0 | $5,129 |

| Utility Provider Name | Type of Service Provided | Mailing Address | Account Number(s) | Monthly Spend Average | Surety Bond | Adequate Assurance Deposit |
|---|---|---|---|---|---|---|
| CRP Sanitation Inc. | Waste Collection | 2 Bayview Rd Cortlandt, NY 10567 | 231737 | $511 | $0 | $236 |
| Direct Energy Marketing Inc. | Natural Gas | 25 Sheppard Avenue West Suite 1400 Toronto, ON M2N 6S6 Canada | 587794-85196 | $680 | $0 | $314 |
| DTE Energy Company | Electricity | 1 Energy Plaza Detroit, MI 48226 | 9100-4092-0969 | $198,069 | $0 | $91,416 |
| East Whiteland Township, PA | Sewer | Municipal Building 209 Conestoga Road Frazer, PA 19355 | 4219 | $3,000 | $0 | $1,385 |
| GTT Communications Inc | Telecommunications | 7900 Tysons One Place Suite 1450 Mclean, VA 22102 | 7-1-1A8LF VPLS / DIA 100003024 | $46,044 | $0 | $21,251 |
| Horsham Water and Sewer Authority | Water / Sewer | 617 Horsham Rd Horsham, PA 19044 | 3000100-0 9006400-0 | $7,545 | $0 | $3,482 |
| Interstate Waste Services | Waste Collection | 300 Frank W Burr Blvd. Suite 39 Teaneck, NJ 07666 | 612492 641906 | $1,753 | $0 | $809 |
| Intrado | Telecommunications | 11808 Miracle Hills Dr Omaha, NE 68154 | 139007 BN-01133784 | $7,386 | $0 | $3,409 |
| Level 3 Communications | Telecommunications | 1025 Eldorado Blvd Broomfield, CO 80021 | 1-AZYJR1 | $8,552 | $0 | $3,947 |
| Optimum/Cablevision Systems Corporation | Telecommunications | 1111 Stewart Ave Bethpage, NY 11714 | 54110 07869-950107-04-0 07869-976840-01-2 | $5,234 | $0 | $2,416 |

| Utility Provider Name | Type of Service Provided | Mailing Address | Account Number(s) | Monthly Spend Average | Surety Bond | Adequate Assurance Deposit |
|---|---|---|---|---|---|---|
| Orange and Rockland Utilities, Inc. | Electricity / Natural Gas | One Blue Hill Plaza Pearl River, NY 10965 | 0292027000 (Electricity) 1617834064 (Electricity) 1575834035 (Natural Gas) 1554834008 (Natural Gas) | $64,518 | $0 | $29,777 |
| Peco Energy Company | Electricity, Natural Gas | 2301 Market St. Philadelphia, PA 19103 | 2685516001 (Electricity) 7953966005 (Electricity) 7635760027 (Electricity) 7342173001 (Electricity) 0141127102 (Electricity) 0775450032 (Electricity) 5479043023 (Natural Gas) 1775785022 (Natural Gas) 2227023067 (Natural Gas) | $106,939 | $144,120 | $0 |
| Public Service Enterprise Group | Electricity / Natural Gas | 80 Park Plaza Newark, NJ 07102 | 4202452402 (Electricity/Natural Gas) 6869863601 (Electricity) 4202301102 (Electricity) 6869782318 (Natural Gas) 6869814201 (Natural Gas) | $33,180 | $0 | $15,314 |
| Republic Services Inc/Allied Services | Waste Collection | 3100 Wireton Road Blue Island, IL 60406 | 320-1425677 | $7,506 | $0 | $3,464 |
| Sterling Sanitation | Waste Collection | 48655 Gratiot Ave New Baltimore, MI 48051 | 1158600 | $7,275 | $0 | $3,358 |
| Suez Water | Water | 461 From Road Suite 400 Paramus, NJ 07652 | 5508866220000 | $97 | $0 | $45 |

3

| Utility Provider Name | Type of Service Provided | Mailing Address | Account Number(s) | Monthly Spend Average | Surety Bond | Adequate Assurance Deposit |
|---|---|---|---|---|---|---|
| Sustainable Waste Solutions | Waste Collection | 1000 Hagey Rd Souderton, PA 18964 | 22-77502-03005 21-35779-63008 | $1,198 | $0 | $553 |
| Telus Communications Inc | Telecommunications | PO BOX 7575 Vancouver, BC V6B 8N9 | 507199994 2564311884 5001199999 | $998 | $0 | $460 |
| Veolia North America | Waste Collection | 53 State Street 14th Floor Boston, MA 02109 | 19328 OU36010 19262 541794 541795 5504069267916 | $35,698 | $0 | $16,476 |
| Veolia Water New York Inc | Water | 461 From Road Suite 400 Paramus, NJ 07652 | 5504069267916 | $25 | $0 | $12 |
| Verizon Wireless | Telecommunications | Bankruptcy Administration 500 Technology Drive Suite 550 Weldon Spring, MO 63304 | 251-782-079-0001-53 250-581-420-0001-64 356893112000177 752-128-523-0001-22 251-801-888-0001-60 450-447-475-0001-03 250-437-422-001-83 250-437-422-0001-83 450-447-475-0001-03 901833495-00001 | $22,345 | $0 | $10,313 |

4

| Utility Provider Name | Type of Service Provided | Mailing Address | Account Number(s) | Monthly Spend Average | Surety Bond | Adequate Assurance Deposit |
|---|---|---|---|---|---|---|
| Windstream Services LLC | Telecommunications | 4001 N Rodney Parham Rd, Suite 101 Little Rock, AR 72212-2490 | 215238619 5241538 5450611 5303205 200146557 205136587 | $32,400 | $0 | $14,954 |
| **Total** | | | | **$689,948** | **$144,120** | **$269,081** |

**<u>Exhibit B</u>**

**Proposed Final Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| *In re* | **Chapter 11** |
| **ENDO INTERNATIONAL plc,** *et al.*, | **Case No. 22-22549 (___)** |
| **Debtors.**[1] | **(Joint Administration Pending)** |
|  | Related Docket No. ____ |

**FINAL ORDER (I) PROHIBITING UTILITIES
FROM ALTERING, REFUSING, OR DISCONTINUING
SERVICE; (II) DEEMING UTILITIES ADEQUATELY ASSURED
OF FUTURE PERFORMANCE; AND (III) ESTABLISHING PROCEDURES
FOR DETERMINING REQUESTS FOR ADDITIONAL ADEQUATE ASSURANCE**

Upon the motion (the "<u>Motion</u>")[2] of the debtors and debtors in possession (collectively, the "<u>Debtors</u>") in the above-captioned cases (the "<u>Chapter 11 Cases</u>") for an entry of an interim order and a final order (this "<u>Final Order</u>") (a) prohibiting the Debtors' Utility Providers from altering, refusing, or discontinuing service on account of prepetition amounts outstanding or on account of any perceived inadequacy of the Debtors' proposed adequate assurance, (b) determining that the Utility Providers have been provided with adequate assurance of payment within the meaning of section 366 of the Bankruptcy Code, (c) approving the Debtors' Adequate Assurance Procedures, and (d) determining that the Debtors are not required to provide any additional adequate assurance beyond what is proposed by the Motion and the Adequate Assurance Procedures, all as more fully set forth in the Motion; and the Court having reviewed the Motion,

---

[1]    The last four digits of Debtor Endo International plc's tax identification number are 3755.  Due to the large number of debtors in these chapter 11 cases, a complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/Endo.  The location of the Debtors' service address for purposes of these chapter 11 cases is: 1400 Atwater Drive, Malvern, PA 19355.

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

the First Day Declaration and held a hearing to consider the relief requested in the Motion
(the "Hearing"); and the Court having found that (a) the Court has jurisdiction over this matter
pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference M-431,
dated January 31, 2012 (Preska, C.J.); (b) this is a core proceeding pursuant to 28 U.S.C. §§ 157(a)-
(b) and 1334(b); (c) venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409;
and (d) due and proper notice of the Motion and Hearing was sufficient under the circumstances;
and the Court having determined that the legal and factual bases set forth in the Motion and at the
Hearing establish just cause for the relief granted herein; and it appearing that the relief requested
in the Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates
and is in the best interests of the Debtors, their estates, creditors, and other parties-in-interest after
taking into account the priority scheme of the Bankruptcy Code; and upon all of the proceedings
had before the Court and after due deliberation and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED on a final basis as set forth herein.

2.      Except in accordance with the Adequate Assurance Procedures set forth
below, all Utility Providers are (a) prohibited from altering, refusing, or discontinuing Utility
Services to the Debtors on account of any unpaid prepetition charges or the commencement of the
Chapter 11 Cases and (b) prohibited from discriminating against the Debtors, or requiring payment
of a deposit or receipt of any other security for continued service as a result of the Debtors'
bankruptcy filing or any outstanding prepetition invoices other than the Adequate Assurance
Procedures established herein.

3.      To the extent not already deposited, the Debtors shall deposit a sum equal
to $269,081 (the "Adequate Assurance Deposit") into an existing account of the Debtors that is
not being used for operations (the "Utility Deposit Account") during the pendency of the Chapter

2

11 Cases, which shall be separately allocated for, and payable to, each Utility Provider in the amount set forth in the Utilities List attached hereto as **Exhibit 1**, as to each Utility Provider or, in consultation with the Ad Hoc First Lien Group, as otherwise agreed; *provided, however,* that to the extent any Utility Provider receives any other value from the Debtors on account of adequate assurance, the Debtors may reduce the Adequate Assurance Deposit for it in by such amount.

4.      The Utility Deposit Account shall be maintained with a minimum balance of $269,081, which may be adjusted by the Debtors (a) to account for the addition or removal of a Utility Provider from the Utilities List, as may be amended or modified in accordance with the Adequate Assurance Procedures set forth herein regardless of any Request (as defined below) and (b) in accordance with the terms of any agreement between the Debtors and the affected Utility Provider, in each case, after consultation with the Ad Hoc First Lien Group.

5.      The Adequate Assurance Deposit (a) demonstrates the Debtors' ability to pay for future Utility Services in the ordinary course of business and (b) constitutes adequate assurance of future performance to each of the Utility Providers (collectively, the "Proposed Adequate Assurance").

6.      The Debtors are authorized to pay on a timely basis, in accordance with their prepetition practices, all undisputed invoices for Utility Services rendered by Utility Providers to the Debtors after the Petition Date.

7.      If an amount relating to the Utility Services provided postpetition by a Utility Provider is unpaid, and remains unpaid beyond any applicable grace period under the applicable payment terms (including the passage of any cure period), the relevant Utility Provider shall provide notice of such default to the Debtors, and if within five business days of such notice, the bill is not paid, the Utility Provider may file an application with the Court certifying that

3

payment has not been made and requesting the amount due up to an aggregate maximum equal to the Adequate Assurance Deposit allocable to such Utility Provider. Should the Debtors receive such a notice, the Debtors shall promptly provide a copy of such notice to the Ad Hoc First Lien Group (email is sufficient).

8.      The portion of the Adequate Assurance Deposit attributable to each Utility Provider shall be returned to the Debtors, upon the effective date of a chapter 11 plan for the Debtors. Additionally, if the Debtors terminate any of the Utility Services provided by a Utility Provider (after giving prior notice to the Ad Hoc First Lien Group), the Debtors may reduce the Adequate Assurance Deposit to reflect the termination of such Utility Services; *provided, however*, that there are no outstanding disputes related to postpetition payments due.

9.      The Debtors' Utility Providers are prohibited from requiring additional adequate assurance of payment other than in accordance with the following Adequate Assurance Procedures:

(a)      The Debtors or their advisors shall provide a copy of the Motion and this Final Order approving the relief requested in the Motion to each of the Utility Providers listed on the Utilities List after entry of this Final Order by the Court.

(b)      If a Utility Provider is not satisfied with the Proposed Adequate Assurance, it must serve a written request (a "Request") upon the Debtors, c/o Endo International plc, 1400 Atwater Drive, Malvern, PA 19355 (Attn: Matthew Maletta, Esq.), proposed counsel to the Debtors, Skadden, Arps, Slate, Meagher & Flom LLP, One Manhattan West, New York, New York 10001 (Attn: Lisa Laukitis, Esq. (lisa.laukitis@skadden.com), Evan A. Hill, Esq. (evan.hill@skadden.com), and Bram A. Strochlic, Esq. (bram.strochlic@skadden.com)), and counsel to the official committee of unsecured creditors (if any). Should the Debtors receive such a notice, the Debtors shall promptly provide a copy of such notice to the Ad Hoc First Lien Group (email is sufficient). The Request must set forth (i) the location(s) for which Utility Services are provided, (ii) the account number(s) for such location(s), (iii) the outstanding balance for each account and a summary of the Debtors' payment history to such Utility Provider, including whether the Utility Provider holds any deposits or other security, and if so, in what amount, and (iv) an explanation of why the

4

Utility Provider believes the Proposed Adequate Assurance is not sufficient adequate assurance of future payment. The Request must actually be received by the Debtors, the Debtors' proposed counsel, and counsel to the official committee of unsecured creditors (if any).

(c)     If the Debtors determine, in their sole discretion, that a Request (including as such Request may have been modified following negotiation) or any consensual agreement reached in connection therewith is reasonable, the Debtors, after consultation with the Ad Hoc First Lien Group, without further order of the Court, may enter into agreements granting additional adequate assurance to the Utility Provider serving such Request and, in connection with such agreements, provide the Utility Provider with additional adequate assurance of payment, including payments on prepetition amounts owing, cash deposits, prepayments, or other forms of security, with notice to the Office of the United States Trustee for the Southern District of New York, counsel to the Ad Hoc First Lien Group, counsel to the Ad Hoc Cross-Holder Group, and any counsel to any official committee appointed in the Chapter 11 Cases within 15 days of entering into such an agreement.

(d)     If the Debtors, in consultation with the Ad Hoc First Lien Group, determine that a Request is unreasonable, then they promptly shall negotiate with the requesting party and if unable to reach a prompt resolution to the Request, set the matter for hearing at the next regularly scheduled omnibus hearing date in the Chapter 11 Cases.  Pending the hearing, the Utility Provider that is the subject of the unresolved Request may not alter, refuse, or discontinue services to the Debtors.

(e)     Absent compliance with the Adequate Assurance Procedures set forth in the Motion and this Final Order, the Debtors' Utility Providers are prohibited from altering, refusing, or discontinuing service on account of any unpaid prepetition charges and are deemed to have received adequate assurance of payment in compliance with section 366 of the Bankruptcy Code.

10.     The Adequate Assurance Procedures as proposed are hereby approved, and the Debtors are not required to provide any additional adequate assurance beyond what is stated in this Final Order.

11.     Unless and until (a) the Debtors, in consultation with the Ad Hoc First Lien Group, agree to an alternative assurance of payment with the Utility Provider or (b) the Court enters an order requiring that additional adequate assurance of payment be provided, the Utility Providers (y) have been provided with adequate assurance of payment within the meaning of

5

section 366 of the Bankruptcy Code, and (z) are prohibited from altering, refusing, or discontinuing Utility Services on account of prepetition amounts outstanding and on account of any perceived inadequacy of the Adequate Assurance Procedures.

12.     The Debtors are authorized to amend the Utilities List, in consultation with the Ad Hoc First Lien Group, to add any subsequently identified Utility Provider. This Final Order shall be deemed to apply to any such Utility Provider regardless of when such Utility Provider may be added to the Utilities List. If the Debtors amend the Utilities List subsequent to the filing of the Motion, the Debtors shall (a) file a supplemental notice with the Court (the "Supplemental Notice"), (b) serve a copy of the Motion, the signed order granting the Motion, and the Supplemental Notice on all Utility Providers listed in such Supplemental Notice, and (c) post the Supplemental Notice on the Debtors' case information website located at https://restructuring.ra.kroll.com/Endo. If a Request is made, the Debtors and the Utility Provider making the Request shall be bound by the Adequate Assurance Procedures set forth herein, as applicable.

13.     In the event an additional Utility Provider is added to the Utilities List, the Debtors may, after consultation with the Ad Hoc First Lien Group, increase the amount of the Adequate Assurance Deposit by an amount equal to two weeks of Utility Services provided by such additional Utility Provider, calculated using the Debtors' historical average for such payments over the past 12 months.

14.     The Debtors may terminate the services of any Utility Provider, in consultation with the Ad Hoc First Lien Group, by providing written notice (a "Termination Notice") to the Utility Provider.

15.     The Debtors may, after giving prior notice to the Ad Hoc First Lien Group, reduce the Adequate Assurance Deposit by the amount held on account of such terminated Utility Service upon reconciliation and payment by the Debtors of the Utility Provider's final invoice in accordance with applicable non-bankruptcy law following the Debtors' termination of Utility Services from such Utility Provider; *provided, however*, that there are no outstanding disputes related to postpetition payments due.  To the extent the Debtors issue a Termination Notice or the services provided by the Utility Provider are otherwise terminated, any deposit held by such Utility Provider must be returned to the Debtors in accordance with the procedures of applicable non-bankruptcy law, and the Debtors may reduce the Adequate Assurance Deposit attributable to such Utility Provider accordingly.

16.     The Debtors may amend the Utilities List to delete a Utility Provider, in consultation with the Ad Hoc First Lien Group, only if the Debtors have provided two weeks' advance notice to such Utility Provider, in writing, and have not received any objection from such Utility Provider.  If an objection is received, the Debtors may request a hearing before the Court at the next omnibus hearing date, or such other date that the Debtors and the Utility Provider may agree.

17.     Nothing in the Motion or this Final Order, nor as a result of any payment made pursuant to this Final Order, shall be deemed or construed as a waiver of the right of the Debtors, or shall impair the ability of the Debtors, to contest the validity and amount of any payment made pursuant to this Final Order.

18.     Nothing herein constitutes a finding that any entity is or is not a Utility Provider hereunder or under section 366 of the Bankruptcy Code, whether or not such entity is included in the Utilities List, and the Debtors retain the right to dispute whether any of the entities

7

now or hereafter listed on the Utilities List are or are not "utilities" within the meaning of section 366 of the Bankruptcy Code.

19.    Any Utility Provider that does not make a Request or otherwise comply with the Adequate Assurance Procedures shall be prohibited from altering, refusing, or discontinuing Utility Services, including as a result of the Debtors' failure to pay charges for prepetition Utility Services or to provide adequate assurance of payment in addition to the Proposed Adequate Assurance.

20.    The Debtors shall maintain a matrix/schedule of payments made pursuant to this Final Order, including the following information: (a) the names of the payee; (b) the nature, date and amount of the payment; (c) the category or type of payment as characterized in the Motion; and (d) the Debtor or Debtors that made the payment. The Debtors shall provide a copy of such matrix/schedule to the U.S. Trustee, counsel to the Ad Hoc First Lien Group, counsel to the Ad Hoc Cross-Holder Group, and any statutory committee appointed in the Chapter 11 Cases every 30 days beginning upon entry of this Final Order.

21.    Notwithstanding anything to the contrary contained herein, any payment to be made hereunder, and any authorization contained, hereunder herein, shall be subject to any interim and final orders, as applicable, approving the use of such cash collateral (the "Cash Collateral Order" and any budget in connection with any such use of cash collateral. To the extent there is any inconsistency between the terms of the Cash Collateral Order and any action taken or proposed to be taken hereunder, the terms of the Cash Collateral Order shall control.

22.    Nothing contained in the Motion or this Final Order, nor any payment made pursuant to the authority granted by this Final Order, shall be construed as: (a) an implication or admission as to the validity of any claim against the Debtors, (b) a waiver of the Debtors' or any

8

other party-in-interest's rights to dispute the amount of, basis for, or validity of any claim against

the Debtors, (c) a waiver of any claims or causes of action that may exist against any creditor or

interest holder, (d) a promise to pay any claim, (e) a concession by the Debtors that any lien

(contractual, common law, statutory or otherwise) satisfied pursuant to the Motion are valid (and

all rights to contest the extent, validity or perfection or seek avoidance of all such liens are

expressly reserved), (f) an approval, assumption, adoption, or rejection of any agreement, contract,

program, policy, or lease between the Debtors and any third party under section 365 of the

Bankruptcy Code, (g) a waiver of the obligation of any party in interest to file a proof of claim, or

(h) otherwise affecting the Debtors' rights under section 365 of the Bankruptcy Code to assume or

reject any executory contract or unexpired lease.

23.     Nothing herein shall create, nor is intended to create, any rights in favor of

or enhance the status of any claim held by any party.

24.     Notwithstanding Bankruptcy Rule 6004(h), this Final Order shall be

effective and enforceable immediately upon entry.

25.     The Debtors are authorized and empowered to take all action necessary to

effectuate the relief granted in this Final Order.

26.     This Court shall retain jurisdiction with respect to all matters arising from

or related to the implementation, interpretation, or enforcement of this Final Order.

Dated: [●], 2022
       [●], New York

_____
THE HONORABLE [___]
U.S. BANKRUPTCY JUDGE

## Exhibit 1

**Utilities List**

| Utility Provider Name | Type of Service Provided | Mailing Address | Account Number(s) | Monthly Spend Average | Surety Bond | Adequate Assurance Deposit |
|---|---|---|---|---|---|---|
| Aqua Pennsylvania, Inc. | Water | 762 Lancaster Ave Bryn Mawr, PA 19010 | 19688671327688 19688671327689 | $1,882 | $0 | $869 |
| AT&T | Telecommunications | C/O Bankruptcy 4331 Communications Dr Floor 4W Dallas, TX 75211 | 875996108 171-787-8705 913 | $9,998 | $0 | $4,614 |
| Broadview Networks | Telecommunications | 800 Westchester Avenue Suite N-501 Rye Brook, NY 10573 | 609-409-AAF 322 | $2,170 | $0 | $1,001 |
| City of Rochester, MI | Water / Sewer | 400 Sixth Street Rochester, MI 48307 | PARK-000870-0000-00 | $41,069 | $0 | $18,955 |
| Colbanet Inc | Telecommunications | 6465 Route Trans Canadienne Ville Saint Laurent, QC H4T 1S3 Canada | Paladin | $52 | $0 | $24 |
| Comcast Corporation | Telecommunications | Comcast Center 1701 JFK Boulevard Philadelphia, PA 19103 | 8499052530174376 8499102530170526 935434208 8499101110112486 | $1,475 | $0 | $681 |
| Consolidated Edison, Inc. | Electricity /Natural Gas | 4 Irving Place Room 700 New York, NY 10003 | 544579160000002 (Electricity) 544880246000028 (Electricity / Natural Gas) | $4,277 | $0 | $1,974 |
| Constellation Energy Services | Natural Gas | 1716 Lawrence Drive De Pere, WI 54115 | BG-10565 | $26,960 | $0 | $12,443 |
| Consumers Energy | Natural Gas | One Energy Plaza Jackson, MI 49201 | 103013260734 | $11,113 | $0 | $5,129 |

| Utility Provider Name | Type of Service Provided | Mailing Address | Account Number(s) | Monthly Spend Average | Surety Bond | Adequate Assurance Deposit |
|---|---|---|---|---|---|---|
| CRP Sanitation Inc. | Waste Collection | 2 Bayview Rd Cortlandt, NY 10567 | 231737 | $511 | $0 | $236 |
| Direct Energy Marketing Inc. | Natural Gas | 25 Sheppard Avenue West Suite 1400 Toronto, ON M2N 6S6 Canada | 587794-85196 | $680 | $0 | $314 |
| DTE Energy Company | Electricity | 1 Energy Plaza Detroit, MI 48226 | 9100-4092-0969 | $198,069 | $0 | $91,416 |
| East Whiteland Township, PA | Sewer | Municipal Building 209 Conestoga Road Frazer, PA 19355 | 4219 | $3,000 | $0 | $1,385 |
| GTT Communications Inc | Telecommunications | 7900 Tysons One Place Suite 1450 Mclean, VA 22102 | 7-1-1A8LF VPLS / DIA 100003024 | $46,044 | $0 | $21,251 |
| Horsham Water and Sewer Authority | Water / Sewer | 617 Horsham Rd Horsham, PA 19044 | 3000100-0 9006400-0 | $7,545 | $0 | $3,482 |
| Interstate Waste Services | Waste Collection | 300 Frank W Burr Blvd. Suite 39 Teaneck, NJ 07666 | 612492 641906 | $1,753 | $0 | $809 |
| Intrado | Telecommunications | 11808 Miracle Hills Dr Omaha, NE 68154 | 139007 BN-01133784 | $7,386 | $0 | $3,409 |
| Level 3 Communications | Telecommunications | 1025 Eldorado Blvd Broomfield, CO 80021 | 1-AZYJR1 | $8,552 | $0 | $3,947 |
| Optimum/Cablevision Systems Corporation | Telecommunications | 1111 Stewart Ave Bethpage, NY 11714 | 54110 07869-950107-04-0 07869-976840-01-2 | $5,234 | $0 | $2,416 |

2

| Utility Provider Name | Type of Service Provided | Mailing Address | Account Number(s) | Monthly Spend Average | Surety Bond | Adequate Assurance Deposit |
|---|---|---|---|---|---|---|
| Orange and Rockland Utilities, Inc. | Electricity / Natural Gas | One Blue Hill Plaza Pearl River, NY 10965 | 0292027000 (Electricity) 1617834064 (Electricity) 1575834035 (Natural Gas) 1554834008 (Natural Gas) | $64,518 | $0 | $29,777 |
| Peco Energy Company | Electricity, Natural Gas | 2301 Market St. Philadelphia, PA 19103 | 2685516001 (Electricity) 7953966005 (Electricity) 7635760027 (Electricity) 7342173001 (Electricity) 0141127102 (Electricity) 0775450032 (Electricity) 5479043023 (Natural Gas) 1775785022 (Natural Gas) 2227023067 (Natural Gas) | $106,939 | $144,120 | $0 |
| Public Service Enterprise Group | Electricity / Natural Gas | 80 Park Plaza Newark, NJ 07102 | 4202452402 (Electricity/Natural Gas) 6869863601 (Electricity) 4202301102 (Electricity) 6869782318 (Natural Gas) 6869814201 (Natural Gas) | $33,180 | $0 | $15,314 |
| Republic Services Inc/Allied Services | Waste Collection | 3100 Wireton Road Blue Island, IL 60406 | 320-1425677 | $7,506 | $0 | $3,464 |
| Sterling Sanitation | Waste Collection | 48655 Gratiot Ave New Baltimore, MI 48051 | 1158600 | $7,275 | $0 | $3,358 |
| Suez Water | Water | 461 From Road Suite 400 Paramus, NJ 07652 | 5508866220000 | $97 | $0 | $45 |

3

| Utility Provider Name | Type of Service Provided | Mailing Address | Account Number(s) | Monthly Spend Average | Surety Bond | Adequate Assurance Deposit |
|---|---|---|---|---|---|---|
| Sustainable Waste Solutions | Waste Collection | 1000 Hagey Rd<br>Souderton, PA 18964 | 22-77502-03005<br>21-35779-63008 | $1,198 | $0 | $553 |
| Telus Communications Inc | Telecommunications | PO BOX 7575<br>Vancouver, BC V6B 8N9 | 507199994<br>2564311884<br>5001199999 | $998 | $0 | $460 |
| Veolia North America | Waste Collection | 53 State Street<br>14th Floor<br>Boston, MA 02109 | 19328<br>OU36010<br>19262<br>541794<br>541795<br>5504069267916 | $35,698 | $0 | $16,476 |
| Veolia Water New York Inc | Water | 461 From Road<br>Suite 400<br>Paramus, NJ 07652 | 5504069267916 | $25 | $0 | $12 |
| Verizon Wireless | Telecommunications | Bankruptcy Administration<br>500 Technology Drive<br>Suite 550<br>Weldon Spring, MO 63304 | 251-782-079-0001-53<br>250-581-420-0001-64<br>356893112000177<br>752-128-523-0001-22<br>251-801-888-0001-60<br>450-447-475-0001-03<br>250-437-422-001-83<br>250-437-422-0001-83<br>450-447-475-0001-03<br>901833495-00001 | $22,345 | $0 | $10,313 |

| Utility Provider Name | Type of Service Provided | Mailing Address | Account Number(s) | Monthly Spend Average | Surety Bond | Adequate Assurance Deposit |
|---|---|---|---|---|---|---|
| Windstream Services LLC | Telecommunications | 4001 N Rodney Parham Rd, Suite 101 Little Rock, AR 72212-2490 | 215238619 5241538 5450611 5303205 200146557 205136587 | $32,400 | $0 | $14,954 |
| **Total** | | | | **$689,948** | **$144,120** | **$269,081** |