SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Paul D. Leake
Lisa Laukitis
Shana A. Elberg
Evan A. Hill
One Manhattan West
New York, New York 10001
Telephone: (212) 735-3000
Fax: (212) 735-2000

*Proposed Counsel to Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *In re* | **Chapter 11** |
| **ENDO INTERNATIONAL plc,** *et al.*, | **Case No. 22-22549 (___)** |
| **Debtors.**[1] | **(Joint Administration Pending)** |

**MOTION OF THE DEBTORS FOR ENTRY OF INTERIM
AND FINAL ORDERS AUTHORIZING (I) THE DEBTORS
TO CONTINUE AND RENEW THEIR INSURANCE PROGRAMS
AND HONOR ALL OBLIGATIONS IN RESPECT THEREOF;
(II) FINANCIAL INSTITUTIONS TO HONOR AND PROCESS RELATED
CHECKS AND TRANSFERS; AND (III) THE DEBTORS TO MODIFY THE
AUTOMATIC STAY WITH RESPECT TO WORKERS' COMPENSATION CLAIMS**

Endo International plc and its debtor affiliates, as debtors and debtors in possession

(collectively, the "Debtors," and together with their non-debtor affiliates, the "Company") in the

---

[1]     The last four digits of Debtor Endo International plc's tax identification number are 3755.  Due to the large number of debtors in these chapter 11 cases, a complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/Endo. The location of the Debtors' service address for purposes of these chapter 11 cases is: 1400 Atwater Drive, Malvern, PA 19355.

above-captioned chapter 11 cases (the "Chapter 11 Cases"), respectfully represent in support of this motion (this "Motion") as follows:

## RELIEF REQUESTED

1.      By this Motion, and pursuant to sections 105(a), 363, 1107, 1108, and 1112 of title 11 of the United States Code (the "Bankruptcy Code"), Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), and Rule 9013-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules"), the Debtors seek entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** (the "Proposed Interim Order") and **Exhibit B** (the "Proposed Final Order," together with the Proposed Interim Order, the "Proposed Orders"), respectively, authorizing (a) the Debtors to maintain, continue, renew or purchase, as applicable and as set forth in the Proposed Orders, the Insurance Policies (as defined below), workers' compensation insurance policies, Bonding Program (as defined below), and Letters of Credit (as defined below) (collectively, the "Insurance Programs") on an uninterrupted basis and in accordance with the practices and procedures in effect before the Petition Date (as defined below), (b) financial institutions to receive, process, honor, and pay checks or wire transfers used by the Debtors to pay the foregoing, and (c) the Debtors' to modify the automatic stay under section 362 of the Bankruptcy Code with respect to Workers' Compensation Claims (as defined below) to allow Workers' Compensation Claims to proceed under the applicable workers' compensation insurance policies.  This would include (x) paying all amounts arising under the Insurance Policies, including, but not limited to, any fees owed to the Broker (as defined below), whether due and payable before, on, or after the Petition Date, (y) renewing or obtaining new Insurance Policies as needed in the ordinary course of business, and (z) allowing the Debtors, their affiliates, their insurance provider, and/or their third-party

2

administrators to negotiate, settle, and/or litigate Workers' Compensation Claims, and pay resulting amounts, whether such claims arose before, on, or after the Petition Date.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.).  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

3.      Pursuant to Bankruptcy Rule 7008, the Debtors consent to entry of a final order by the Court in connection with this Motion to the extent that it is later determined that the Court, absent consent of the parties, cannot enter a final order or judgment consistent with Article III of the United States Constitution.

4.      Venue of the Chapter 11 Cases and this Motion is proper in this district under 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

5.      On the date hereof (the "Petition Date"), the Debtors each commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors have requested that the Chapter 11 Cases be jointly administered.

6.      The Debtors are authorized to continue to operate their businesses and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7.      As of the date of this Motion, no trustee, examiner, or statutory committee of creditors has been appointed in the Chapter 11 Cases.

8.      Additional information regarding the Debtors, including their business operations, their corporate and capital structure, and the events leading to the commencement of the Chapter 11 Cases is set forth in the *Declaration of Mark Bradley in Support of Chapter 11*

*Petitions and First Day Papers* (the "First Day Declaration") filed contemporaneously herewith and incorporated herein by reference.

## THE DEBTORS' INSURANCE PROGRAMS

### I.    The Debtors' Insurance Policies

9.    In the ordinary course of business, the Debtors maintain certain insurance policies that are administered by various insurers (collectively, the "Insurers"), which provide coverage to the Debtors for, among other things, general liability, products liability, cyber, crime, casualty, marine, workers' compensation and employment practices liability, directors' and officers' liability, first-party property losses, and various other liability and property losses, liabilities, and claims (such insurance policies issued for the policy periods that include the Petition Date are referred to herein collectively as the "Insurance Policies").[2]  In addition, from time to time, Insurers perform certain audits to identify and mitigate risks associated with the Debtors' operations and also conduct inspections of certain property and equipment.  The Insurers work with the Debtors to address and mitigate any issues and also reports back to the Broker, the Insurers' underwriters, and local and state governmental units, if applicable.

10.    The majority of the Insurance Policies are held in the name of Debtor Endo International plc and cover the Company, but certain Insurance Policies are held by other Debtors directly.  A detailed list of the Insurance Policies is attached hereto as **Exhibit C**.[3] The Insurance Policies are essential to the preservation of the Debtors' businesses, property, and assets, and, in

---

[2]    The Debtors also have insurance coverage for prior policy periods that, for the avoidance of doubt, are not subject to this Motion.

[3]    The Debtors request authority to honor obligations and renew all Insurance Policies, as applicable, notwithstanding any failure of the Debtors to include a particular Insurance Policy on **Exhibit C**. The Debtors reserve the right to supplement this list as appropriate in the event that any Insurance Policy was inadvertently omitted.

4

some cases, the coverage may be required by law or regulation, or obligated by contract.  The Insurance Policies provide coverage that is typical in scope and amount for businesses within the Debtors' industry.

11.     The Company typically obtains the Insurance Policies through Marsh LLC (the "Broker"), pursuant to a certain engagement letter (the "Broker Contract").  The Broker Contract is generally renegotiated annually at contract expiration to take into account changes in coverage requirements.  The Broker assists in obtaining comprehensive insurance coverage and provides related services, including procuring and negotiating the Insurance Policies on advantageous terms and at competitive rates.

12.     In exchange for the receipt of these services, the Debtors are obligated to pay certain fees.  The Broker Contract provides for annual fees payable to the Broker of $395,000 *plus* commission for services related to covered policy placements and administration.  The amount of commission is up to 5% of gross premiums for coverages obtained through wholesale brokers.  As of the Petition Date, the Debtors have paid the annual fee of $395,000.  The Debtors seek the authority to honor all amounts owed to the Broker to ensure their ability to obtain coverage under their Insurance Policies on an uninterrupted basis.

13.     The manner in which the Debtors pay premiums, Broker's fees, and other costs associated with the Insurance Policies depends on the Insurance Policy.  For Insurance Policies held in the name of a Debtor other than Endo International plc, the named insured Debtor pays the Broker or the applicable Insurer directly.  The majority of the Debtors' Insurance Policies, however, are held in the name of Debtor Endo International plc and provide coverage for the Debtors and non-Debtor affiliates as subsidiaries of the named insured.  Therefore, Debtor Endo International plc pays the applicable Insurer or the Broker (which in turn pays the applicable

Insurer), on account of the collective insurance related obligations of itself, the Debtors, and certain of the non-Debtor affiliates. Debtor Endo International plc then allocates costs to non-Debtor affiliates to account for each non-Debtor affiliate's portion of the insurance policy premiums. For the avoidance of doubt, by this Motion, the Debtors seek authority to make payments directly to the Insurers or Broker on account of such obligations.

14.     The total amount paid in annual premiums and payments associated with the Insurance Policies is approximately $37,103,000 which includes fees, commissions, and reimbursements. The Insurance Policies renew at various times throughout each year, and the majority of the Insurance Policies were renewed in September 2021. However, select Insurance Policies were renewed in August and October of 2021 as well as April, July, and August of 2022.

15.     For most Insurance Policies, the Debtors pay the annual premiums at the beginning of the applicable policy period. However, some Insurance Policies (the "Monthly Premium Policies") may occasionally permit monthly premium payments. Pursuant to the terms of the Monthly Premium Policies, the Debtors have paid all the applicable premiums for the Monthly Premium Policies. The Debtors are not aware of any pending requests for payment under the Insurance Policies. Nevertheless, the Debtors request authority to make payments or setoffs to the Broker or Insurers for any additional amounts that may be requested and are attributable to the period before the Petition Date. The Debtors further request authority to renew, replace,[4] modify, extend, or add to the existing Insurance Policies.

---

[4]     "Replace" means to purchase a new substantially similar insurance policy, bond, letter of credit, or contract upon expiration of the term or period of the existing policy, bond, letter of credit, or contract.

## II. The Debtors' Workers' Compensation Insurance Policies

16. Under applicable law, the Debtors are required, through self-insurance or third-party insurers, to provide their employees and retirees with workers' compensation insurance coverage for claims arising from or related to their employment with the Debtors (the "Workers' Compensation Claims"), and to satisfy the Debtors' obligations arising under or related to these programs (the "Workers' Compensation Obligations").

17. The Debtors maintain workers' compensation insurance policies with Everest Premier Insurance Company ("Everest"). The policies are administered by Sedgwick Claims Management Services ("Sedgwick"). The Debtors pay any related premiums to Everest indirectly, through the Broker. Under these policies, Everest provides insurance for Workers' Compensation Claims in excess of the $250,000 deductible per accident. To secure the Debtors' obligation to pay amounts up to the deductible, the Debtors maintain an escrow account (the "Loss Fund") with Sedgwick. Periodically, as the balance of the Loss Fund is depleted, the Debtors are required by Sedgwick to make deposits into the Loss Fund. On average, the Debtors pay $20,000 per month into the Loss Fund. As of the Petition Date, the balance of the Loss Fund is approximately $21,000.

18. The Debtors' Workers' Compensation Claims incurred prior to the 2020 policy period (the "Legacy Claims") are not paid using the Loss Fund. Instead, the Debtors pay all applicable deductibles on Legacy Claims incurred during the 2018 and 2019 policy years directly to Everest. The Debtors pay all applicable deductibles on Legacy Claims incurred prior to the 2018 policy period directly to The Travelers Companies, Inc. ("Travelers"). As of the Petition Date, Travelers holds cash collateral in the amount of approximately $386,000 for Legacy Claims incurred prior to the 2018 policy period.

7

19.     As of July 1, 2022, the Debtors have approximately 23 and 11 open Workers' Compensation Claims against them on account of and relating to the workers' compensation insurance policies with Everest and Travelers, respectively.[5]  The Debtors estimate that, as of July 1, 2022, they have accrued liabilities in the approximate amounts of $524,000 and $162,000 on account of Workers' Compensation Claims relating to the workers' compensation insurance policies with Everest and Travelers, respectively.

20.     To facilitate the ordinary course handling of Workers' Compensation Claims, the Debtors request authority, in their sole discretion, to agree to the modification of the automatic stay of section 362 of the Bankruptcy Code to allow Workers' Compensation Claims to proceed under the applicable workers' compensation insurance policies and to allow the Debtors, their affiliates, their insurance provider, and/or their third-party administrators to negotiate, settle, and/or litigate Workers' Compensation Claims, and pay resulting amounts, whether such claims arose before, on, or after the Petition Date.

## III.     The Debtors' Bonding Program

21.     In the ordinary course of business, the Debtors are required by certain applicable statutes, rules, and regulations to maintain bonds in favor of certain third parties to secure the Debtors' payment or performance of certain obligations, often to governmental units or other public agencies (the "Bonding Program").  The Bonding Program covers a range of obligations, including, among other things, obligations related to various states' boards of pharmacy or other state agencies and U.S. Customs and Border Protection (the "Covered

---

[5]     To the best of the Debtors' knowledge, this Motion accurately reflects all outstanding obligations relating to Workers' Compensation Claims.  Nonetheless, out of an abundance of caution, to the extent that any formerly closed workers' compensation claims are re-opened during the pendency of the Debtors' Chapter 11 cases, the Debtors also seek authority, by this Motion, to apply the relief requested in this section to such claims. The Debtors reserve all rights related thereto.

8

Obligations"). A detailed list of the surety bonds that are currently maintained by the Debtors, as well as their expiration dates, is attached hereto as **Exhibit D**.[6] The Debtors believe that the Bonding Program provides coverage that is typical in scope and amount for businesses within the Debtors' industry.

22.     As of the Petition Date, the Debtors' outstanding surety bonds were issued by the following sureties: Hartford Financial Services Group, Liberty Mutual Group, and Travelers (each individually, a "Surety," and collectively, the "Sureties"). Generally, the surety bonds' premiums are determined annually. The Debtors pay such premiums upon issuance and upon renewal. The total payments associated with the surety bonds, including annual premiums, is approximately $10,155.

23.     The surety bonds shift the risk of the Debtors' nonperformance covered by the applicable surety bond to the Surety. If the Debtors fail to pay the Covered Obligations, then the applicable Surety will pay the Debtors' obligations up to a specified amount. Unlike an insurance policy, if a Surety incurs a loss on a surety bond, the Surety is entitled to recover the full amount of that loss from the Debtors.

24.     To continue their business operations, the Debtors must be able to provide financial assurances to federal, state, and foreign governments, regulatory agencies, and other third parties. This, in turn, requires the Debtors to maintain the existing Bonding Program, including paying the premiums and any related fees as they come due, renewing or potentially acquiring additional bonding capacity as needed in the ordinary course of their businesses, requesting releases from obsolete bonding obligations, and executing other agreements in connection with the

---

[6]     The Debtors request authority to honor obligations and renew all bonds, as applicable, notwithstanding any failure of the Debtors to include a particular bond on **Exhibit D**.

Bonding Program.  The success of the Debtors' efforts to operate effectively and efficiently will depend on the maintenance of the Bonding Program on an uninterrupted basis.  And importantly, no feasible alternative to maintaining the Bonding Program exists.

25.     As of the Petition Date, the Debtors believe that all premium payments due and owing under the Bonding Program have been paid in full and the Debtors are not aware of any pending requests for payment by the Sureties.  Nevertheless, the Debtors request that they be authorized to maintain the Bonding Program in the same manner as they did prepetition and to pay any prepetition claims arising under the Bonding Program.  The Debtors further request authority to honor the current bonds in place and, in consultation with the Ad Hoc First Lien Group, renew, replace, modify, extend, or add to the Bonding Program as needed postpetition, including through the issuance of new surety bonds.

## IV.     The Debtors' Letters of Credit

26.     The Debtors have 14 letters of credit (the "Letters of Credit") outstanding, totaling approximately $7,234,000.  The Letters of Credit cover a range of obligations, including, but not limited to, obligations related to regulatory requirements, insurance provider requirements, fleet management, freight logistics, and property leases.  A detailed list of the Letters of Credit and their expiration dates is attached hereto as **Exhibit E**.[7]

27.     As of the Petition Date, the Debtors do not believe there are any payments due and owing on account of the Letters of Credit, and the Debtors are not aware of any pending requests for payment on the Letters of Credit.  The Debtors request authority to honor the current

---

[7]     The Debtors request authority to honor obligations and renew all Letters of Credit, as applicable, notwithstanding any failure of the Debtors to include a particular Letter of Credit on **Exhibit E**.

Letters of Credit and renew, replace, modify, extend, or add to the Letters of Credit as needed postpetition, including through the issuance of new Letters of Credit.

**BASIS FOR RELIEF**

**I.     Maintaining the Insurance Programs is Necessary to Comply with Legal Requirements and Guidelines**

28.     The nature of the Debtors' businesses makes it essential for the Debtors to maintain their Insurance Programs on an ongoing and uninterrupted basis.  The nonpayment or delayed payment of any premiums, deductibles, or related fees under the Insurance Programs could result in: (a) the cancellation, or attempted cancellation, of the Insurance Programs; or (b) the Debtors' inability to obtain renewal or replacement of the Insurance Programs.  If any of the Insurance Programs lapse, the Debtors could be in violation of state or federal law.  Such violations could result in the loss of licenses and the ability for the Debtors to operate their business.  11 U.S.C. § 1112(b)(4)(C) ("failure to maintain appropriate insurance that poses a risk to the estate or to the public" is "cause" for mandatory conversion or dismissal of a chapter 11 case).  Thus, an interruption in payments to the Insurers, the Broker, or the Sureties may cause immediate and irreparable harm to the Debtors and their estates.  Finally, allowing the Insurance Programs to lapse without renewal could expose all parties-in-interest to substantial liability for personal, contractual and/or property damages.

29.     As a prerequisite for operations, certain governmental agencies require the Debtors to maintain certain Insurance Policies and surety bonds.  Moreover, numerous contracts with third-party suppliers, distributors, and contractors obligate the Debtors to demonstrate certain levels of insurance coverage and to remain current with respect to certain Insurance Policies.  Further, the Operating Guidelines and Reporting Requirements for Debtors In Possession and Trustees, issued by the Office of the United States Trustee for Region 2 (the "<u>U.S. Trustee</u>

11

Guidelines") require the Debtors to maintain insurance coverage throughout the pendency of the Chapter 11 Cases. Thus, the Debtors must maintain the Insurance Programs without disruption in order to comply with various legal and contractual obligations.

30.     If the Debtors are unable to make outstanding payments that may be owed on account of the Insurance Programs, the unpaid Insurers may seek relief from the automatic stay to terminate such Insurance Programs. The Debtors would be required to obtain replacement insurance on an expedited basis and at a significant cost to the estates. If the Debtors were required to obtain replacement insurance, this payment likely would be greater than what the Debtors currently pay. Even if these Insurers were not permitted to terminate the agreements, any interruption of payment would have an adverse effect on the Debtors' ability to obtain future policies at reasonable rates.

## II.     The Bankruptcy Code Authorizes the Debtors to Maintain the Insurance Programs

31.     Although the Debtors do not believe that Court approval is required to maintain their existing Insurance Programs following the Petition Date, the Debtors seek this relief out of an abundance of caution. The Insurers, Broker, and Sureties may be reluctant to engage in ordinary course transactions with the Debtors absent an order eliminating any uncertainty as to whether the Debtors have the requisite authority to engage in such transactions.

32.     Section 363(c) of the Bankruptcy Code authorizes a debtor in possession operating its business pursuant to section 1108 of the Bankruptcy Code to "enter into transactions . . . in the ordinary course of business, without notice or a hearing, and may use property of the estate in the ordinary course of business without notice or a hearing." 11 U.S.C. § 363(c)(1).

33.     One purpose of section 363 of the Bankruptcy Code is to provide a debtor with the flexibility to engage in the ordinary course transactions required to operate its business

12

without oversight by its creditors or the court.  *See*, *e.g.*, *In re Crystal Apparel, Inc.*, 220 B.R. 816, 830 (Bankr. S.D.N.Y. 1998); *In re Leslie Fay Companies, Inc.*, 168 B.R. 294, 301 (Bankr. S.D.N.Y. 1994).  In addition, section 363(b)(1) of the Bankruptcy Code empowers the Court to allow a debtor to "use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  A debtor's decisions to use, sell or lease assets outside the ordinary course of business must be based upon the sound business judgment of the debtor.  *See*, *e.g.*, *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722 F.2d 1063, 1070 (2d Cir. 1983); *Off. Comm. of Unsecured Creditors of LTV Aerospace & Def. Co. v. LTV Corp. (In re Chateaugay Corp.)*, 973 F.2d 141, 143 (2d Cir. 1992) (holding that a judge determining a section 363(b) application must find from the evidence presented before him or her a good business reason to grant such application); *In re Global Crossing Ltd.*, 295 B.R. 726, 743 (Bankr. S.D.N.Y. 2003); *In re Ionosphere Clubs, Inc.*, 100 B.R. 670, 674-75 (Bankr. S.D.N.Y. 1989) (noting the standard for determining a section 363(b) motion is "a good business reason").

34.    The business judgment rule is satisfied "when the following elements are present: (1) a business decision, (2) disinterestedness, (3) due care, (4) good faith, and (5) according to some courts and commentators, no abuse of discretion or waste of corporate assets." *Off. Comm. of Subordinated Bondholders v. Integrated Res., Inc. (In re Integrated Res., Inc.)*, 147 B.R. 650, 656 (S.D.N.Y. 1992) (citation and internal quotations omitted).  In fact, "[w]here the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *Comm. of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp. (In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986).  Courts in this district have consistently and appropriately been reluctant to interfere with corporate decisions absent a

showing of bad faith, self-interest, or gross negligence and will uphold a board's decisions as long

as they are attributable to any "rational business purpose." *In re Integrated Res. Inc.,* 147 B.R. at

656.

35.    The Debtors submit that the relief requested in this Motion represents a

sound exercise of the Debtors' business judgment.  To the extent the maintenance, continuance

and renewal of the Insurance Programs and any and all payments related thereto (including any

payments made to Insurers, the Broker, or the Sureties) are outside the ordinary course of business,

they are justified under section 363(b) of the Bankruptcy Code.  Even where coverage is not

expressly required by applicable law, the Debtors are nevertheless compelled by sound business

practice to maintain essential insurance coverage.  Any interruption in such coverage would expose

the Debtors to a variety of risks, including the possible (a) incurrence of direct liability for the

payment of claims that otherwise would have been covered by the Insurance Programs, (b)

incurrence of material costs and other losses that otherwise would have been reimbursed, such as

attorneys' fees for certain covered claims, (c) inability to obtain similar types and levels of

insurance coverage, (d) incurrence of higher costs for reestablishing lapsed policies or obtaining

new insurance coverage and (e) incurrence of direct liability for failing to maintain required

insurance coverage.

36.    Courts in this district have routinely granted similar relief.  *See*, *e.g.*, *In re*

*Grupo Posadas S.A.B. de C.V.*, Case No.: 21-11831 (SHL) (Bankr. S.D.N.Y. Nov. 17, 2021)

[Docket No. 76]; *In re Philippine Airlines, Inc.*, Case No.: 21-11569 (SCC) ( Bankr. S.D.N.Y.

Sept. 30, 2021) [Docket No. 117]; *In re Grupo Aeroméxico, S.A.B. de C.V.*, Case No. 20-11563

(SCC) (Bankr. S.D.N.Y. July 29, 2020) [Docket No. 209]; *In re Purdue Pharma L.P.*, Case No.

19-23649 (RDD) (Bankr. S.D.N.Y. Oct. 16, 2019) [Docket No. 313]; *In re Windstream Holdings,*

*Inc.*, Case No. 19-22312 (RDD) (Bankr. S.D.N.Y. April 22, 2019) [Docket No. 381]; *In re Synergy*

*Pharms. Inc.*, Case No. 18-14010 (JLG) (Bankr. S.D.N.Y. Jan. 23, 2019) [Docket No. 256]; *In re*

*CM Wind Down Topco Inc.*, Case No. 17-13381 (SCC) (Bankr. S.D.N.Y. Dec. 21, 2017) [Docket

No. 154]; *In re 21st Century Oncology Holdings, Inc.*, Case No. 17-22770 (RDD) (Bankr.

S.D.N.Y. June 20, 2017) [Docket No. 127]; *In re Avaya Inc.*, Case No. 17-10089 (SMB) (Bankr.

S.D.N.Y. Feb. 10, 2017) [Docket No. 142]; *In re SunEdison, Inc.*, *et al.*, Case No. 16-10992

(SMB) (Bankr. S.D.N.Y. Apr. 26, 2016) [Docket No. 80].[8]

### III.   The Doctrine of Necessity and Section 105 of the Bankruptcy Code Support Payment of Amounts Necessary to Maintain the Insurance Programs

37.     Similarly, although the Debtors do not believe they have any material

outstanding prepetition obligations or payment defaults with respect to their insurance obligations,

the Debtors are seeking authority to pay any such amounts to ensure continuing insurance coverage

during the Chapter 11 Cases.

38.     Section 105(a) of the Bankruptcy Code empowers the Court to "issue any

order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

11 U.S.C. § 105(a).  A bankruptcy court's use of its equitable powers to "authorize the payment

of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor is not

a novel concept." *In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr. S.D.N.Y. 1989).  Under

section 105 of the Bankruptcy Code, "the court can permit pre-plan payment of a pre-petition

obligation when essential to the continued operation of the debtor." *In re NVR L.P.*, 147 B.R. 126,

127 (Bankr. E.D. Va. 1992) (citing *Ionosphere Clubs*, 98 B.R. at 177).

---

[8]      Because of the voluminous nature of the orders cited herein, they are not attached to this Motion.  Copies of these orders, however, are available on request.

39.     In a long line of well-established cases, federal courts have consistently permitted postpetition payment of prepetition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors.  *See*, *e.g.*, *Miltenberger v. Logansport, Crawfordsville & Sw. Ry. Co.*, 106 U.S. 286, 312 (1882) (permitting payment of pre-receivership claim prior to reorganization to prevent "stoppage of [crucial] business relations"); *Mich. Bureau of Workers' Disability Comp. v. Chateaugay Corp.* (*In re Chateaugay Corp.*), 80 B.R. 279, 285-86 (S.D.N.Y. 1987) (affirming order authorizing payment of prepetition wages, salaries, expenses and benefits).

40.     This doctrine of necessity functions in a chapter 11 reorganization as a mechanism by which the bankruptcy court can exercise its equitable power to allow payment of critical prepetition claims not explicitly authorized by the Bankruptcy Code.  *See In re Bos. & Me. Corp.*, 634 F.2d 1359, 1382 (1st Cir. 1980) (recognizing existence of judicial power to authorize trustees to pay claims for goods and services that are indispensably necessary to debtors' continued operation).  The doctrine is frequently invoked early in a reorganization, particularly in connection with those chapter 11 sections that relate to payment of prepetition claims.

41.     The Debtors' ability to maintain and honor their Insurance Programs in a timely manner is critical to the ongoing operation of their businesses, as discussed above, and therefore necessary to maximize the value of the Debtors' estates.  The Debtors believe that any prepetition amounts that they will pay in respect of Insurance Programs would be small relative to the size of the Debtors' estates and the critical benefits provided by the Insurance Programs.  As noted above, interruption of the Debtors' insurance coverage could substantially diminish the value of the Debtors' estates because a lapse in coverage can (a) violate state or federal law and (b) expose the Debtors to direct liability for significant claims that otherwise would be covered by

insurance.  It follows that authorizing the Debtors to pay the relatively small prepetition amounts

owing under the Insurance Programs in order to mitigate the risk of substantially larger payments

is in the best interests of the Debtors, their estates, all of the Debtors' stakeholders, and other

parties-in-interest.  Thus, payments of amounts to ensure continuation of the Insurance Programs,

including the payment of prepetition and postpetition insurance premiums, Broker's fees, surety

bond premiums, and other amounts necessary to maintain the Debtors' Insurance Programs, falls

within the sound business judgment of the Debtors and will benefit, rather than prejudice, the

Debtors' creditors by preserving the property of the Debtors' estates.  The Debtors submit that the

relief requested herein is appropriate under the doctrine of necessity and section 105(a) of the

Bankruptcy Code.

### IV.    The Court Should Authorize and Direct Banks to Honor and Process Related Checks and Transfers

42.    The Debtors also request that the Court authorize and direct the Debtors'

banks and other financial institutions (collectively, the "Banks") to (a) receive, process, honor, and

pay all checks presented for payment of, and to honor all fund transfer requests made by the

Debtors related to the claims that the Debtors request authority to pay in this Motion, regardless

of whether the checks were presented or fund transfer requests were submitted before, on or after

the Petition Date; *provided; however*, that funds are available in the Debtors' accounts to cover

the checks and fund transfers, and (b) rely on the Debtors' designation of any particular check as

approved by the Proposed Orders.

43.    The Debtors have sufficient liquidity to pay the amounts set forth in this

Motion in the ordinary course of business and have implemented controls to ensure that prepetition

claims will not be paid out except as authorized by this Court.  The Debtors therefore submit that

the payment-processing procedures described in this Motion are appropriate.

**V.      The Automatic Stay Should Be Modified for Workers' Compensation Claims**

44.      Section 362(a) of the Bankruptcy Code "operates as a stay, applicable to all entities, of—the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title." *See* 11 U.S.C. § 362(a)(1).  Section 362(d) of the Bankruptcy Code, however, permits a debtor or other party-in-interest to request a modification or termination of the automatic stay for "cause."  There is cause to modify the automatic stay, because staying Workers' Compensation Claims could cause employee departures or otherwise harm employee morale, which could severely disrupt the Debtors' businesses and prevent a successful reorganization.  Accordingly, the Debtors request this Court to authorize the Debtors, in their discretion, to agree to modify the automatic stay under section 362 of the Bankruptcy Code with respect to Workers' Compensation Claims.

45.      Courts in this district have granted similar relief in recent chapter 11 cases. *See, e.g.*, *In re GTT Communications, Inc.*, Case No. 21-11880 (MEW) (Bankr. S.D.N.Y. Nov. 4, 2021) [Docket No. 66]; *In re KB US Holdings, Inc.*, Case No. 20-22962 (SHL) (Bankr. S.D.N.Y. Sept. 17, 2020) [Docket No. 166]; *In re Grupo Aeromexico, S.A.B. de C.V.*, Case No. 20-11563 (SCC) (Bankr. S.D.N.Y. July 2, 2020) [Docket No. 48]; *In re Ditech Holding Corp.*, Case No. 19-10412 (JLG) (Bankr. S.D.N.Y. Feb. 15, 2019) [Docket No. 70]; *In re Sears Holdings Corp.*, Case No. 18-23538 (RDD) (Bankr. S.D.N.Y. Nov. 16, 2018) [Docket No. 792]; *In re Tops Holding II Corp.*, Case No. 18-22279 (RDD) (Bankr. S.D.N.Y. March 22, 2018) [Docket No. 186]; *In re Walter Inv. Mgmt. Corp.*, Case No. 17-13446 (JLG) (Bankr. S.D.N.Y. Dec. 6, 2017) [Docket

No. 66]; *In re Breitburn Energy Partners LP*, Case No. 16-11390 (SMB) (Bankr. S.D.N.Y. May

20, 2016) [Docket No. 64].[9]

## **RESERVATION OF RIGHTS**

46.     Nothing contained herein is or should be construed as: (a) an implication or

admission as to the validity of any claim against the Debtors, (b) a waiver of the Debtors' or any

other party-in-interest's rights to dispute the amount of, basis for, or validity of any claim against

the Debtors, (c) a waiver of any claims or causes of action that may exist against any creditor or

interest holder, (d) a promise to pay any claim, (e) a concession by the Debtors that any liens

(contractual, common law, statutory or otherwise) satisfied pursuant to the Motion are valid (and

all rights to contest the extent, validity or perfection or seek avoidance of all such liens are

expressly reserved), (f) an approval, assumption, adoption, or rejection of any agreement, contract,

program, policy, or lease between the Debtors and any third party under section 365 of the

Bankruptcy Code, (g) a waiver of the obligation of any party in interest to file a proof of claim, or

(h) otherwise affecting the Debtors' rights under section 365 of the Bankruptcy Code to assume or

reject any executory contract or unexpired lease.  If this Court grants the relief sought herein, any

payment made pursuant to this Court's order is not intended to be and should not be construed as

an admission to the validity of any claim or a waiver of the Debtors' rights to subsequently dispute

such claim.

## **DEBTORS HAVE SATISFIED BANKRUPTCY RULE 6003(B)**

47.     Bankruptcy Rule 6003 provides that the relief requested in this Motion may

be granted if the "relief is necessary to avoid immediate and irreparable harm."  Fed. R. Bankr.

---

[9]     Because of the voluminous nature of the orders cited herein, they are not attached to this Motion.  Copies of
these orders, however, are available on request.

P. 6003; *see also In re First NLC Fin. Servs., LLC*, 382 B.R. 547, 549-50 (Bankr. S.D. Fla. 2008) (holding that Bankruptcy Rule 6003 permits entry of retention orders on an interim basis to avoid irreparable harm).  The Second Circuit has interpreted the language "immediate and irreparable harm" in the context of preliminary injunctions.  In that context, the Second Circuit has instructed that irreparable harm "'is a continuing harm which cannot be adequately redressed by final relief on the merits' and for which 'money damages cannot provide adequate compensation.'" *Kamerling v. Massanari*, 295 F.3d 206, 214 (2d Cir. 2002) (quoting *N.Y. Pathological & X-Ray Labs., Inc. v. INS*, 523 F.2d 79, 81 (2d Cir. 1975)).  Furthermore, the "harm must be shown to be actual and imminent, not remote or speculative." *Id.*; *see also Rodriguez v. DeBuono*, 175 F.3d 227, 234 (2d Cir. 1998).  The Debtors submit that, for the reasons already set forth herein, the relief requested in this Motion is necessary to avoid immediate and irreparable harm.

## WAIVER OF STAY UNDER BANKRUPTCY RULE 6004(h)

48.     The Debtors also request that this Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[a]n order authorizing the use, sale, or lease of property other than cash collateral is stayed until the expiration of 14 days after entry of the order, unless the Court orders otherwise." Fed. R. Bankr. P. 6004(h).  As described above, the relief that the Debtors seek in this Motion is necessary for the Debtors to operate without interruption and to preserve value for their estates.  Accordingly, the Debtors respectfully request that this Court waive the 14-day stay imposed by Bankruptcy Rule 6004(h), to the extent applicable, as the exigent nature of the relief sought herein justifies immediate relief.

## NOTICE

49.     Notice of this Motion shall be given to (a) the Office of the United States Trustee for the Southern District of New York; (b) counsel to the administrative agent under the Debtors' prepetition credit agreement; (c) counsel to the indenture trustee under each of the

Debtors' outstanding bond issuances; (d) Gibson, Dunn & Crutcher LLP, as counsel to the Ad Hoc First Lien Group (as defined in the First Day Declaration); (e) Paul, Weiss, Rifkind, Wharton & Garrison LLP, as counsel to the Ad Hoc Cross-Holder Group (as defined in the First Day Declaration); (f) the U.S. Attorney for the Southern District of New York; (g) the attorneys general for all 50 states and the District of Columbia; (h) the Debtors' 50 largest unsecured creditors on a consolidated basis; (i) the Internal Revenue Service; (j) the Securities and Exchange Commission; (k) the Broker; (l) Sedgwick; (m) Everest and Travelers; (n) the Insurers set forth on **Exhibit C**; (o) the Sureties set forth on **Exhibit D**; (p) the banks that issued the Letters of Credit, set forth on **Exhibit E**; (q) the proposed future claimants representative in the Chapter 11 Cases; (r) any party that has requested notice pursuant to Bankruptcy Rule 2002; and (s) any other party entitled to notice pursuant to Local Rule 9013-1(b).  The Debtors submit that no other or further notice need be provided.

## NO PRIOR REQUEST

50.     No previous request for the relief sought therein has been made to this Court or any other court.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

WHEREFORE, the Debtors respectfully request that this Court (a) enter the Proposed Orders in substantially in the forms attached hereto as **Exhibit A** and **Exhibit B**, and (b) grant such other and further relief as may be just and proper.

Dated: August 16, 2022
      New York, New York           SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By:    */s/ Paul D. Leake*
     Paul D. Leake
     Lisa Laukitis
     Shana A. Elberg
     Evan A. Hill
     One Manhattan West
     New York, New York 10001
     Telephone: (212) 735-3000
     Fax: (212) 735-2000

     *Proposed Counsel for the Debtors*
     *and Debtors in Possession*

**<u>Exhibit A</u>**

**Proposed Interim Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *In re* | **Chapter 11** |
| **ENDO INTERNATIONAL plc,** *et al.*, | **Case No. 22-22549 (___)** |
| **Debtors.**[1] | **(Joint Administration Pending)** |
| | Related Docket No. ____ |

**INTERIM ORDER AUTHORIZING**
**(I) THE DEBTORS TO CONTINUE AND**
**RENEW THEIR INSURANCE PROGRAMS AND**
**HONOR ALL OBLIGATIONS IN RESPECT THEREOF; (II)**
**FINANCIAL INSTITUTIONS TO HONOR AND PROCESS RELATED**
**CHECKS AND TRANSFERS; AND (III) THE DEBTORS TO MODIFY THE**
**AUTOMATIC STAY WITH RESPECT TO WORKERS' COMPENSATION CLAIMS**

Upon the motion (the "Motion")[2] of the debtors and debtors in possession (collectively, the "Debtors") in the above-captioned cases (the "Chapter 11 Cases"), pursuant to sections 105(a), 363(b), 507(a) and 541 of the Bankruptcy Code for entry of an interim order (this "Interim Order") and a final order authorizing, but not directing, (i) the Debtors to continue and, in consultation with the Ad Hoc First Lien Group, renew their Insurance Programs, (ii) the financial institutions to honor and process related checks and transfers, and (iii) the Debtors to modify the automatic stay with respect to the Workers' Compensation Claims, all as set forth more fully in the Motion; and the Court having reviewed the Motion and having heard the statements of counsel regarding the relief requested in the Motion at a hearing before the Court (the "Hearing");

---

[1]     The last four digits of Debtor Endo International plc's tax identification number are 3755.  Due to the large number of debtors in these chapter 11 cases, a complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/Endo. The location of the Debtors' service address for purposes of these chapter 11 cases is: 1400 Atwater Drive, Malvern, PA 19355.

[2]     Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

and the Court having found that (a) the Court has jurisdiction over this matter pursuant to 28 U.S.C.

§§ 157(a)-(b) and 1334(b) and the Amended Standing Order of Reference M-431, dated January

31, 2012 (Preska, C.J.); (b) this is a core proceeding pursuant to 28 U.S.C. §§ 157(a)-(b) and

1334(b); (c) venue is proper before the Court pursuant to 28 U.S.C. §§ 1408 and 1409; and (d) due

and proper notice of the Motion and Hearing was sufficient under the circumstances; and the Court

having determined that the legal and factual bases set forth in the Motion establish just cause for

the relief granted herein; and the Court having determined that immediate relief is necessary to

avoid irreparable harm to the Debtors and their estates as contemplated by Bankruptcy Rule

6003(b) and is in the best interests of the Debtors, their estates, creditors and all parties in interest;

now, therefore,

### IT IS HEREBY ORDERED THAT:

1.      The Motion is GRANTED on an interim basis as set forth herein.

2.      The Debtors are hereby authorized, but not directed, in their sole discretion,

to continue their Insurance Programs—including the Insurance Policies listed on **Exhibit C**

attached to the Motion, the surety bonds listed on **Exhibit D** attached to the Motion, and the Letters

of Credit listed on **Exhibit E** attached to the Motion—without interruption and in accordance with

the same practices and procedures as were in effect prior to the Petition Date.

3.      The Debtors are authorized, but not directed, in their sole discretion, to pay

prepetition obligations, if any, that may be owed in connection with the Insurance Programs

(including Broker's fees and insurance deductibles) during the interim period, whether due and

payable before, on or after the Petition Date to the extent any such obligations are owed.

4.      The Debtors are authorized, but not directed, in consultation with the Ad

Hoc First Lien Group, to renew or obtain new Insurance Policies or execute other agreements in

2

connection with their Insurance Programs, including, without limitation, upon the expiration or termination of any Insurance Policy.

5.      All Banks are (a) authorized and directed to receive, process, honor, and pay any and all checks, drafts, electronic transfers, and other forms of payment used by the Debtors on account of the Insurance Programs, whether presented before, on or after the Petition Date, and (b) prohibited from placing any hold on, or attempting to reverse, any automatic transfer on account of the Insurance Programs.  The Banks shall rely on the representations of the Debtors as to which checks and fund transfers should be honored and paid pursuant to this Interim Order without any duty of further inquiry and without liability for following the Debtors' instructions.

6.      The Debtors shall maintain a matrix/schedule of payments made pursuant to this Interim Order, including the following information: (a) the names of the payee; (b) the nature, date and amount of the payment; (c) the category or type of payment as characterized in the Motion; and (d) the Debtor or Debtors that made the payment. The Debtors shall provide a copy of such matrix/schedule to the U.S. Trustee, counsel to the Ad Hoc First Lien Group, counsel to the Ad Hoc Cross-Holder Group, and any statutory committee appointed in these chapter 11 cases every 30 days beginning upon entry of this Interim Order.

7.      Any party receiving payment from the Debtors is authorized and directed to rely on the representations of the Debtors as to which payments are authorized by this Interim Order.

8.      The Debtors are authorized, but not directed, to continue their workers' compensation insurance policies and to pay or set off any outstanding prepetition claims, taxes, charges, assessments, premiums, and third-party administrator fees arising under the workers' compensation insurance policies in which they participate.  In addition, the Debtors are authorized,

3

in their discretion, (a) to modify the automatic stay of section 362 of the Bankruptcy Code, without further order of this Court, to allow (i) Workers' Compensation Claims to proceed under the applicable workers' compensation insurance policies and (ii) the Debtors' insurance provider and/or third-party administrators to negotiate, settle, and/or litigate Workers' Compensation Claims; and (b) to pay resulting amounts, whether such claims arose before, on, or after the Petition Date.

9.      Notwithstanding anything to the contrary contained herein, any payment to be made hereunder, and any authorization contained, hereunder herein, shall be subject to and in accordance with any interim and final orders, as applicable, approving the use of cash collateral (the "Cash Collateral Order") and any budget in connection with any such use of cash collateral. To the extent there is any inconsistency between the terms of the Cash Collateral Order and any action taken or proposed to be taken hereunder, the terms of the Cash Collateral Order shall control.

10.     Nothing contained in the Motion or this Interim Order, nor any payment made pursuant to the authority granted by this Interim Order, shall constitute or be construed as (a) an implication or admission as to the validity of any claim against the Debtors, (b) a waiver of the Debtors' or any other party-in-interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtors, (c) a waiver of any claims or causes of action that may exist against any creditor or interest holder, (d) a promise to pay any claim, (e) a concession by the Debtors that any lien (contractual, common law, statutory or otherwise) satisfied pursuant to the Motion are valid (and all rights to contest the extent, validity or perfection or seek avoidance of all such liens are expressly reserved), (f) an approval, assumption, adoption, or rejection of any agreement, contract, program, policy, or lease between the Debtors and any third party under section 365 of the Bankruptcy Code, (g) a waiver of the obligation of any party in interest to file a

4

proof of claim, or (h) otherwise affecting the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease.

11.     Nothing in the Motion or this Interim Order, nor as a result of any payment made pursuant to this Interim Order, shall be deemed or construed as a waiver of the right of the Debtors, or shall impair the ability of the Debtors, to contest the validity and amount of any payment made pursuant to this Interim Order.

12.     Nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by any party.

13.     Nothing in the Motion or this Interim Order shall be deemed to authorize the Debtors to make any payments not otherwise due prior to the date of the hearing to consider entry of an order granting the relief requested in the Motion on a final basis (the "<u>Final Hearing</u>").

14.     Nothing in this Interim Order authorizes the Debtors or any other party to accelerate any payments or obligations not otherwise due prior to the date of the Final Hearing.

15.     The Court finds and determines that the requirements of Bankruptcy Rule 6003 are satisfied and that the relief requested is necessary to avoid immediate and irreparable harm.

16.     Under the circumstances of the Chapter 11 Cases, notice of the Motion is adequate under Bankruptcy Rule 6004(a).

17.     Notwithstanding Bankruptcy Rule 6004(h), this Interim Order shall be effective and enforceable immediately upon entry.

18.     The Debtors are authorized and empowered to take all action necessary to effectuate the relief granted in this Interim Order.

19.     The Final Hearing on the Motion shall be held on _____ __, 202__ at __:__ A.M./P.M. (prevailing Eastern Time).  Any objections or responses to the entry of the Proposed Final Order shall be filed and served upon counsel for the Debtors so as to be received by 4:00 p.m. (prevailing Eastern Time) by no later than seven days before the Final Hearing (the "Objection Deadline").  If no objections or responses are filed and served by the Objection Deadline, this Court may enter a final order without any further notice of a hearing.

20.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Interim Order.

Dated: [•], 2022
        [•], New York


_____
THE HONORABLE [_____]
U.S. BANKRUPTCY JUDGE

**<u>Exhibit B</u>**

**Proposed Final Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *In re* | **Chapter 11** |
| **ENDO INTERNATIONAL plc,** *et al.*, | **Case No. 22-22549 (___)** |
| **Debtors.**[1] | **(Joint Administration Pending)** |
| | Related Docket No. _____ |

**FINAL ORDER AUTHORIZING**
**(I) THE DEBTORS TO CONTINUE AND**
**RENEW THEIR INSURANCE PROGRAMS AND**
**HONOR ALL OBLIGATIONS IN RESPECT THEREOF; (II)**
**FINANCIAL INSTITUTIONS TO HONOR AND PROCESS RELATED**
**CHECKS AND TRANSFERS; AND (III) THE DEBTORS TO MODIFY THE**
**AUTOMATIC STAY WITH RESPECT TO WORKERS' COMPENSATION CLAIMS**

Upon the motion (the "Motion")[2] of the debtors and debtors in possession (collectively, the "Debtors") in the above-captioned cases (the "Chapter 11 Cases"), pursuant to sections 105(a), 363(b), 507(a) and 541 of the Bankruptcy Code for entry of an interim order and a final order (this "Final Order") authorizing, but not directing, (i) the Debtors to continue and, in consultation with the Ad Hoc First Lien Group, renew their Insurance Programs, (ii) the financial institutions to honor and process related checks and transfers, and (iii) the Debtors to modify the automatic stay with respect to Workers' Compensation Claims, all as set forth more fully in the Motion; and the Court having reviewed the Motion and held a hearing to consider the relief requested in the Motion on a final basis (the "Hearing"); and the Court having found that (a) the

---

[1]     The last four digits of Debtor Endo International plc's tax identification number are 3755.  Due to the large number of debtors in these chapter 11 cases, a complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/Endo. The location of the Debtors' service address for purposes of these chapter 11 cases is: 1400 Atwater Drive, Malvern, PA 19355.

[2]     Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b) and the

Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); (b) this is a

core proceeding pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b); (c) venue is proper before the

Court pursuant to 28 U.S.C. §§ 1408 and 1409; and (d) due and proper notice of the Motion and

Hearing was sufficient under the circumstances; and the Court having determined that the legal

and factual bases set forth in the Motion establish just cause for the relief granted herein; and the

Court having determined that immediate relief is necessary to avoid irreparable harm to the

Debtors and their estates as contemplated by Bankruptcy Rule 6003(b) and is in the best interests

of the Debtors, their estates, creditors and all parties in interest; now, therefore,

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED on a final basis as set forth herein.

2.      The Debtors are hereby authorized, but not directed, in their sole discretion,

to continue their Insurance Programs—including the Insurance Policies listed on **Exhibit C**

attached to the Motion, the surety bonds listed on **Exhibit D** attached to the Motion, and the Letters

of Credit listed on **Exhibit E** attached to the Motion—without interruption and in accordance with

the same practices and procedures as were in effect prior to the Petition Date.

3.      The Debtors are authorized, but not directed, in their sole discretion, to pay

prepetition obligations, if any, that may be owed in connection with the Insurance Programs

(including Broker's fees and insurance deductibles), whether due and payable before, on or after

the Petition Date to the extent any such obligations are owed.

4.      The Debtors are authorized, but not directed, in consultation with the Ad

Hoc First Lien Group, to renew or obtain new Insurance Policies or execute other agreements in

2

connection with their Insurance Programs, including, without limitation, upon the expiration or termination of any Insurance Policy.

5.      All Banks are (a) authorized and directed to receive, process, honor, and pay any and all checks, drafts, electronic transfers, and other forms of payment used by the Debtors on account of the Insurance Programs, whether presented before, on, or after the Petition Date, and (b) prohibited from placing any hold on, or attempting to reverse, any automatic transfer on account of the Insurance Programs.  The Banks shall rely on the representations of the Debtors as to which checks and fund transfers should be honored and paid pursuant to this Final Order without any duty of further inquiry and without liability for following the Debtors' instructions.

6.      The Debtors shall maintain a matrix/schedule of payments made pursuant to this Final Order, including the following information: (a) the names of the payee; (b) the nature, date and amount of the payment; (c) the category or type of payment as characterized in the Motion; and (d) the Debtor or Debtors that made the payment. The Debtors shall provide a copy of such matrix/schedule to the U.S. Trustee, counsel to the Ad Hoc First Lien Group, counsel to the Ad Hoc First Lien Group, counsel to the Ad Hoc Cross-Holder Group, and any statutory committee appointed in these chapter 11 cases every 30 days beginning upon entry of this Final Order.

7.      Any party receiving payment from the Debtors is authorized and directed to rely on the representations of the Debtors as to which payments are authorized by this Final Order.

8.      The Debtors are authorized, but not directed, to continue their workers' compensation insurance policies and to pay or set off any outstanding prepetition claims, taxes, charges, assessments, premiums, and third-party administrator fees arising under the workers' compensation insurance policies in which they participate.  In addition, the Debtors are authorized,

3

in their discretion, (a) to modify the automatic stay of section 362 of the Bankruptcy Code, without further order of this Court, to allow (i) Workers' Compensation Claims to proceed under the applicable workers' compensation insurance policies and (ii) the Debtors' insurance provider and/or third-party administrators to negotiate, settle, and/or litigate Workers' Compensation Claims; and (b) to pay resulting amounts, whether such claims arose before, on, or after the Petition Date.

9.      Notwithstanding anything to the contrary contained herein, any payment to be made hereunder, and any authorization contained, hereunder herein, shall be subject to and in accordance with any interim and final orders, as applicable, approving the use of cash collateral (the "Cash Collateral Order") and any budget in connection with any such use of cash collateral. To the extent there is any inconsistency between the terms of the Cash Collateral Order and any action taken or proposed to be taken hereunder, the terms of the Cash Collateral Order shall control.

10.     Nothing contained in the Motion or this Final Order, nor any payment made pursuant to the authority granted by this Final Order, shall constitute or be construed as (a) an implication or admission as to the validity of any claim against the Debtors, (b) a waiver of the Debtors' or any other party-in-interest's rights to dispute the amount of, basis for, or validity of any claim against the Debtors, (c) a waiver of any claims or causes of action that may exist against any creditor or interest holder, (d) a promise to pay any claim, (e) a concession by the Debtors that any lien (contractual, common law, statutory or otherwise) satisfied pursuant to the Motion are valid (and all rights to contest the extent, validity or perfection or seek avoidance of all such liens are expressly reserved), (f) an approval, assumption, adoption, or rejection of any agreement, contract, program, policy, or lease between the Debtors and any third party under section 365 of the Bankruptcy Code, (g) a waiver of the obligation of any party in interest to file a proof of claim,

4

or (h) otherwise affecting the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease.

11.     Nothing in the Motion or this Final Order, nor as a result of any payment made pursuant to this Final Order, shall be deemed or construed as a waiver of the right of the Debtors, or shall impair the ability of the Debtors, to contest the validity and amount of any payment made pursuant to this Final Order.

12.     Nothing herein shall create, nor is intended to create, any rights in favor of or enhance the status of any claim held by any party.

13.     Notwithstanding Bankruptcy Rule 6004(h), this Final Order shall be effective and enforceable immediately upon entry.

14.     The Debtors are authorized and empowered to take all action necessary to effectuate the relief granted in this Final Order.

15.     This Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Final Order.

Dated: [•], 2022
        [•], New York

_____
THE HONORABLE [____]
U.S. BANKRUPTCY JUDGE

5

**<u>Exhibit C</u>**

**Insurance Policies**

| # | Policy Named Insured | Policy Type | Insurer | Start Date | End Date | Policy Number | Total Program Cost |
|---|---|---|---|---|---|---|---|
| | | | **PROPERTY** | | | | |
| 1 | Endo International plc and Endo Pharma Ireland Limited | Property | Factory Mutual Insurance Europe S.A. | 7/1/2022 | 6/30/2023 | 1099665 | $44,740 |
| 2 | Par Formulations Private Limited | Property | Factory Mutual Insurance Europe S.A. | 7/1/2022 | 6/30/2023 | TBD | $373,517 |
| 3 | Endo International plc | Property | Factory Mutual Insurance Company | 7/1/2022 | 6/30/2023 | 1099697 | $1,343,347 |
| 4 | Endo International PLC, Pharma Canada Inc., Paladin Labs Inc., Laboratoires Paladin Inc. | Property | Factory Mutual Insurance Europe S.A. | 7/1/2022 | 6/30/2023 | 1099694 | $78,704 |
| | | | **DIRECTORS & OFFICERS** | | | | |
| 5 | Spec Ins Cove 9092 | Special Crime (Corporate K&R) | Lloyd's Insurance Company S.A. | 8/1/2021 | 7/31/2024 | B1723UBMSK2150080 | $12,808 |
| 6 | Endo International plc | D&O Policy and 6 Year Tail | Generali | 8/1/2022 | 2/1/2024 | B1723UFIMW2250240 | $4,410,900 |
| 7 | Endo International plc | D&O Policy and 6 Year Tail | Hiscox London | 8/1/2022 | 2/1/2024 | B1723UFIMW2250242 | $7,296,845 |
| 8 | Endo International plc | D&O Policy and 6 Year Tail | Allied World Assurance Company (Europe) | 8/1/2022 | 2/1/2024 | B1723UFIMW2250241 | $5,957,453 |
| 9 | Endo International plc | D&O Policy and 6 Year Tail | Lloyds of London | 8/1/2022 | 2/1/2024 | B1723UFIMW2250243 | $7,322,094 |
| 10 | Endo International plc | D&O Policy and 6 Year Tail | Assicurazioni Generali | 8/1/2022 | 2/1/2024 | B1723UFIMW2250245 | $532,350 |
| 11 | Endo International plc | D&O Policy and 6 Year Tail | Allied World Assurance Company (Europe) | 8/1/2022 | 2/1/2024 | B1723UFIMW2250246 | $472,017 |
| 12 | Endo International plc | D&O Policy and 6 Year Tail | Lloyd's - Beazley | 8/1/2022 | 2/1/2024 | B1723UFIMW2250250 | $1,437,345 |
| 13 | Endo International plc | D&O Liability | Isosceles Insurance Ltd. | 8/1/2022 | 8/1/2024 | EN-01-2022 | $1,000,000 |
| | | | **PRIMARY CASUALTY** | | | | |
| 14 | Endo International plc | Workers' Compensation (AOS) | Everest Premier Insurance Company | 9/26/2021 | 9/25/2022 | RM5WC00042-211 | $407,188 |
| 15 | Endo International plc | Workers' Compensation (FL/NJ) | Everest Premier Insurance Company | 9/26/2021 | 9/25/2022 | RM5WC00043-211 | $13,671 |

| # | Policy Named Insured | Policy Type | Insurer | Start Date | End Date | Policy Number | Total Program Cost |
|---|---|---|---|---|---|---|---|
| 16 | Endo International plc | Workers' Compensation (Retro) | Everest Premier Insurance Company | 9/26/2021 | 9/25/2022 | RM5WC00044-211 | $1,814 |
| 17 | Endo International plc | General Liability | Everest National Insurance Company | 9/26/2021 | 9/25/2022 | RM5GL00029-211 | $95,281 |
| 18 | Endo International plc | Auto Liability (AOS) | Everest National Insurance Company | 9/26/2021 | 9/25/2022 | RM5CA00026-211 | $309,188 |
| 19 | Endo International plc | Auto Liability (MA only) | Everest National Insurance Company | 9/26/2021 | 9/25/2022 | RM5CA00027-211 | $4,485 |
| 20 | Endo International plc | Primary Umbrella | Everest National Insurance Company | 9/26/2021 | 9/25/2022 | XC5CU00208-211 | $197,979 |
| 21 | Endo International plc | 1st Excess | Chubb | 9/26/2021 | 9/25/2022 | XCQ G72542083 001 | $139,650 |
| 22 | Endo International plc | 2nd Excess | XL Insurance America, Inc. | 9/26/2021 | 9/25/2022 | US00011755LI21A | $101,500 |
| 23 | Endo International plc | 3rd Excess | Liberty Mutual | 9/26/2021 | 9/25/2022 | ECO(22)59929060 | $52,015 |
| 24 | Endo International plc | 3th Excess | Navigators Insurance Company | 9/26/2021 | 9/25/2022 | NY21MXE916645IV | $52,000 |
| | | **MARINE & CARGO** | | | | | |
| 25 | Endo International plc | Marine and Cargo - Stock thru-put, Primary Layer | Lloyd's Insurance Company S.A. | 10/1/2021 | 9/30/2022 | B0509MARCW2150597 | $705,699 |
| 26 | Endo International plc | Marine and Cargo - Stock thru-put, 1st Layer | Lloyd's Insurance Company S.A. | 10/1/2021 | 9/30/2022 | B0509MARCW2150604 | $180,270 |
| 27 | Endo International plc | Marine and Cargo - Stock thru-put, 2nd Layer | Lloyd's Insurance Company S.A. | 10/1/2021 | 9/30/2022 | B0509MARCW2150926 | $103,020 |
| 28 | Endo International plc | Marine and Cargo - Stock thru-put, 3rd Layer | Lloyd's Insurance Company S.A. | 10/1/2021 | 9/30/2022 | B0509MARCW2150601 | $259,580 |
| 29 | Endo International plc | Marine and Cargo - Stock thru-put, 4th Layer | Lloyd's Insurance Company S.A. | 10/1/2021 | 9/30/2022 | B0509MARCW2150600 | $315,689 |
| | | **PRIMARY PRODUCTS** | | | | | |
| 30 | Endo International plc | Product Liability | LifeSciences Risk | 9/26/2021 | 9/25/2022 | LSR-PCO-00382-21 | $927,020 |
| 31 | Endo International plc | Product Liability | NorthStar LifeSciences | 9/26/2021 | 9/25/2022 | EXSS 1054 21 | $278,120 |
| 32 | Endo International plc | Product Liability | Illinois Union Insurance Company | 9/26/2021 | 9/25/2022 | G72543361 001 | $249,280 |

| # | Policy Named Insured | Policy Type | Insurer | Start Date | End Date | Policy Number | Total Program Cost |
|---|---|---|---|---|---|---|---|
| 33 | Endo International plc | Product Liability | TDC Specialty Underwriters | 9/26/2021 | 9/25/2022 | LSX-00001-20-05 | $623,170 |
| 34 | Endo International plc | Product Liability | NorthStar LifeSciences | 9/26/2021 | 9/25/2022 | EXSS 1054 21 | $283,270 |
| 35 | Endo International plc | Product Liability | Beazley/2623 AFB Lloyd's Syndicate | 9/26/2021 | 9/25/2022 | W24602210401 | $162,760 |
| 36 | Endo International plc | Product Liability | Liberty Bermuda | 9/26/2021 | 9/25/2022 | LSMAHC158997A | $265,900 |
| 37 | Endo International plc | Product Liability | 1218 NWL Lloyd's Syndicate | 9/26/2021 | 9/25/2022 | B1723UBMCI2150203 | $199,862 |
| 38 | Endo International plc | Product Liability | Navigators Management Company Inc | 9/26/2021 | 9/25/2022 | B1723UBMCI2150204 | $90,163 |
| **INTERNATIONAL CASUALTY** | | | | | | | |
| 39 | Endo International plc | International Casualty - Control Master Program Excluding Products | ACE AMERICAN INSURANCE COMPANY | 9/26/2021 | 9/25/2022 | CXC D38075135 006 | $37,905 |
| 40 | Endo Health Solutions Inc. | International Casualty - Fronted Products Liability (Canada) | Chubb Life Sciences Major Accounts | 9/26/2021 | 9/25/2022 | SPL G26805004 010 | $3,500 |
| 41 | Paladin | Canada - Local General Liability | Chubb Insurance Company of Canada | 9/26/2021 | 9/25/2022 | SPL G26805004 010 | $5,000 |
| 42 | Paladin | Canadian Fronted Products Liability | ACE American Insurance Company | 9/26/2021 | 9/25/2022 | SPL G26805004 010 | $29,500 |
| **EMPLOYMENT PRACTICES, FIDUCIARY, AND OTHER** | | | | | | | |
| 43 | Endo U.S. Inc. | Employment Practices Liability | Berkshire Hathaway Specialty Insurance Company | 9/1/2021 | 8/31/2022 | 47-EMC-317319-01 | $80,166 |
| 44 | Endo U.S. Inc. | Employment Practices Liability, 1st Layer | Endurance American Insurance Company | 9/1/2021 | 8/31/2022 | MPX30010668500 | $40,083 |
| 45 | Endo U.S. Inc. | Fiduciary Liability - US | Hudson Insurance Company | 9/1/2021 | 8/31/2022 | SFD31211867 | $59,496 |
| 46 | Endo U.S. Inc. and Par Pharmaceutical Holdings, Inc. | Fiduciary Excess Extension | Liberty | 9/1/2021 | 8/31/2022 | MAP30001239801 | – |
| 47 | Endo International plc | Fiduciary Liability - ongoing Ireland/Can | AIG | 9/1/2021 | 8/31/2022 | B1723UFIMW2150207 | $15,500 |

| # | Policy Named Insured | Policy Type | Insurer | Start Date | End Date | Policy Number | Total Program Cost |
|---|---|---|---|---|---|---|---|
| 48 | Endo International plc | Cyber Security | AIG | 4/1/2022 | 3/31/2023 | B1723UFIPY2150022 | $368,582 |
| 49 | Endo International plc | Crime | Lloyds (Chubb) | 8/1/2022 | 7/31/2023 | B1723UFIMW2250244 | $105,000 |
| 50 | Endo Health Solutions Inc. | ERISA Bond | Hartford Fire Insurance Company | 8/1/2022 | 8/1/2025 | 10BDDIE1977 | $308 |
| 51 | Endo Health Solutions Inc. | Business Travel Accident | FEDERAL INSURANCE COMPANY | 1/1/2022 | 1/1/2025 | 9907-26-53 | $13,953 |
| | | | | | | **Total:** | **$37,059,688** |

4

## Exhibit D

**Bonds**

| Debtor | Beneficiary Name | Bond Type | Bond Amount | Start Date | End Date | Total Cost | Surety |
|---|---|---|---|---|---|---|---|
| Endo Pharmaceuticals Inc. | U.S. Customs & Border Protection | Customs & Excise Tax | $100,000 | 10/30/21 | 10/29/22 | $480 | Hartford Financial Services Group |
| Endo Pharmaceuticals Inc. | PECO Energy Company | Financial Guarantee | $144,120 | 11/07/21 | 11/07/22 | $4,035 | Hartford Financial Services Group |
| Endo Aesthetics, LLC | U.S. Customs and Border Protection | Customs & Excise Tax | $50,000 | 10/30/21 | 10/29/22 | $240 | Hartford Financial Services Group |
| Par Pharmaceutical, Inc. | U.S. Customs & Border Protection | Customs & Excise Tax | $100,000 | 12/08/21 | 12/08/22 | $1,200 | Hartford Financial Services Group |
| Par Pharmaceutical Companies, Inc. and Endo Aesthetics LLC | State of Nebraska, Department of Health & Human Services | License & Permit | $100,000 | 11/04/21 | 11/04/22 | $1,400 | Liberty Mutual Group |
| Par Pharmaceutical Companies, Inc. and Endo Aesthetics LLC | Nevada State Board of Pharmacy | License & Permit | $100,000 | 11/04/21 | 11/04/22 | $1,400 | Liberty Mutual Group |
| Par Pharmaceutical Companies, Inc. and Endo Aesthetics LLC | Mississippi Board of Pharmacy | License & Permit | $100,000 | 12/04/21 | 12/04/22 | $1,400 | Travelers |
| | | | **$694,120** | | | **$10,155** | |

## **Exhibit E**

**Letters of Credit**

| Debtor | Value | Issuing Branch Parent Bank Name | Beneficiary |
|---|---|---|---|
| Endo Luxembourg Finance Company I S.à r.l. | $100,000 | Bank of America Merrill Lynch | Ace American Insurance Company |
| Endo Luxembourg Finance Company I S.à r.l. | $194,711 | Deutsche Bank AG | Deutsche Bank S.P.A. Milano |
| Endo Luxembourg Finance Company I S.à r.l. | $265,062 | Deutsche Bank AG | Deutsche Bank S.P.A. Milano |
| Endo Luxembourg Finance Company I S.à r.l. | $639,805 | Deutsche Bank AG | Deutsche Bank S.P.A. Milano |
| Endo Luxembourg Finance Company I S.à r.l. | $118,367 | Deutsche Bank AG | Deutsche Bank S.P.A. Milano |
| Endo Luxembourg Finance Company I S.à r.l. | $662,633 | Deutsche Bank AG | Deutsche Bank S.P.A. Milano |
| Endo LLC | $1,000,000 | JPMorgan Chase & CO. | Wheels, Inc |
| Endo Luxembourg Finance Company I S.à r.l. | $152,137 | JPMorgan Chase & CO. | CBCC-Lee Road Acquisitions, LLC |
| Endo LLC | $2,796,742 | JPMorgan Chase & CO. | Everest National Insurance Company |
| Endo LLC | $1,000,000 | JPMorgan Chase & CO. | Kuehne and Nagel (Ireland) LTD |
| Endo Pharmaceuticals Inc. | $100,000 | Royal Bank of Canada | Nevada State Board of Pharmacy |
| Endo Pharmaceuticals Inc. | $100,000 | Royal Bank of Canada | Nebraska Board of Pharmacy |
| Endo Pharmaceuticals Inc. | $100,000 | Royal Bank of Canada | California State Board of Pharmacy |
| Endo Pharmaceuticals Inc. | $5,000 | Royal Bank of Canada | State of Wisconsin - Wisconsin Department of Regulation and Licensing |
|  | **$7,234,458** |  |  |