SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
Paul D. Leake
Lisa Laukitis
Shana A. Elberg
Evan A. Hill
One Manhattan West
New York, New York 10001
Telephone: (212) 735-3000
Fax: (212) 735-2000

TOGUT, SEGAL & SEGAL LLP
Albert Togut
Frank A. Oswald
Kyle J. Ortiz
One Penn Plaza, Suite 3335
New York, New York 10119
Telephone: (212) 594-5000
Fax: (212) 967-4258

*Proposed Counsel to Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *In re* | **Chapter 11** |
| **ENDO INTERNATIONAL plc,** *et al.*, | **Case No. 22-22549 (___)** |
| **Debtors.**[1] | **(Joint Administration Pending)** |

**APPLICATION OF THE**
**DEBTORS FOR AN ORDER (I) APPOINTING**
**KROLL RESTRUCTURING ADMINISTRATION LLC**
**AS CLAIMS AND NOTICING AGENT** *NUNC PRO TUNC* **TO**
**THE PETITION DATE; AND (II) GRANTING RELATED RELIEF**

Endo International plc and its debtor affiliates, as debtors and debtors in possession

(collectively, the "Debtors" and together with their non-debtor affiliates, the "Company") in the

above-captioned chapter 11 cases (the "Chapter 11 Cases"), respectfully represent in support of

this application (this "Application") as follows:

---

[1]    The last four digits of Debtor Endo International plc's tax identification number are 3755.  Due to the large number of debtors in these chapter 11 cases, a complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/Endo. The location of the Debtors' service address for purposes of these chapter 11 cases is: 1400 Atwater Drive, Malvern, PA 19355.

## RELIEF REQUESTED

1.          By this Application, and pursuant to 28 U.S.C. § 156(c), section 105(a) of title 11 of the United States Code (the "Bankruptcy Code") and Local Rule 5075-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local Rules"), the Debtors seek entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), and the Protocol for the Employment of Claims and Noticing Agents under 28 U.S.C. § 156(c), instituted by the Office of the Clerk of the Bankruptcy Court (the "Clerk") on February 1, 2012 (the "Claims Agent Protocol"), (a) authorizing the employment and retention of Kroll Restructuring Administration LLC (f/k/a Prime Clerk LLC) ("Kroll"),[2] as claims and noticing agent (the "Claims and Noticing Agent") for the Debtors in the Chapter 11 Cases, effective *nunc pro tunc* to the Petition Date (as defined below), in accordance with the engagement agreement attached hereto as **Exhibit C** (the "Engagement Agreement"), dated as of September 30, 2021, by and between the Debtors and Kroll; and (b) granting related relief.  In support of this Application, the Debtors submit the *Declaration of Benjamin J. Steele in Support of the Application of the Debtors for an Order (I) Appointing Kroll Restructuring Administration LLC as Claims and Noticing Agent Nunc Pro Tunc to the Petition Date, and (II) Granting Related Relief* attached hereto as **Exhibit B** (the "Steele Declaration").

2.          By separate application, the Debtors will seek authorization to retain and employ Kroll as administrative advisor in the Chapter 11 Cases pursuant to section 327(a) of the Bankruptcy Code, because the administration of the Chapter 11 Cases will require Kroll to perform duties outside the scope of 28 U.S.C. § 156(c).

---

[2]          Effective March 29, 2022, Prime Clerk LLC changed its name to Kroll Restructuring Administration LLC. There has not been any change in the company's leadership, ownership, or organizational structure.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.).  This is a core proceeding pursuant to 28 U.S.C. § 157(b).

4.      Venue of the Chapter 11 Cases and this Application is proper in this district under 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

### I.      General Background

5.      On the date hereof (the "Petition Date"), the Debtors each commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code.  The Debtors have requested that the Chapter 11 Cases be jointly administered.

6.      The Debtors are authorized to continue to operate their businesses and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

7.      No trustee, examiner, or statutory committee of creditors has been appointed in the Chapter 11 Cases.

8.      Additional information regarding the Debtors, including their business operations, their corporate and capital structure, and the events leading to the commencement of the Chapter 11 Cases is set forth in the *Declaration of Mark Bradley in Support of Chapter 11 Petitions and First Day Papers* (the "First Day Declaration") filed contemporaneously herewith and incorporated herein by reference.

## BASIS FOR RELIEF

### I.       Qualifications

9.       Kroll is comprised of leading industry professionals with significant experience in both the legal and administrative aspects of large, complex chapter 11 cases. Kroll's professionals have experience in noticing, claims administration, solicitation, balloting and facilitating other administrative aspects of chapter 11 cases and experience in matters of this size and complexity. Kroll's professionals have acted as debtors' counsel, official claims and noticing agent, and/or administrative advisor in many large bankruptcy cases in this jurisdiction and in other districts nationwide. Kroll's active and former cases include: *In re SAS AB*, Case No. 22-10925 (MEW) (Bankr. S.D.N.Y.); *In re Revlon, Inc.*, Case No. 22-10760 (DSJ) (Bankr. S.D.N.Y.); *In re GTT Communications, Inc.,* Case No. 21-11880 (MEW) (Bankr. S.D.N.Y.); *In re Stoneway Capital Ltd.*, Case No. 21-10646 (JLG) (Bankr. S.D.N.Y.); *In re Purdue Pharma L.P.*, Case No. 19-23649 (RDD) (Bankr. S.D.N.Y.); *In re GenapSys, Inc.*, Case No. 22-10621 (BLS) (Bankr. D. Del); *In re GT Real Estate Holdings, LLC*, Case No. 22-10505 (KBO) (Bankr. D. Del.); *In re Stimwave Technologies Incorporated*, Case No. 22-10541 (KBO) (Bankr. D. Del.); *In re TPC Group Inc.*, Case No. 22-10493 (CTG) (Bankr. D. Del); *In re Mallinckrodt plc*, Case No. 20-12522 (Bankr. D. Del); *In re Talen Energy Supply, LLC*, Case No. 22-90054 (MI) (Bankr. S.D. Tex.); *In re Sungard AS New Holdings, LLC*, Case No. 22-90018 (DRJ) (Bankr. S.D. Tex.); *In re Aearo Technologies LLC*, Case No. 22-02890 (KRH) (Bankr. E.D. Va.); and *In re PG&E Corporation*, Case No. 19-30088 (DM) (Bankr. N.D. Cal.).

10.       By appointing Kroll as the Claims and Noticing Agent in the Chapter 11 Cases, the distribution of notices and the processing of claims will be expedited, and the Clerk will be relieved of the administrative burden of processing what may be an overwhelming number of claims.

4

## II.      Services to be Provided

11.      This Application pertains only to the work to be performed by Kroll under the Clerk's delegation of duties permitted by 28 U.S.C. § 156(c) and Local Rule 5075-1.  Any work to be performed by Kroll outside of this scope is not covered by this Application or by any order granting approval hereof.  Specifically, Kroll will perform the following tasks in its role as Claims and Noticing Agent, as well as all quality control relating thereto:

(a)      Prepare and serve required notices and documents in the Chapter 11 Cases in accordance with the Bankruptcy Code and the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), in the form and manner directed by the Debtors and/or this Court, including preparing and serving (i) notice of the commencement of the Chapter 11 Cases and the initial meeting of creditors under section 341(a) of the Bankruptcy Code, (ii) notice of any claims bar date, (iii) notices of transfers of claims, (iv) notices of objections to claims and objections to transfers of claims, (v) notices of any hearings on a disclosure statement and confirmation of the Debtors' plan or plans of reorganization, including under Bankruptcy Rule 3017(d), (vi) notice of the effective date of any plan, and (vii) all other notices, orders, pleadings, publications and other documents as the Debtors or this Court may deem necessary or appropriate for an orderly administration of the Chapter 11 Cases;

(b)      Maintain an official copy of the Debtors' schedules of assets and liabilities and statements of financial affairs (collectively, the "Schedules"), listing the Debtors' known creditors and the amounts owed thereto;

(c)      Maintain (i) a list of all potential creditors, equityholders and other parties-in-interest, and (ii) a "core" mailing list consisting of all parties described in Bankruptcy Rules 2002(i), (j), and (k), and those parties that have filed a notice of appearance pursuant to Bankruptcy Rule 9010; and update and make said lists available upon request by a party-in-interest or the Clerk (subject to any other orders of this Court);

(d)      (i) Furnish a notice to all potential creditors of the last date for filing proofs of claim and a form for filing proofs of claim; and (ii) after such form, notice, and the manner of notice are approved by this Court, notify said potential creditors of the existence, amount and classification of their respective claims as set forth in the Schedules, which may be effected by inclusion of such information (or the lack thereof, in cases where the Schedules indicate no debt due to the subject party) on a customized proof of claim form provided to potential creditors;

(e)     Maintain a post office box or address for the purpose of receiving claims and returned mail and process all mail received;

(f)     For all notices, motions, orders or other pleadings or documents served, prepare and file, or cause to be filed with the Clerk, an affidavit or certificate of service within seven business days of service, which includes (i) either a copy of the notice served or the docket number(s) and title(s) of the pleading(s) served, (ii) a list of persons to whom it was mailed (in alphabetical order) with their addresses, (iii) the manner of service, and (iv) the date served, in each case subject to any other orders of this Court;

(g)     Process all proofs of claim received, including those received by the Clerk, check said processing for accuracy and maintain the original proofs of claim in a secure area;

(h)     Provide an electronic interface for filing proofs of claim;

(i)     Maintain the official claims register for each Debtor (collectively, the "Claims Registers") on behalf of the Clerk on a case-specific website, subject to any other orders of this Court; upon the Clerk's request, provide the Clerk with certified, duplicate unofficial Claims Registers; and, except to the extent ordered otherwise by this Court, specify in the Claims Registers the following information for each claim docketed: (i) the claim number assigned, (ii) the date received, (iii) the name and address of the claimant and agent, if applicable, who filed the claim, (iv) the amount asserted, (v) the asserted classification(s) of the claim (*e.g.*, secured, unsecured, priority, etc.), (vi) the applicable Debtor, and (vii) any disposition of the claim;

(j)     Except to the extent ordered otherwise by this Court, provide public access to the Claims Registers, including complete proofs of claim with attachments, if any, without charge;

(k)     Implement necessary security measures to ensure the completeness and integrity of the Claims Registers and the safekeeping of the original claims;

(l)     Record all transfers of claims and provide any notices of such transfers as required by Bankruptcy Rule 3001(e);

(m)     Relocate, by messenger or overnight delivery, all of the court-filed proofs of claim to the offices of Kroll, not less than weekly;

(n)     Upon completion of the docketing process for all claims received to date for each case, turn over to the Clerk copies of the Claims Registers for the Clerk's review (upon the Clerk's request);

(o)     Monitor this Court's docket for all notices of appearance, address changes, and claims-related pleadings and orders filed and make necessary notations

on and/or changes to the claims register and any service or mailing lists, including to identify and eliminate duplicative names and addresses from such lists;

(p)     Identify and correct any incomplete or incorrect addresses in any mailing or service lists;

(q)     Assist in the dissemination of information to the public and respond to requests for administrative information regarding the case as directed by the Debtors or this Court, including through the use of a case website and/or call center;

(r)     If the Chapter 11 Cases are converted to cases under chapter 7 of the Bankruptcy Code, contact the Clerk's office within three days of notice to Kroll of entry of the order converting the cases;

(s)     Thirty days prior to the close of the Chapter 11 Cases, to the extent practicable, request that the Debtors submit to this Court a proposed order dismissing Kroll as Claims and Noticing Agent and terminating its services in such capacity upon completion of its duties and responsibilities and upon the closing of the Chapter 11 Cases;

(t)     Within seven days of notice to Kroll of entry of an order closing the Chapter 11 Cases, provide to this Court the final version of the Claims Registers as of the date immediately before the close of the Chapter 11 Cases; and

(u)     At the close of the Chapter 11 Cases, box and transport all original documents, in proper format, as provided by the Clerk's office, to (i) the Federal Archives Record Administration, located at Central Plains Region, 200 Space Center Drive, Lee's Summit, MO 64064 or (ii) any other location requested by the Clerk's office.

## III.     Professional Compensation

12.     The Debtors respectfully request that the undisputed fees and expenses incurred by Kroll in the performance of the above services be treated as administrative expenses of the Debtors' estates pursuant to 28 U.S.C. § 156(c) and section 503(b)(1)(A) of the Bankruptcy Code and be paid in the ordinary course of business without further application to or order of this Court. Kroll agrees to maintain records of all services showing dates, categories of services, fees charged and expenses incurred, and to serve monthly invoices on the Debtors, the office of the United States Trustee, counsel for the Debtors, counsel for any official committee monitoring the

expenses of the Debtors and any party-in-interest who specifically requests service of the monthly

invoices.  If any dispute arises relating to the Engagement Agreement or monthly invoices, the

parties shall meet and confer in an attempt to resolve the dispute; if resolution is not achieved, the

parties may seek resolution of the matter from this Court.

13.     Prior to the Petition Date, the Debtors provided Kroll an advance in the

amount of $100,000, which was received by Kroll on or about November 24, 2021.  In addition,

Kroll received payment for actual and/or estimated prepetition fees and expenses as set forth in the

below chart:

| Payment Date | Amount |
|---|---|
| 11/24/2021 | $87,479.75 |
| 12/23/2021 | $359,597.90 |
| 1/7/2022 | $113,481.25 |
| 2/11/2022 | $111,675.95 |
| 3/4/2022 | $88,065.65 |
| 3/25/2022 | $57,036.75 |
| 5/27/2022 | $257,051.30 |
| 7/29/2022 | $162,197.57 |
| 8/10/2022 | $630,004.30 |

Except as stated in this paragraph, Kroll has not received any payments from the Debtors in the 90

days prior to the Petition Date.  Kroll seeks to first apply the advance to all prepetition invoices,

and thereafter, to have the advance replenished to the original advance amount, and thereafter, to

hold the advance under the Engagement Agreement during the Chapter 11 Cases as security for

the payment of fees and expenses incurred under the Engagement Agreement.

14.     Additionally, under the terms of the Engagement Agreement, the Debtors

have agreed to indemnify, defend and hold harmless Kroll and its members, directors, officers,

employees, representatives, affiliates, consultants, subcontractors and agents under certain

circumstances specified in the Engagement Agreement, except in circumstances resulting solely

from Kroll's gross negligence or willful misconduct, or as otherwise provided in the Engagement Agreement or Proposed Order.  The Debtors believe such an indemnification obligation is customary, reasonable and necessary to retain the services of a Claims and Noticing Agent in the Chapter 11 Cases.

## IV.    Disinterestedness

15.    Although the Debtors do not propose to employ Kroll under section 327 of the Bankruptcy Code pursuant to this Application (such retention will be sought by separate application), Kroll has nonetheless reviewed its electronic database to determine whether it has any relationships with the creditors and parties-in-interest provided by the Debtors and, to the best of the Debtors' knowledge, information and belief, and except as disclosed in the Steele Declaration, Kroll has represented that it neither holds nor represents any interest materially adverse to the Debtors' estates in connection with any matter on which it would be employed.

16.    Moreover, in connection with its retention as Claims and Noticing Agent, Kroll represents in the Steele Declaration, among other things, that:

(a)    Kroll is not a creditor of the Debtors;

(b)    Kroll will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in the Chapter 11 Cases;

(c)    By accepting employment in the Chapter 11 Cases, Kroll waives any rights to receive compensation from the United States government in connection with the Debtors' Chapter 11 Cases;

(d)    In its capacity as the Claims and Noticing Agent in the Chapter 11 Cases, Kroll will not be an agent of the United States and will not act on behalf of the United States;

(e)    Kroll will not employ any past or present employees of the Debtors in connection with its work as the Claims and Noticing Agent in the Chapter 11 Cases;

(f)     Kroll is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is to be engaged;

(g)     In its capacity as Claims and Noticing Agent in the Chapter 11 Cases, Kroll will not intentionally misrepresent any fact to any person;

(h)     Kroll shall be under the supervision and control of the Clerk's office with respect to the receipt and recordation of claims and claim transfers;

(i)     Kroll will comply with all requests of the Clerk's office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

(j)     None of the services provided by Kroll as Claims and Noticing Agent in the Chapter 11 Cases shall be at the expense of the Clerk's office.

17.     Kroll will supplement its disclosure to this Court if any facts or circumstances are discovered that would require such additional disclosure.

## V.     Compliance with Claims and Noticing Agent Protocol

18.     This Application complies with the Claims Agent Protocol and substantially conforms to the standard claims and noticing agent applications in use in this Court.  The Debtors' selection of Kroll to act as the Claims and Noticing Agent has satisfied the Claims Agent Protocol in that the Debtors have obtained and reviewed engagement proposals from three court-approved claims and noticing agents to ensure selection through a competitive process.  Moreover, the Debtors submit, based on all engagement proposals obtained and reviewed, that Kroll's rates are competitive and reasonable given Kroll's quality of services and expertise.

19.     Although the Debtors have not yet filed their Schedules, they anticipate that there will be in excess of 50,000 entities to be noticed.  Local Rule 5075-1(b) provides that "[i]n a case in which the number of creditors and equity security holders, in the aggregate, is 250 or more, the estate shall retain, subject to approval of this Court, a claims and noticing agent in accordance with the [Claims Agent Protocol]."  In light of the number of anticipated claimants and the

complexity of the Debtors' businesses, the Debtors submit that the appointment of a claims and noticing agent is both necessary and in the best interests of both the Debtors' estates and their creditors.

## NOTICE

20.      Notice of this Application shall be given to (a) the Office of the United States Trustee for the Southern District of New York; (b) counsel to the administrative agent under the Debtors' prepetition credit agreement; (c) counsel to the indenture trustee under each of the Debtors' outstanding bond issuances; (d) Gibson, Dunn & Crutcher LLP, as counsel to the Ad Hoc First Lien Group (as defined in the First Day Declaration); (e) Paul, Weiss, Rifkind, Wharton & Garrison LLP, as counsel to the Ad Hoc Cross-Holder Group (as defined in the First Day Declaration); (f) the U.S. Attorney for the Southern District of New York; (g) the attorneys general for all 50 states and the District of Columbia; (h) the Debtors' 50 largest unsecured creditors on a consolidated basis; (i) the Internal Revenue Service; (j) the Securities and Exchange Commission; (k) the proposed future claimants representative in the Chapter 11 Cases; (l) any party that has requested notice pursuant to Bankruptcy Rule 2002; and (m) any other party entitled to notice pursuant to Local Rule 9013-1(b).  The Debtors submit that no other or further notice need be provided.

## NO PRIOR REQUEST

21.      No prior request for the relief sought herein has been made to this or any other court.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

WHEREFORE the Debtors respectfully request that this Court (a) enter the Proposed

Order in substantially the form attached hereto as **Exhibit A** and (b) grant such other and further

relief as may be just and proper.

Dated: August 16, 2022
      New York, New York      SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

By:  */s/ Paul D. Leake*
      Paul D. Leake
      Lisa Laukitis
      Shana A. Elberg
      Evan A. Hill
      One Manhattan West
      New York, New York 10001
      Telephone: (212) 735-3000
      Fax: (212) 735-2000

      – and –

      */s/ Albert Togut*
      TOGUT, SEGAL & SEGAL LLP
      Albert Togut
      Frank A. Oswald
      Kyle J. Ortiz
      One Penn Plaza, Suite 3335
      New York, New York 10119
      Telephone: (212) 594-5000
      Fax: (212) 967-4258

      *Proposed Counsel for the Debtors*
      *and Debtors in Possession*

## Exhibit A

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *In re* | **Chapter 11** |
| **ENDO INTERNATIONAL plc,** *et al.*, | **Case No. 22-22549 (___)** |
| **Debtors.**[1] | **(Joint Administration Pending)** |

**ORDER (I) APPOINTING KROLL**
**RESTRUCTURING ADMINISTRATION LLC AS**
**CLAIMS AND NOTICING AGENT** *NUNC PRO TUNC*
**TO THE PETITION DATE; AND (II) GRANTING RELATED RELIEF**

1.     Upon the application (the "Application")[2] of the debtors and debtors in

possession (collectively, the "Debtors" and together with their non-debtor affiliates, the

"Company") in the above-captioned cases (the "Chapter 11 Cases"), pursuant to 28 U.S.C.

§ 156(c), section 105(a) of title 11 of the United States Code (the "Bankruptcy Code"), and Local

Rule 5075-1 of the Local Bankruptcy Rules for the Southern District of New York (the "Local

Rules"), for the entry of an order (a) authorizing the employment and retention of Kroll

Restructuring Administration LLC ("Kroll")[3] as claims and noticing agent (the "Claims and Noticing

Agent") in the Chapter 11 Cases, pursuant to the engagement agreement attached to the

Application as **Exhibit C** (the "Engagement Agreement"), dated as of September 30, 2021, by and

between the Debtors and Kroll, effective *nunc pro tunc* to the Petition Date, to among other things,

---

[1]     The last four digits of Debtor Endo International plc's tax identification number are 3755.  Due to the large number of debtors in these chapter 11 cases, a complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/Endo. The location of the Debtors' service address for purposes of these chapter 11 cases is: 1400 Atwater Drive, Malvern, PA 19355.

[2]     Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Application.

[3]     Effective March 29, 2022, Prime Clerk LLC changed its name to Kroll Restructuring Administration LLC. There has not been any change in the company's leadership, ownership, or organizational structure.

(i) distribute required notices to parties-in-interest, (ii) receive, maintain, docket, and otherwise administer the proofs of claim filed in the Chapter 11 Cases, and (iii) provide such other administrative services, as required by the Debtors, that would fall within the purview of services to be provided by the Clerk; and (b) granting related relief, all as more fully set forth in the Application and upon the Steele Declaration submitted in support of the Application; and this Court having reviewed the Application, the First Day Declaration, and the Steele Declaration, and having heard the statements of counsel regarding the relief requested in the Application at a hearing before this Court (the "Hearing"); and this Court having found that: (a) this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.); (b) this is a core proceeding pursuant to 28 U.S.C. §§ 157(a)-(b) and 1334(b); (c) venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409; and (d) due and proper notice of the Application and the Hearing was sufficient under the circumstances; and this Court having determined that the legal and factual bases set forth in the Application establish just cause for the relief granted herein; and it appearing that the relief requested in the Application is in the best interests of the Debtors, their estates, creditors, and other parties-in-interest; and upon all of the proceedings had before this Court and after due deliberation and sufficient cause appearing therefor;

**IT IS HEREBY ORDERED THAT:**

1.      The Application is APPROVED as set forth herein.

2.      The Debtors are authorized to retain Kroll as Claims and Noticing Agent, effective *nunc pro tunc* to the Petition Date, under the terms of the Engagement Agreement, and Kroll is authorized and directed to perform noticing services and to receive, maintain, record and otherwise administer the proofs of claim filed in the Chapter 11 Cases, and all related tasks, all as described in the Application.

3.      Kroll shall serve as the interim custodian of court records and shall be designated as the authorized repository for all proofs of claim filed in the Chapter 11 Cases and is authorized and directed to maintain official claims registers for each of the Debtors, to provide public access to every proof of claim unless otherwise ordered by this Court, and to provide the Clerk with a certified duplicate thereof upon the request of the Clerk, who remains the official custodian of court records under 28 U.S.C. § 156(e).

4.      Kroll is authorized and directed to provide an electronic interface for filing proofs of claim and to obtain a post office box or address for the receipt of proofs of claim.

5.      Kroll is authorized to take such other action to comply with all duties set forth in the Application.

6.      The Debtors are authorized to compensate Kroll in accordance with the terms of the Engagement Agreement upon the receipt of reasonably detailed invoices setting forth the services provided by Kroll and the rates charged for each, and to reimburse Kroll for all reasonable and necessary expenses it may incur, upon the presentation of appropriate documentation, without the need for Kroll to file fee applications or otherwise seek Court approval for the compensation of its services and reimbursement of its expenses.

7.      Kroll shall maintain records of all services showing dates, categories of services, fees charged and expenses incurred, and shall serve monthly invoices on the Debtors, the office of the United States Trustee, counsel for the Debtors, counsel for any official committee, monitoring the expenses of the Debtors and any party-in-interest who specifically requests service of the monthly invoices.

8.      After entry of an order terminating Kroll's services as the Claims and Noticing Agent, upon the closing of the Chapter 11 Cases, or for any other reason, Kroll shall be

responsible for archiving all proofs of claim with the Federal Archives Record Administration, if applicable.

9.       The parties shall meet and confer in an attempt to resolve any dispute which may arise relating to the Engagement Agreement or monthly invoices; *provided* that the parties may seek resolution of the matter from this Court if resolution is not achieved.

10.      Pursuant to section 503(b)(1)(A) of the Bankruptcy Code, the fees and expenses of Kroll under this Order shall be an administrative expense of the Debtors' estates.

11.      Kroll may apply its advance to all prepetition invoices, which advance shall be replenished to the original advance amount, and thereafter, Kroll may hold its advance under the Engagement Agreement during the Chapter 11 Cases as security for the payment of fees and expenses incurred under the Engagement Agreement.

12.      The Debtors shall indemnify Kroll under the terms of the Engagement Agreement, as modified pursuant to this Order.

13.      All requests by Kroll for the payment of indemnification as set forth in the Engagement Agreement shall be made by means of an application to this Court and shall be subject to review by this Court to ensure that payment of such indemnity conforms to the terms of the Engagement Agreement and is reasonable under the circumstances of the litigation or settlement in respect of which indemnity is sought; *provided, however*, that in no event shall Kroll be indemnified in the case of its own bad faith, self-dealing, breach of fiduciary duty (if any), gross negligence or willful misconduct.

14.      In the event that Kroll seeks reimbursement from the Debtors for attorneys' fees and expenses in connection with the payment of an indemnity claim pursuant to the Engagement Agreement, the invoices and supporting time records for the attorneys' fees and

expenses shall be included in Kroll's own applications, both interim and final, but determined by this Court after notice and a hearing.

15.    Notwithstanding anything in this Order, the Application, or the Engagement Agreement to the contrary, the limitation of liability section in paragraph 10 of the Engagement Agreement is deemed to be of no force or effect with respect to the services provided pursuant to this Order.

16.    In the event Kroll is unable to provide the services set out in this Order, Kroll will immediately notify the Clerk and the Debtors' attorney and, upon approval of this Court, cause to have all original proofs of claim and computer information turned over to another claims and noticing agent with the advice and consent of the Clerk and the Debtors' attorney.

17.    The Debtors may submit a separate retention application, pursuant to section 327 of the Bankruptcy Code and/or any applicable law, for work that is to be performed by Kroll but is not specifically authorized by this Order.

18.    Kroll shall not cease providing claims processing services during the Chapter 11 Cases for any reason, including nonpayment, without an order of this Court.

19.    In the event of any inconsistency between the Engagement Agreement, the Application and this Order, this Order shall govern.

20.    Notwithstanding anything to the contrary contained herein, any payment to be made hereunder, and any authorization contained herein, shall be subject to any interim or final order approving the Debtors' use of cash collateral (the "Cash Collateral Order") and any budget in connection with any such use of cash collateral. To the extent there is any inconsistency between the terms of the Cash Collateral Order and any action taken or proposed to be taken hereunder, the terms of the Cash Collateral Order shall control.

21.     Notwithstanding any provision in the Bankruptcy Rules to the contrary, this Order shall be immediately effective and enforceable upon its entry.

22.     The Debtors and Kroll are authorized to take all actions necessary to effectuate the relief granted in this Order pursuant to the Application.

23.     The Court shall retain jurisdiction with respect to all matters arising from or related to the implementation, interpretation, or enforcement of this Order.

Dated: [●], 20__
       [●], New York

_____
THE HONORABLE [_____]
UNITED STATES BANKRUPTCY JUDGE

## **Exhibit B**

**Steele Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| *In re* | **Chapter 11** |
| **ENDO INTERNATIONAL plc**, *et al.*, | **Case No. 22-22549 (___)** |
| **Debtors.**[1] | **(Joint Administration Pending)** |

**DECLARATION OF**
**BENJAMIN J. STEELE IN SUPPORT OF**
**THE APPLICATION OF THE DEBTORS FOR**
**AN ORDER (I) APPOINTING KROLL RESTRUCTURING**
**ADMINISTRATION LLC AS CLAIMS AND NOTICING AGENT** *NUNC*
*PRO TUNC* **TO THE PETITION DATE; AND (II) GRANTING RELATED RELIEF**

I, Benjamin J. Steele, under penalty of perjury, declare as follows:

1.       I am a Managing Director of Kroll Restructuring Administration LLC ("Kroll"),[2] a chapter 11 administrative services firm whose locations include 55 East 52nd Street, 17th Floor, New York, NY 10055.  I make this declaration on behalf of Kroll (this "Declaration") in support of the above-captioned debtors' (collectively, the "Debtors" and together with their non-debtor affiliates, the "Company") *Application for an Order (I) Appointing Kroll Restructuring Administration LLC as Claims and Noticing Agent Nunc Pro Tunc to the Petition Date; and (II) Granting Related Relief* (the "Application"),[3] which was filed contemporaneously herewith.

---

[1]       The last four digits of Debtor Endo International plc's tax identification number are 3755.  Due to the large number of debtors in these chapter 11 cases, a complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/Endo. The location of the Debtors' service address for purposes of these chapter 11 cases is: 1400 Atwater Drive, Malvern, PA 19355.

[2]       Effective March 29, 2022, Prime Clerk LLC changed its name to Kroll Restructuring Administration LLC. There has not been any change in the company's leadership, ownership, or organizational structure.

[3]       Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Application.

Except as otherwise noted, I have personal knowledge of the matters set forth herein, and if called and sworn as a witness, I could and would testify competently thereto.

## QUALIFICATIONS

2. Kroll is comprised of leading industry professionals with significant experience in both the legal and administrative aspects of large, complex chapter 11 cases. Kroll's professionals have experience in noticing, claims administration, solicitation, balloting and facilitating other administrative aspects of chapter 11 cases and experience in matters of this size and complexity. Kroll's professionals have acted as debtors' counsel, official claims and noticing agent and/or administrative advisor in many large bankruptcy cases in this District and in other districts nationwide. Kroll's active and former cases include: *In re SAS AB*, Case No. 22-10925 (MEW) (Bankr. S.D.N.Y.); *In re Revlon, Inc.*, Case No. 22-10760 (DSJ) (Bankr. S.D.N.Y.); *In re GTT Communications, Inc.*, Case No. 21-11880 (MEW) (Bankr. S.D.N.Y.); *In re Stoneway Capital Ltd.*, Case No. 21-10646 (JLG) (Bankr. S.D.N.Y.); *In re Purdue Pharma L.P.*, Case No. 19-23649 (RDD) (Bankr. S.D.N.Y.); *In re GenapSys, Inc.*, Case No. 22-10621 (BLS) (Bankr. D. Del); *In re GT Real Estate Holdings, LLC*, Case No. 22-10505 (KBO) (Bankr. D. Del.); *In re Stimwave Technologies Incorporated*, Case No. 22-10541 (KBO) (Bankr. D. Del.); *In re TPC Group Inc.*, Case No. 22-10493 (CTG) (Bankr. D. Del); *In re Mallinckrodt plc*, Case No. 20-12522 (Bankr. D. Del); *In re Talen Energy Supply, LLC*, Case No. 22-90054 (MI) (Bankr. S.D. Tex.); *In re Sungard AS New Holdings, LLC*, Case No. 22-90018 (DRJ) (Bankr. S.D. Tex.); *In re Aearo Technologies LLC*, Case No. 22-02890 (KRH) (Bankr. E.D. Va.); and *In re PG&E Corporation*, Case No. 19-30088 (DM) (Bankr. N.D. Cal.).

## SERVICES TO BE PROVIDED

3. As agent and custodian of Court records pursuant to 28 U.S.C. § 156(c), Kroll will perform, at the request of the Clerk, the services specified in the Application and the

Engagement Agreement, and, at the Debtors' request, any related administrative, technical and support services as specified in the Application and the Engagement Agreement. In performing such services, Kroll will charge the Debtors the rates set forth in the Engagement Agreement, which is attached as **Exhibit C** to the Application.

## PROFESSIONAL COMPENSATION

4.      Prior to the Petition Date, the Debtors provided Kroll an advance in the amount of $100,000, which was received by Kroll on or about November 24, 2021. In addition, Kroll received payment for actual and/or estimated prepetition fees and expenses as set forth in the below chart:

| Payment Date | Amount |
|---|---|
| 11/24/2021 | $87,479.75 |
| 12/23/2021 | $359,597.90 |
| 1/7/2022 | $113,481.25 |
| 2/11/2022 | $111,675.95 |
| 3/4/2022 | $88,065.65 |
| 3/25/2022 | $57,036.75 |
| 5/27/2022 | $257,051.30 |
| 7/29/2022 | $162,197.57 |
| 8/10/2022 | $630,004.30 |

Except as stated in this paragraph, Kroll has not received any payments from the Debtors in the 90 days prior to the Petition Date. Kroll seeks to first apply the advance to all prepetition invoices, and thereafter, to have the advance replenished to the original advance amount, and thereafter, to hold the advance under the Engagement Agreement during the Chapter 11 Cases as security for the payment of fees and expenses incurred under the Engagement Agreement.

## DISINTERESTEDNESS

5.      Kroll represents, among other things, the following:

(a)      Kroll is not a creditor of the Debtors;

3

(b)     Kroll will not consider itself employed by the United States government and shall not seek any compensation from the United States government in its capacity as the Claims and Noticing Agent in the Chapter 11 Cases;

(c)     By accepting employment in the Chapter 11 Cases, Kroll waives any rights to receive compensation from the United States government in connection with the Chapter 11 Cases;

(d)     In its capacity as the Claims and Noticing Agent in the Chapter 11 Cases, Kroll will not be an agent of the United States and will not act on behalf of the United States;

(e)     Kroll will not employ any past or present employees of the Debtors in connection with its work as the Claims and Noticing Agent in the Chapter 11 Cases;

(f)     Kroll is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code with respect to the matters upon which it is to be engaged;

(g)     In its capacity as Claims and Noticing Agent in the Chapter 11 Cases, Kroll will not intentionally misrepresent any fact to any person;

(h)     Kroll shall be under the supervision and control of the Clerk's office with respect to the receipt and recordation of claims and claim transfers;

(i)     Kroll will comply with all requests of the Clerk's office and the guidelines promulgated by the Judicial Conference of the United States for the implementation of 28 U.S.C. § 156(c); and

(j)     None of the services provided by Kroll as Claims and Noticing Agent in the Chapter 11 Cases shall be at the expense of the Clerk's office.

6.      To the best of my knowledge, and based solely upon information provided to me by the Debtors, and except as provided herein, neither Kroll, nor any of its professionals, has any materially adverse connection to the Debtors, their creditors or other relevant parties.  Kroll may have relationships with certain of the Debtors' creditors as vendors or in connection with cases in which Kroll serves or has served in a neutral capacity as claims and noticing agent and/or administrative advisor for another chapter 11 debtor.

7.      Kroll has reviewed its electronic database to determine whether it has any relationships with the list of entities provided by the Debtors.  Based on the results of such search,

at this time, Kroll is not aware of any relationship that would present a disqualifying conflict of interest.  Should Kroll discover any new relevant facts or relationships bearing on the matters described herein during the period of its retention, Kroll will use reasonable efforts to promptly file a supplemental declaration.

8.      Certain of Kroll's professionals were partners of or formerly employed by firms that are providing or may provide professional services to parties-in-interest in the Chapter 11 Cases.  Such firms include Kirkland & Ellis LLP; Weil, Gotshal & Manges LLP; O'Melveny & Myers LLP; Mayer Brown LLP; Fried, Frank, Harris, Shriver & Jacobson LLP; Bracewell LLP; Proskauer Rose LLP; Curtis, Mallet-Prevost, Colt & Mosle LLP; Baker & Hostetler LLP; Togut, Segal & Segal LLP; Gibson, Dunn & Crutcher LLP; Willkie Farr & Gallagher LLP; Jones Day; Shearman & Sterling LLP; KPMG LLP; PricewaterhouseCoopers LLP; Epiq Bankruptcy Solutions, LLC; Donlin, Recano & Company, Inc. and Kurtzman Carson Consultants LLC. Except as may be disclosed herein, these professionals did not work on any matters involving the Debtors while employed by their previous firms.  Moreover, these professionals were not employed by their previous firms when the Chapter 11 Cases were filed.

9.      Kroll is an indirect subsidiary of Kroll, LLC ("Kroll Parent").  Kroll Parent is the world's premier provider of services and digital products related to governance, risk and transparency.  Within the Kroll Parent corporate structure, Kroll operates independently from Kroll Parent.  As such, any relationships that Kroll Parent and its affiliates maintain do not create an interest of Kroll's that is materially adverse to the Debtors' estates or any class of creditors or security holders.

10.     Kroll and its personnel have, and will continue to have, relationships personally or in the ordinary course of business with certain vendors, professionals, financial

institutions, and other parties-in-interest that may be involved in the Chapter 11 Cases.  Kroll may also provide professional services to entities or persons that may be creditors or parties-in-interest in the Chapter 11 Cases, which services do not directly relate to, or have any direct connection with, the Chapter 11 Cases or the Debtors.

11.     Kroll, and its personnel in their individual capacities, regularly utilize the services of law firms, investment banking and advisory firms, accounting firms and financial advisors.  Such firms engaged by Kroll or its personnel may appear in chapter 11 cases representing the Debtors or parties-in-interest.  All engagements where such firms represent Kroll or its personnel in their individual capacities are unrelated to the Chapter 11 Cases.

12.     Kroll further declares that Kroll does not now have nor has it ever had any contract or agreement with XClaim Inc. or with any other party under which Kroll provides, provided, or will provide exclusive access to claims data and/or under which Kroll would be compensated for claims data made available by Kroll.

13.     Based on the foregoing, I believe that Kroll is a "disinterested person" as that term is defined in section 101(14) of the Bankruptcy Code.  Moreover, to the best of my knowledge and belief, neither Kroll nor any of its partners or employees hold or represent any interest materially adverse to the Debtors' estates with respect to any matter upon which Kroll is to be engaged.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

and correct to the best of my information, knowledge and belief.


Executed:     August 16, 2022
              New York, New York

                              By:     _/s/ Benjamin J. Steele_____
                                      Benjamin J. Steele
                                      Managing Director
                                      Kroll Restructuring Administration LLC
                                      55 East 52nd Street, 17th Floor
                                      New York, New York 10055

## **Exhibit C**

**Engagement Agreement**

**Prime Clerk**
A **KROLL** BUSINESS

**Prime Clerk LLC Engagement Agreement**

This Agreement is entered into as of September 30, 2021 between Prime Clerk LLC ("**Prime Clerk**") and Endo International plc (together with its subsidiaries listed on Schedule 1 hereto, the "**Company**").[1]

In consideration of the promises set forth herein and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

1. **Services**

   (a)  Prime Clerk agrees to provide the Company with consulting services regarding legal noticing, claims management and reconciliation, plan solicitation, balloting, disbursements, preparation of schedules of assets and liabilities and statements of financial affairs, communications, confidential online workspaces or data rooms (publication to which shall not violate the confidentiality provisions of this Agreement) and any other services agreed upon by the parties or otherwise required by applicable law, governmental regulations or court rules or orders (all such services collectively, the "**Services**").

   (b)  The Company acknowledges and agrees that Prime Clerk will often take direction from the Company's representatives, employees, agents and/or professionals (collectively, the "**Company Parties**") with respect to providing Services hereunder.  The parties agree that Prime Clerk may rely upon, and the Company agrees to be bound by, any requests, advice or information provided by the Company Parties to the same extent as if such requests, advice or information were provided by the Company.

   (c)  The Company agrees and understands that Prime Clerk shall not provide the Company or any other party with legal advice.

2. **Rates, Expenses and Payment**

   (a)  Prime Clerk will provide the Services on an as-needed basis and upon request or agreement of the Company, in each case in accordance with the rate structure attached hereto and incorporated by reference herein (the "**Rate Structure**"); provided, however that Prime Clerk will provide a discount of 10% off the attached hourly rates throughout the term of the engagement.  The Company agrees to pay for reasonable and documented out of pocket expenses incurred by Prime Clerk in connection with providing Services hereunder.

   (b)  The Rate Structure (inclusive of the discount described in the proviso of paragraph 2(a) hereof) sets forth individual unit pricing for each of the Services.  The Company may request separate Services or all of the Services.

   (c)  Prime Clerk will bill the Company no less frequently than monthly.  All invoices shall be due and payable upon receipt.  Where an expense or group of expenses to be incurred is expected to exceed $10,000 (e.g., publication notice), Prime Clerk may require advance or direct payment from the Company before the performance of Services hereunder.  If any amount is unpaid as of 30 days after the later of delivery of an invoice or the date on which payment is due pursuant to an order of the bankruptcy court having jurisdiction over any chapter 11

---

[1] The Company shall include, to the extent applicable, the Company, as debtor and debtor in possession in any chapter 11 case, together with any affiliated debtors and debtors in possession whose chapter 11 cases are jointly administered with the Company's chapter 11 case.

cases filed by the Company, the Company agrees to pay a late charge equal to 1.5% of the total amount unpaid every 30 days.

(d) In case of a good faith dispute with respect to an invoice amount, the Company shall provide a detailed written notice of such dispute to Prime Clerk within 10 days of receipt of the invoice.  The undisputed portion of the invoice will remain due and payable immediately upon receipt thereof.  Late charges shall not accrue on any amounts disputed in good faith.

(e) The Company shall pay any fees and expenses for Services relating to, arising out of or resulting from any error or omission made by the Company or the Company Parties.

(f) The Company shall pay or reimburse any taxes that are applicable to Services performed hereunder or that are measured by payments made hereunder and are required to be collected by Prime Clerk or paid by Prime Clerk to a taxing authority.

(g) Upon execution of this Agreement, the Company shall pay Prime Clerk an advance of $100,000.  Prime Clerk may use such advance against unpaid fees and expenses hereunder. Prime Clerk may use the advance against all prepetition fees and expenses, which advance then shall be replenished immediately by the Company to the original advance amount; thereafter, Prime Clerk may hold such advance to apply against unpaid fees and expenses hereunder. At the conclusion of the engagement, Prime Clerk shall return the remaining portion of the advance, if any.

(h) Prime Clerk reserves the right to make reasonable increases to the Rate Structure on an annual basis effective on the first business day of each year; provided, however, that Prime Clerk shall continue to provide the Company a 10% discount on all hourly rates relative to its standard hourly rates during the term of the engagement.  If such annual increases represent an increase greater than 10% from the previous year's levels, Prime Clerk shall provide 30 days' notice to the Company of such increases.

3.  **Retention in Bankruptcy Case**

(a) If the Company commences a case pursuant to title 11 of the United States Code (the "***Bankruptcy Code***"), the Company promptly shall file applications with the Bankruptcy Court to retain Prime Clerk (i) as claims and noticing agent pursuant to 28 U.S.C. § 156(c) and (ii) as administrative advisor pursuant to section 327(a) of the Bankruptcy Code for all Services that fall outside the scope of 28 U.S.C. § 156(c).  The form and substance of such applications and any order approving them shall be reasonably acceptable to Prime Clerk.

(b) If any Company chapter 11 case converts to a case under chapter 7 of the Bankruptcy Code, Prime Clerk will continue to be paid for Services pursuant to 28 U.S.C. § 156(c) and the terms hereunder.

4.  **Confidentiality**

(a) The Company and Prime Clerk agree to keep confidential all non-public records, systems, procedures, software and other information received from the other party in connection with the Services provided hereunder; provided, however, that if any such information was publicly available, already in the party's possession or known to it without breach of any obligation of confidentiality, independently developed, lawfully obtained from a third party or

required to be disclosed by law, then a party shall bear no responsibility for publicly disclosing such information.

(b) If either party reasonably believes that it is required to disclose any confidential information pursuant to an order from a governmental authority, such party shall provide written notice to the other party promptly after receiving such order, to allow the other party sufficient time to seek any remedy available under applicable law to prevent disclosure of the information.

## 5.   Property Rights

Prime Clerk reserves all property rights in and to all materials, concepts, creations, inventions, works of authorship, improvements, designs, innovations, ideas, discoveries, know-how, techniques, programs, systems, specifications, applications, processes, routines, manuals, documentation and any other information or property (collectively, "***Property***") furnished by Prime Clerk for itself or for use by the Company hereunder.  Fees and expenses paid by the Company do not vest in the Company any rights in such Property.  Such Property is only being made available for the Company's use during and in connection with the Services provided by Prime Clerk hereunder.

## 6.   Bank Accounts

At the request of the Company or the Company Parties, Prime Clerk shall be authorized to establish accounts with financial institutions in the name of and as agent for the Company to facilitate distributions pursuant to a chapter 11 plan or other transaction.  To the extent that certain financial products are provided to the Company pursuant to Prime Clerk's agreement with financial institutions, Prime Clerk may receive compensation from such institutions for the services Prime Clerk provides pursuant to such agreement.

## 7.   Term and Termination

(a) This Agreement shall remain in effect until terminated by either party: (i) on 30 days' prior written notice to the other party; or (ii) immediately upon written notice for Cause (as defined herein).  "***Cause***" means (i) gross negligence or willful misconduct of Prime Clerk, (ii) the failure of the Company to pay Prime Clerk invoices for more than 60 days from the date of invoice or (iii) the accrual of invoices or unpaid Services in excess of the advance held by Prime Clerk where Prime Clerk reasonably believes it will not be paid.

(b) If this Agreement is terminated after Prime Clerk is retained pursuant to Bankruptcy Court order, the Company promptly shall seek entry of a Bankruptcy Court order discharging Prime Clerk of its duties under such retention, which order shall be in form and substance reasonably acceptable to Prime Clerk.

(c) If this Agreement is terminated, the Company shall remain liable for all amounts then accrued and/or due and owing to Prime Clerk hereunder.

(d) If this Agreement is terminated, Prime Clerk shall coordinate with the Company and, to the extent applicable, the clerk of the Bankruptcy Court, to maintain an orderly transfer of record keeping functions, and Prime Clerk shall provide the necessary staff, services and assistance required for such an orderly transfer.  The Company agrees to pay for such Services pursuant to the Rate Structure.

**Prime Clerk**
A **KROLL** BUSINESS

8.  **No Representations or Warranties**

Prime Clerk makes no representations or warranties, express or implied, including, without limitation, any express or implied warranty of merchantability, fitness or adequacy for a particular purpose or use, quality, productiveness or capacity.

9.  **Indemnification**

(a)  To the fullest extent permitted by applicable law, the Company shall indemnify and hold harmless Prime Clerk and its members, directors, officers, employees, representatives, affiliates, consultants, subcontractors and agents (collectively, the "***Indemnified Parties***") from and against any and all losses, claims, damages, judgments, liabilities and expenses, whether direct or indirect (including, without limitation, counsel fees and expenses) (collectively, "***Losses***") resulting from, arising out of or related to Prime Clerk's performance hereunder.  Without limiting the generality of the foregoing, Losses include any liabilities resulting from claims by any third parties against any Indemnified Party.

(b)  Prime Clerk and the Company shall notify each other in writing promptly upon the assertion, threat or commencement of any claim, action, investigation or proceeding that either party becomes aware of with respect to the Services provided hereunder.

(c)  The Company's indemnification of Prime Clerk hereunder shall exclude Losses resulting from Prime Clerk's gross negligence or willful misconduct.

(d)  The Company's indemnification obligations hereunder shall survive the termination of this Agreement.

10. **Limitations of Liability**

Except as expressly provided herein, Prime Clerk's liability to the Company for any Losses, unless due to Prime Clerk's gross negligence or willful misconduct, shall be limited to the total amount paid by the Company for the portion of the particular work that gave rise to the alleged Loss.  In no event shall Prime Clerk's liability to the Company for any Losses arising out of this Agreement exceed the total amount actually paid to Prime Clerk for Services provided hereunder.  Except in circumstances of Prime Clerk's gross negligence or willful misconduct, in no event shall Prime Clerk be liable for any indirect, special or consequential damages (such as loss of anticipated profits or other economic loss) in connection with or arising out of the Services provided hereunder.

11. **Company Data**

(a)  The Company is responsible for, and Prime Clerk does not verify, the accuracy of the programs, data and other information it or any Company Party submits for processing to Prime Clerk and for the output of such information, including, without limitation, with respect to preparation of statements of financial affairs and schedules of assets and liabilities (collectively, "**SOFAs and Schedules**").  Prime Clerk bears no responsibility for the accuracy and content of SOFAs and Schedules, and the Company is deemed hereunder to have approved and reviewed all SOFAs and Schedules filed on its behalf.

(b)  The Company agrees, represents and warrants to Prime Clerk that before delivery of any information to Prime Clerk: (i) the Company has full authority to deliver such information to

Prime Clerk; and (ii) Prime Clerk is authorized to use such information to perform Services hereunder.

(c) Any data, storage media, programs or other materials furnished to Prime Clerk by the Company may be retained by Prime Clerk until the Services provided hereunder are paid in full.  The Company shall remain liable for all fees and expenses incurred by Prime Clerk under this Agreement as a result of data, storage media or other materials maintained, stored or disposed of by Prime Clerk.  Any such disposal shall be in a manner requested by or acceptable to the Company; provided that if the Company has not utilized Prime Clerk's Services for a period of 90 days or more, Prime Clerk may dispose of any such materials, and be reimbursed by the Company for the expense of such disposition, after giving the Company 30 days' notice.  The Company agrees to initiate and maintain backup files that would allow the Company to regenerate or duplicate all programs, data or information provided by the Company to Prime Clerk.

(d) If Prime Clerk is retained pursuant to Bankruptcy Court order, disposal of any Company data, storage media or other materials shall comply with any applicable court orders and rules or clerk's office instructions.

(e) Following the filing of any chapter 11 cases by the Company, Prime Clerk may use Company's name and logo on its website and in its promotional materials to state that Company is a customer of Prime Clerk and its Services during and after the term of this Agreement.

## 12. Non-Solicitation

The Company agrees that neither it nor any of its subsidiaries or affiliates shall directly or indirectly solicit for employment, employ or otherwise retain as employees, consultants or otherwise, any employees of Prime Clerk during the term of this Agreement and for a period of 12 months after termination thereof unless Prime Clerk provides prior written consent to such solicitation or retention.

## 13. Force Majeure

Whenever performance by Prime Clerk of any of its obligations hereunder is materially prevented or impacted by reason of any act of God, government requirement, strike, lock-out or other industrial or transportation disturbance, fire, flood, epidemic, pandemic, lack of materials, law, regulation or ordinance, act of terrorism, war or war condition, or by reason of any other matter beyond Prime Clerk's reasonable control, then such performance shall be excused, and this Agreement shall be deemed suspended during the continuation of such prevention and for a reasonable time thereafter.

## 14. Choice of Law

The validity, enforceability and performance of this Agreement shall be governed by and construed in accordance with the laws of the State of New York.

## 15. Arbitration

Any dispute arising out of or relating to this Agreement or the breach thereof shall be finally resolved by arbitration administered by the American Arbitration Association under its Commercial Arbitration Rules, and judgment upon the award rendered by the arbitrators may be entered in any court having jurisdiction.  There shall be three arbitrators named in accordance with such rules.  The arbitration shall

be conducted in the English language in New York, New York in accordance with the United States Arbitration Act.

**16. Integration; Severability; Modifications; Assignment**

    (a) Each party acknowledges that it has read this Agreement, understands it and agrees to be bound by its terms and further agrees that it is the complete and exclusive statement of the agreement between the parties, which supersedes and merges all prior proposals, understandings, agreements and communications between the parties relating to the subject matter hereof.

    (b) If any provision of this Agreement shall be held to be invalid, illegal or unenforceable, the validity, legality and enforceability of the remaining provisions shall in no way be affected or impaired thereby.

    (c) This Agreement may be modified only by a writing duly executed by an authorized representative of the Company and an officer of Prime Clerk.

    (d) This Agreement and the rights and duties hereunder shall not be assignable by the parties hereto except upon written consent of the other; provided, however, that Prime Clerk may assign this Agreement to a wholly-owned subsidiary or affiliate without the Company's consent.

**17. Effectiveness of Counterparts**

This Agreement may be executed in two or more counterparts, each of which will be deemed an original, but all of which shall constitute one and the same agreement.  This Agreement will become effective when one or more counterparts have been signed by each of the parties and delivered to the other party, which delivery may be made by exchange of copies of the signature page by fax or email.

**18. Notices**

All notices and requests in connection with this Agreement shall be sufficiently given or made if given or made in writing via hand delivery, overnight courier, U.S. Mail (postage prepaid) or email, and addressed as follows:

    If to Prime Clerk:    Prime Clerk LLC
        One Grand Central Place
        60 East 42nd Street, Suite 1440
        New York, NY 10165
        Attn:    Shira Weiner
        Tel:    (212) 257-5450
        Email:    sweiner@primeclerk.com

    If to the Company:    Endo International plc
        c/o Endo Health Solutions Inc.
        1400 Atwater Drive
        Malvern, PA 19355
        Attn:    Mark Bradley, CFO
        Tel:    (484) 216-0000
        Email:    Bradley.Mark@Endo.com

With a copy to:      Skadden, Arps, Slate, Meagher & Flom LLP
One Manhattan West
New York, NY 10001
Attn:     Lisa Laukitis
Tel:     (212) 735-3290
Email:   lisa.laukitis@skadden.com

*[Signature page follows]*

**Prime Clerk**

A **KROLL** BUSINESS

IN WITNESS WHEREOF, the parties hereto have executed this Agreement effective as of the date first above written.

**Prime Clerk LLC**

By: Shira Weiner
Title: General Counsel

**Endo International plc** (on behalf of itself and its subsidiaries listed on Schedule 1 hereto)

By: Mark Bradley
Title: CFO

8

**Schedule 1**

70 Maple Avenue, LLC
Actient Pharmaceuticals LLC
Actient Therapeutics, LLC
Anchen Incorporated
Anchen Pharmaceuticals, Inc.
Astora Women's Health Bermuda ULC
Astora Women's Health Ireland Limited
Astora Women's Health Technologies
Astora Women's Health, LLC
Auxilium International Holdings, LLC
Auxilium Pharmaceuticals, LLC
Auxilium US Holdings, LLC
BioSpecifics Technologies Corp.
Branded Operations Holdings, Inc.
CPEC LLC
DAVA International, LLC
DAVA Pharmaceuticals, LLC
Endo Aesthetics LLC
Endo Bermuda Finance Limited
Endo Designated Activity Company
Endo Eurofin Unlimited Company
Endo Finance IV Unlimited Company
Endo Finance LLC
Endo Finance Operations LLC
Endo Finco Inc.
Endo Generics Holdings, Inc.
Endo Global Aesthetics Limited
Endo Global Biologics Limited
Endo Global Development Limited
Endo Global Finance LLC
Endo Global Ventures
Endo Health Solutions Inc.
Endo Innovation Valera, LLC
Endo Ireland Finance II Limited
Endo LLC
Endo Luxembourg Finance Company I S.à r.l.
Endo Luxembourg Holding Company S.à r.l.

Endo Luxembourg International Financing S.à r.l.

Endo Management Limited

Endo Par Innovation Company, LLC

Endo Pharmaceuticals Finance LLC

Endo Pharmaceuticals Inc.

Endo Pharmaceuticals Solutions Inc.

Endo Pharmaceuticals Valera Inc.

Endo Procurement Operations Limited

Endo TopFin Limited

Endo U.S. Inc.

Endo US Holdings Luxembourg I S.à r.l.

Endo Ventures Aesthetics Limited

Endo Ventures Bermuda Limited

Endo Ventures Cyprus Limited

Endo Ventures Limited

Generics Bidco I, LLC

Generics International (US) 2, Inc.

Generics International (US), Inc.

Generics International Ventures Enterprises LLC

Hawk Acquisition Ireland Limited

Innoteq, Inc.

JHP Acquisition, LLC

JHP Group Holdings, LLC

Kali Laboratories 2, Inc.

Kali Laboratories, LLC

Luxembourg Endo Specialty Pharmaceuticals Holding I S.à r.l.

Moores Mill Properties L.L.C.

Paladin Labs Canadian Holding Inc.

Paladin Labs Inc.

Par Active Technologies Private Limited

Par Biosciences Private Limited

Par Formulations Private Limited

Par Laboratories Europe, Ltd.

Par Pharmaceutical 2, Inc.

Par Pharmaceutical Companies, Inc.

Par Pharmaceutical Holdings, Inc.

Par Pharmaceutical, Inc.

Par Sterile Products, LLC

Par, LLC

Quartz Specialty Pharmaceuticals, LLC

Slate Pharmaceuticals, LLC

Timm Medical Holdings, LLC
Vintage Pharmaceuticals, LLC

2071795.03B-NYCSR03A - MSW

# R A T E S

Quality.
Partnership.
Expertise.
Innovation.

| Claim and Noticing Rates | |
| --- | --- |
| TITLE | HOURLY RATE |
| Analyst<br>The Analyst processes incoming proofs of claim, ballots and return mail, and physically executes outgoing mailings with adherence to strict quality control standards. | $30 - $50 |
| Technology Consultant<br>The Technology Consultant provides database support for complex reporting requests and administers complicated variable data mailings. | $35 - $95 |
| Consultant/Senior Consultant<br>The Consultant is the day-to-day contact for mailings, updates the case website, prepares and executes affidavits of service, responds to creditor inquiries and maintains the official claim register, including processing of claims objections and transfers. Prime Clerk Consultants have between three and five years of experience.<br><br>The Senior Consultant directs the data collection process for the master mailing list and Schedules & SOFA, oversees all mailings, performs quality control checks on all claims and ballots, and generates claim and ballot reports. Prime Clerk's Senior Consultants average over five years of experience. | $65 - $165 |
| Director<br>The Director is the lead contact for the company, counsel and advisors on the case engagement and oversees all aspects of the bankruptcy administration, including managing the internal case team. In many instances, the executives of Prime Clerk will serve in this role at this rate. Prime Clerk's Directors have over ten years of experience and are typically former restructuring attorneys or paralegals. | $175 - $195 |

# R A T E S

Quality.
Partnership.
Expertise.
Innovation.

## Solicitation, Balloting and Tabulation Rates

| TITLE | HOURLY RATE |
|-------|-------------|
| Solicitation Consultant<br>The Solicitation Consultant reviews, tabulates and audits ballots, and executes plan solicitation and other public securities mailings. In addition, the Solicitation Consultant prepares customized reports relating to voting and other corporate events (such as exchange offers and rights subscriptions) and interfaces with banks, brokers, nominees, depositories and their agents regarding solicitations and other communications. Solicitation Consultants average over five years of experience. | $190 |
| Director of Solicitation<br>The Director of Solicitation is the lead consultant in the plan solicitation process. The Director oversees and coordinates soliciting creditor votes on a plan of reorganization and will attest to solicitation processes and results. The Director also advises on public securities noticing and related actions, including voting, exchange offers, treatment elections, rights subscriptions and distributions and coordinates with banks, brokers, nominees, their agents and depositories to ensure the smooth execution of these processes. Prime Clerk's Director of Solicitation has over 15 years of experience and is a former restructuring attorney. | $210 |

## Solicitation, Balloting and Tabulation Rates

| | |
|-------|-------------|
| Printing | $0.10 per page |
| Customization/Envelope Printing | $0.05 each |
| Document folding and inserting | No charge |
| Postage/Overnight Delivery | Preferred Rates |
| Public Securities Events | Varies by Event |
| Standard E-mail Noticing | No charge |
| Fax Noticing | $0.10 per page |
| Proof of Claim Acknowledgment Card | $0.10 per card |
| Envelopes | Varies by Size |

## Newspaper and Legal Notice Publishing

| | |
|-------|-------------|
| Coordinate and publish legal notices | Available on request |

# R A T E S

Quality.
Partnership.
Expertise.
Innovation.

| Case Website | |
|---|---|
| Case Website setup | No charge |
| Case Website hosting | No charge |
| Update case docket and claims register | No charge |
| **Client Access** | |
| Access to secure client login (unlimited users) | No charge |
| Client customizable reports on demand or via scheduled email delivery (unlimited quantity) | No charge |
| Real time dashboard analytics measuring claim and ballot information and document processing status | No charge |
| **Data Administration and Management** | |
| Inputting proofs of claim and ballots | Standard hourly rates (no per claim or ballot charge) |
| Electronic Imaging | $0.12 per image |
| Data Storage, maintenance and security | $0.10 per record per month |
| Virtual Data Rooms | Available on request |
| **On-line Claim Filing Services** | |
| On-line claim filing | No charge |
| **Call Center Services** | |
| Case-specific voice-mail box | No charge |
| Interactive Voice Response ("IVR") | No charge |
| Monthly maintenance | No charge |
| Call center personnel | Standard hourly rates |
| Live chat | Standard hourly rates |
| **Disbursement Services** | |
| Check issuance and/or Form 1099 | Available on request |
| W-9 mailing and maintenance of TIN database | Available on request |