SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
Paul D. Leake
Lisa Laukitis
Shana A. Elberg
Evan A. Hill
One Manhattan West
New York, New York 10001
Telephone: (212) 735-3000
Fax: (212) 735-2000

*Proposed Counsel to Debtors and Debtors in Possession*

**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *In re* | **Chapter 11** |
| **ENDO INTERNATIONAL plc,** *et al.*, | **Case No. 22-22549 (___)** |
| **Debtors.**[1] | **(Joint Administration Pending)** |

**MOTION OF THE DEBTORS FOR ENTRY OF
AN ORDER (I) APPOINTING ROGER FRANKEL AS
FUTURE CLAIMANTS' REPRESENTATIVE, EFFECTIVE AS
OF THE PETITION DATE; AND (II) GRANTING RELATED RELIEF**

Endo International plc and its debtor affiliates, as debtors and debtors in possession (collectively, the "Debtors" and, together with their non-debtor affiliates, the "Company") in the above-captioned chapter 11 cases (the "Chapter 11 Cases"), respectfully represent in support of this motion (this "Motion") as follows:

---

[1]    The last four digits of Debtor Endo International plc's tax identification number are 3755. Due to the large number of debtors in these chapter 11 cases, a complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided herein. A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/Endo. The location of the Debtors' service address for purposes of these chapter 11 cases is: 1400 Atwater Dr, Malvern PA 19355.

**RELIEF REQUESTED**

1.      By this Motion, and pursuant to sections 105(a) and 1109(b) of title 11 of the United States Code (the "Bankruptcy Code"), the Debtors request entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"), authorizing the appointment of a legal representative for Future Claimants (as defined below) in the Chapter 11 Cases (such representative, the "FCR") and appointing Roger Frankel as the FCR.

2.      The Debtors request that the FCR be appointed to represent and protect the rights of any individual: (a) who, after the effective date of the Debtors' plan of reorganization or liquidation, or after such other date as this Court may order (the "Effective Date"), asserts one or more personal injury claims against a Debtor or successor of the Debtors' businesses based on the Debtors' conduct either: (i) before the Effective Date (as it relates to opioid products); or (ii) before the Petition Date (as defined below) (as it relates to transvaginal mesh and ranitidine products);[2] (b) whose claims arise from opioid products, transvaginal mesh products, or ranitidine products; and (c) who could not assert such claims in the Chapter 11 Cases because, among other reasons, the claimant: (i) was unaware of the injury as of the Effective Date; (ii) has a latent manifestation of the injury after the Effective Date; or (iii) as of the Effective Date, was otherwise unable or incapable of asserting the claims based on the injury (such individuals, the "Future Claimants" and their claims, the "Future Claims").  In support of this Application, the Debtors submit the *Declaration of Roger Frankel in Support of the Motion of the Debtors for Entry of an Order (I) Appointing Roger Frankel as Future Claimants' Representative, Effective as of the Petition Date; and (II) Granting Related Relief* attached hereto as **Exhibit B** (the "Frankel Declaration").

---

[2]      The Debtors have not sold transvaginal mesh or ranitidine products since 2016, so the threshold date for Debtor activity will be measured as of the Petition Date rather than the Confirmation Date.

3.     The Debtors request that the FCR have the following rights in the

Chapter 11 Cases:

(a)     <u>Standing</u>.  The FCR shall have standing under section 1109(b) of the Bankruptcy Code to be heard as a party-in-interest in all matters relating to the Chapter 11 Cases and shall have such powers and duties of a committee, as set forth in section 1103 of the Bankruptcy Code, as are appropriate for an FCR.

(b)     <u>Right to Receive Notices</u>.  The FCR and professionals retained by the FCR and approved by this Court shall have the right to receive all notices and pleadings that are required to be served upon any statutory committee and its counsel pursuant to applicable law or an order of this Court.

(c)     <u>Engagement of Professionals</u>.  The FCR may, with prior approval from this Court pursuant to sections 105(a) and 1103 of the Bankruptcy Code and consistent with the treatment afforded other professionals in the Chapter 11 Cases, retain attorneys and other professionals.

(d)     <u>Compensation</u>.   The FCR shall apply for compensation in accordance with the Bankruptcy Code, the Local Bankruptcy Rules for the Southern District of New York (the "<u>Local Rules</u>"), and any order entered by this Court establishing procedures for interim compensation and reimbursement of expenses of professionals. Subject to Court approval, the FCR shall be compensated at an hourly rate of $1,160, subject to periodic adjustment, plus reimbursement of reasonable and documented expenses.

(e)     <u>Limitation of Liability</u>.  The FCR will not be liable for any damages or have any obligations other than as prescribed by order of this Court; *provided*, *however*, that the FCR may be liable for damages caused by willful misconduct or gross negligence.  The FCR will not be liable to any person as a result of any action or omission taken or made in good faith.

(f)     <u>Indemnification</u>.  The Debtors will indemnify, defend, and hold harmless the FCR and his partners, associates, principals, employees, advisors, and professionals (collectively, the "<u>Indemnified Parties</u>" and each, individually, an "<u>Indemnified Party</u>") from and against any losses, claims, damages, or liabilities (or actions in respect thereof) to which any Indemnified Party may become subject as a result of or in connection with the FCR's rendering of services in his capacity as the FCR, unless and until it is finally judicially determined that such losses, claims, damages, or

3

liabilities were caused by gross negligence, willful misconduct, or bad faith on the part of one or more of the Indemnified Parties in performing their obligations. The foregoing entitlement of the FCR shall include, without limitation, (i) the right to be indemnified against any liability related or resulting from any information provided by the FCR that is inaccurate in any respect as a result of misrepresentation, omission, failure to update, or otherwise, unless the FCR actually knew of such inaccuracy at the time of the misrepresentation, omission, failure to update, or other occurrence in such action or proceeding, whether such action is concluded, ongoing, or threatened, and (ii) the right to be indemnified for any expenses, including reasonable attorney's fees, that the FCR may incur in enforcing this indemnification provision. Any such indemnification will be an allowed administrative expense under section 503(b) of the Bankruptcy Code. For the avoidance of doubt, gross negligence, willful misconduct, or bad faith on the part of one Indemnified Party will not preclude indemnification for the other Indemnified Parties. If, before the earlier of (i) the effective date of a plan confirmed in the Chapter 11 Cases, and (ii) the entry of an order closing the Chapter 11 Cases, an Indemnified Party believes that he, she, or it is entitled to payment of any amount by the Debtors on account of the Debtors' obligations to indemnify, defend, and hold harmless as set forth herein, including, without limitation, the advancement of defense costs, the Indemnified Party must file an application for such amounts with this Court, and the Debtors may not pay any such amounts to the Indemnified Party before the entry of an order by this Court authorizing such payments. The preceding sentence is intended to specify the period of time during which this Court has jurisdiction over the Debtors' obligations to indemnify, defend, and hold harmless as set forth herein, and is not a limitation on the duration of the Debtors' obligation to indemnify any Indemnified Party. In the event that a cause of action is asserted against any Indemnified Party as a result of or in connection with the FCR's rendering services in his capacity as the FCR, the Indemnified Party shall have the right to choose his, her, or its own counsel.

## JURISDICTION AND VENUE

4.      This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334, and the Amended Standing Order of Reference M-431, dated January 31, 2012 (Preska, C.J.). This is a core proceeding pursuant to 28 U.S.C. § 157(b).

5.      Venue of the Chapter 11 Cases and this Motion is proper in this District under 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

### I.      General Background

6.      On August 16, 2022 (the "Petition Date"), the Debtors each commenced a case by filing a petition for relief under chapter 11 of the Bankruptcy Code.  The Chapter 11 Cases are jointly administered.

7.      The Debtors are authorized to continue to operate their businesses and manage their properties as debtors and debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

8.      No trustee, examiner, or statutory committee of creditors has been appointed in the Chapter 11 Cases.

9.      Additional information regarding the Debtors, including their business operations, their corporate and capital structures, and the events leading to the commencement of the Chapter 11 Cases is set forth in the *Declaration of Mark Bradley in Support of Chapter 11 Petitions and First Day Papers* (the "First Day Declaration") filed contemporaneously herewith and incorporated herein by reference.

### II.      The Future Claimants' Representative

10.      The Debtors, with the assistance of counsel, evaluated several potential candidates to serve as the FCR before the commencement of these Chapter 11 Cases.   In considering the potential candidates, the Debtors were acutely focused on identifying a candidate who had significant experience in the field, a stellar reputation, and who did not present any conflicts of interest in taking on the role.  Following careful consideration of the potential candidates, and the interviews of three candidates by the Strategic Planning Committee of the

5

Debtors' Board of Directors, on July 28, 2022, the Debtors negotiated and entered into an engagement letter (the "Prepetition FCRA") with Roger Frankel to represent the interests of Future Claimants in connection with discussions and negotiations regarding the Debtors' potential restructuring. Critical to this decision was Mr. Frankel's appointment as FCR in the chapter 11 cases of Mallinckrodt plc, a large pharmaceutical company with substantial opioid liabilities. More generally, and as discussed further below, the Debtors selected Mr. Frankel based on his prior experience serving as a fiduciary with respect to future claimants in similar complex mass tort cases under chapter 11 of the Bankruptcy Code. A true and correct copy of the Prepetition FCRA is attached hereto as **Exhibit C**. The Prepetition FCRA terminated in accordance with its terms upon the filing of the Chapter 11 Cases.

11. Mr. Frankel retained his law firm, Frankel Wyron LLP ("FW"), and Young Conaway Stargatt & Taylor, LLP ("YCST") as legal counsel (together, "FCR Counsel"), and FCR Counsel retained Ducera Partners LLC as financial advisor and investment banker and National Economic Research Associates, Inc. as economic and claims estimation consultant (collectively, the "FCR Advisors") to provide advice in connection with such prepetition representation. Prior to the Prepetition FCRA, except as set forth in the Frankel Declaration, Mr. Frankel did not have any association or relationship with, or other connection to, the Debtors.[3]

## BASIS FOR RELIEF

### I.   Appointing an FCR is Necessary in the Chapter 11 Cases

12. The Bankruptcy Code defines a "claim" as "(a) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured,

---

[3]   Each FCR Advisor has advised Mr. Frankel that, except as otherwise disclosed in its application to be employed in the Chapter 11 Cases, it has no association or relationship with, or other connection to, the Debtors prior to entering into its pre-petition agreement to advise or consult with the FCR or his counsel.

unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (b) right to an equitable remedy for breach of performance if such breach gives rise to a right of payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured."  11 U.S.C. § 101(5).  In essence, a claim is "(a) a right to payment (b) that arose before the filing of the petition."  *Elliott v. General Motors LLC* (*In re Motors Liquidation Co.*), 829 F.3d 135, 156 (2d Cir. 2016).  The Debtors' restructuring will ultimately address any personal injury claims against the Debtor based upon the Debtors' prepetition conduct, including, but not limited to, opioid-, mesh-, and ranitidine-related claims.

13.    The Debtors plan to implement robust noticing procedures to provide notice of the deadline for objecting to entry of a sale order to known and unknown holders of personal injury claims.  The Debtors recognize however, that there are potential Future Claimants who, given the nature of their claims, may be unable to assert their claims and protect their interests in the Chapter 11 Cases.  As a result, the Debtors request that this Court appoint the FCR to represent the interests of any Future Claimants in connection with the Chapter 11 Cases.

14.    Under section 1109(b) of the Bankruptcy Code, this Court may appoint a representative to protect the interests of the Future Claimants as "parties in interest."  *In re Johns-Manville Corp.*, 36 B.R. 743, 749 (Bankr. S.D.N.Y. 1984) ("Future claimants are undeniably parties in interest to these reorganization proceedings pursuant to the broad, flexible definition of that term. . . .  The drafting of 'party in interest' as an elastic concept was designed for just this kind of situation."); *see also Jones v. Chemetron Corp.*, 212 F.3d 199, 209–10 (3d Cir. 2000) (recognizing that future claimants "may require some voice" in the reorganization process and therefore qualify as "parties in interest" under section 1109(b) of the Bankruptcy Code).  "[D]ue

process considerations are often addressed by the appointment of a representative to receive notice for and represent the interests of a group of unknown creditors." *Id.* at 209.

15.    Without the FCR in the Chapter 11 Cases, a future court may find that, because a Future Claimant did not receive adequate notice to be afforded due process, the claim could not have been discharged through the confirmation of any chapter 11 plan containing a discharge or could otherwise ride through any "free and clear" sale and be asserted against a purchaser. *See DPWN Holdings (USA), Inc. v. United Air Lines, Inc*., 747 F.3d 145, 150 (2d Cir. 2014) ("The discharge of [preconfirmation] claims serves the bankruptcy policy of providing debtors with a fresh start to permit their continued operation free of pre-bankruptcy debts. However, a claim cannot be discharged if the claimant is denied due process because of lack of adequate notice." (internal citations omitted)).

## II.    Appointing an FCR Is Appropriate in the Chapter 11 Cases

16.    A future claimants' representative is appropriate when: (a) the injury is such that either (i) there is a potential latency period between the exposure and manifestation of an alleged harm or (ii) the nature of the injury itself may make the injured party unable to identify or otherwise incapable of understanding the extent of harm and rights associated; and (b) no current party in the relevant bankruptcy proceeding adequately represents the future claimants' interests. When such circumstances arise, even if the facts fall outside of the narrow framework provided in section 524(g) of the Bankruptcy Code, courts in this District and other districts have approved the appointment of a future claimants' representative to advocate on behalf of future claimants. *See e.g.*, *In re Mallinckrodt plc*, Case No. 20-12522 (JTD) (Bankr. D. Del. June 11, 2021) [Docket No. 2813] (granting the debtors' motion for appointment of an FCR to represent future opioid claimants); *In re Roman Catholic Diocese of Rockville Centre, New York*, Case No. 20-12345 (SCC) (Bankr. S.D.N.Y. Oct. 27, 2021) [Docket No. 799] (appointing a future claimants'

8

representative for victims of sexual abuse); *In re TK Holdings Inc.*, Case No. 17-11375 (BLS) (Bankr. D. Del. Sept. 6, 2017) [Docket No. 703] (granting the debtors' motion to appoint an FCR for future airbag inflator-related personal injury claimants); *In re Motors Liquidation Company*, Case No. 09-50026 (REG) (Bankr. S.D.N.Y. Apr. 8, 2010) [Docket No. 5509] (granting, pursuant to sections 105(a) and 1109 of the Bankruptcy Code, the debtors' motion to appoint a representative for future asbestos claims pursuant to a sale of substantially all assets under section 363 of the Bankruptcy Code).

17.     As described in more detail in the First Day Declaration, the Debtors face thousands of litigation cases surrounding certain products that were manufactured, distributed, or sold by the Debtors.  First Day Decl. ¶¶ 49-64.  The Debtors commenced the Chapter 11 Cases, among other things, to obtain a comprehensive and permanent resolution of their personal injury related liability.

18.     While the Debtors cannot anticipate the complete universe of potential claims by Future Claimants, illustrative examples[4] may include:

(a)     With respect to opioid-related claims:

(i)     Future Claimants using opioids pursuant to a valid prescription as of the Effective Date who have not been recognized as having, or diagnosed with, an opioid abuse disorder, but such disorder develops or becomes realized after the Effective Date;

(ii)     Future Claimants suffering from an opioid abuse disorder as of the Effective Date, but who, as a result of such disorder, are unable to reasonably understand a bankruptcy court notice or their rights as a claimant; and

(iii)     Children born after the Effective Date and diagnosed with neonatal abstinence syndrome or similar medical conditions resulting from intrauterine exposure to opioids, but whose

---

[4]     The examples provided are not intended to be an exhaustive list.

mothers were first exposed to opioids before the Effective Date;

(b)   Future Claimants who received transvaginal mesh implants manufactured or sold by the Debtors or their predecessors before the Petition Date, but who do not experience symptoms until after the Effective Date; and

(c)   Future Claimants using ranitidine manufactured or sold by the Debtors before the Petition Date who are diagnosed with esophageal, bladder, gastric, liver, colorectal, or other cancers from an alleged carcinogen known as NDMA after the Effective Date.

19.     For the avoidance of doubt, the examples provided herein are not intended to be an exhaustive list.  The Debtors and the FCR further reserve the right to file a motion seeking entry of an order modifying the definition of Future Claimants as described in the Proposed Order without prejudice.

20.     The Debtors recognize that, in seeking a comprehensive resolution to personal injury claims, the interests of the Future Claimants would be benefitted by representation by a disinterested party.  Current claimants do not provide adequate representation because potential conflicts exist between the interests of current claimants and the Future Claimants (*i.e.*, the desire of current claimants to receive the maximum satisfaction of their current claims now versus the preference of the Future Claimants to preserve a portion of the Debtors' assets in order to satisfy their future personal injury claims).  *See In re Johns-Manville Corp.*, 552 B.R. 221, 245 (Bankr. S.D.N.Y. 2016) (finding that a future claimants' representative was appointed to avoid "a conflict of interest between the future asbestos claimants and the present asbestos claimants").  It is therefore necessary and appropriate for this Court to appoint a future claimants' representative to represent the interests of Future Claimants in connection with these chapter 11 proceedings, including negotiations regarding any plan of reorganization or liquidation, the terms of a channeling injunction, and the structure and terms of any compensation trust.

III.    **The Appointment of Mr. Frankel as FCR is in the Best Interests of the Future Claimants and the Debtors' Estates**

A.    **The Initial Engagement of Mr. Frankel as the Prepetition FCR**

21.    On July 28, 2022, the Debtors entered into the Prepetition FCRA with Mr. Frankel.  Subsequent to his engagement, Mr. Frankel retained his law firm, FW, and YCST to advise and represent him in connection with his prepetition work.  FCR Counsel retained the FCR Advisors to assist FCR Counsel in providing legal advice to Mr. Frankel.  Prior to the Prepetition FCRA, except as otherwise disclosed in the Frankel Declaration, Mr. Frankel did not have any association or relationship with, or other connection to, the Debtors.

22.    The Prepetition FCRA expressly provided that Mr. Frankel's sole responsibility and loyalty is to the rights of Future Claimants.  *See* **Exhibit C**.  The Prepetition FCRA further provided that the Debtors have no right to control or influence how Mr. Frankel or his professionals carry out such duties.  *Id*.  The Prepetition FCRA terminated in accordance with its terms upon the filing of the Chapter 11 Cases.  *Id*.

23.    The primary work conducted under the Prepetition FCRA by Mr. Frankel and the FCR Advisors was due diligence and analysis into the Debtors' assets and liabilities, with a special focus on liabilities related to opioid-related personal injury claims.  The Debtors and their advisors have worked constructively with Mr. Frankel and his advisors since Mr. Frankel was engaged, including by providing diligence, holding telephonic diligence meetings, and granting access to a data room prior to the Petition Date.  Mr. Frankel became familiar with the Debtors' assets, liabilities, and the issues that will need to be addressed and resolved in the Chapter 11 Cases.  It is critically important that the Chapter 11 Cases proceed expeditiously to maximize the value of the Debtors' estates for the benefit of all stakeholders, including the Future Claimants.  The appointment of Mr. Frankel as FCR avoids the unnecessary expense, delay, and duplication

11

that would occur if a new future claimants' representative were to be appointed and would have to begin due diligence anew.

### B. Mr. Frankel has the Proper Expertise and Knowledge Surrounding Mass-Tort Bankruptcies

24. Mr. Frankel's many years of experience and involvement with mass tort-related bankruptcy cases and, specifically, his experience as a fiduciary representing future claimants, makes him well qualified to competently and effectively represent the interests of the Future Claimants as a zealous and efficient advocate in the Chapter 11 Cases.

25. As set forth in the Frankel Declaration, Mr. Frankel has more than 20 years of experience in the field of mass tort bankruptcy matters. Since 1972, Mr. Frankel has practiced in the areas of business reorganization and creditors' rights, and he has served as FCR in other chapter 11 cases and as counsel to other future claimants' representatives.

26. Mr. Frankel has previously been found to possess the experience and qualifications necessary to serve as a future claimants' representative. Mr. Frankel's experience in connection with representing future claimants and serving as a future claimants' representative includes, but is not limited to, the following:

(a) Served as FCR for future opioid claims both pre-petition and post-filing in *In re Mallinckrodt plc*, Case No. 20-12522 (JTD) (Bankr. D. Del. 2020) and now serves as the legal representative for future claimants with respect to the opioid personal injury trust established pursuant to the confirmed plan;

(b) Served as FCR in *In re TK Holdings Inc.*, Case No. 17-11375 (BLS) (Bankr. D. Del. 2017) and now serves as the legal representative for future claimants with respect to the personal injury trust established pursuant to the confirmed plan;

(c) Served as counsel to the FCR during the bankruptcy proceedings in *In re Combustion Engineering*, Case No. 03-10495 (Bankr. D. Del. 2003) and now serves as the legal representative for future claimants with respect to the trust established pursuant to the confirmed plan;

12

(d)     Served as FCR during the bankruptcy proceedings in *In re W.R. Grace & Co.*, Case No. 01-01139 (Bankr. D. Del. 2001) and now serves as the legal representative for future claimants with respect to the trust established pursuant to the confirmed plan;[5] and

(e)     Presently serves as FCR in *In re Cyprus Mines Corp.*, Case No. 21-10398 (LSS) (Bankr. D. Del. 2021).

27.     Mr. Frankel's many years of experience and involvement with mass tort related bankruptcy cases, as well as his experience directly related to the representation of the interests of future claimants, makes him well qualified to competently and effectively represent the interests of the Future Claimants in the Chapter 11 Cases.

### C.     Appointing an Experienced FCR is in the Best Interests of Future Claimants

28.     Bankruptcy courts have consistently held that a future claimants' representative's experience is a key and pivotal consideration in the FCR's appointment.  *See, e.g.*, *In re Fairbanks Co.*, 601 B.R. 831, 842-43 (Bankr. N.D. Ga. 2019) (finding that an important factor in appointing a future claimants' representative includes "significant experience in mass tort bankruptcy cases," enabling a future claimants' representative to "expedite and prioritize issues in order to minimize costs and maximize returns"); *In re Imerys Talc America, Inc.*, Case No. 19-10289 (LSS), (Bankr. D. Del. May 8, 2019) [Docket No. 503 at 10] (holding that the nominee's "knowledge, experience, and expertise to be the legal representative for [future claimants]" proved he was "up to the task"); *In re Duro Dyne*, Case No. 18-27963 (Bankr. D.N.J. Oct. 16, 2018), [Docket No. 189 at 17:16-19] (observing that the only way to measure an applicant's "effectiveness at the early stage of the proceeding," is to "look to the applicant's experience and knowledge").

---

[5]     David Austern, the original FCR appointed in *W.R. Grace & Co.*, died during the pendency of the case, and the court appointed Mr. Frankel as the successor FCR.

29.     Appointing an experienced FCR is critical to ensure that the interests of Future Claimants will be properly represented in negotiations and that the Future Claimants have a zealous advocate in, among other things, negotiating the terms of a chapter 11 plan or any settlement involving Future Claimants, and establishing and negotiating appropriate trust distribution procedures and related documentation that will govern any trust created. Appointment of an experienced FCR also minimizes the potential for missteps that could prolong the Debtors' reorganization process, delay payments to claimants, and result in substantially increased professional fees and other bankruptcy-related expenses.

**D.     Appointment of the Proposed FCR is in the Best Interests of the Debtors' Estates**

30.     The appointment of Mr. Frankel as the FCR will best serve the interests of the Debtors' estates, their creditors, and Future Claimants in the Chapter 11 Cases. Courts have held that appointing an FCR who was engaged prepetition enables a more efficient administration of a debtor's estate thereby retaining valuable assets for distribution to current and future claimants while simultaneously preventing any due process concerns by affording future claimants a seat at the table as prepetition diligence and negotiations are conducted. *See In re Maremont Corp.*, Case No. 19-10118 (KJC) (Bankr. D. Del. March 11, 2019) [Docket No. 126 at 102:6-10] ("Much money and time has already been spent by [the future claimants' representative] as his role, in his role as prepetition [future claimants' representative] and it seems under these circumstances counterintuitive to want to pay someone new to spend time and money getting caught up."); *see also In re Duro Dyne*, Case No. 18-27963 (MBK) (Bankr. D.N.J. Oct. 16, 2018) [Docket No. 189 at 21:5-22:9] ("The pre-petition selection of, negotiations with and payment to any pre-petition FCR is critical for a successful pre-negotiated case. . . . This Court will not however imperil this company's reorganization, add layers of additional administrative expenses, place at risk the jobs

14

of hundreds of employees, or unnecessarily jeopardize the recoveries for present and future

claimants by delaying this reorganization through the appointment of a new future rep.").

31.    Further, Mr. Frankel and the FCR Advisors have already begun

familiarizing themselves with the Debtors' assets, liabilities, personal injury-related claims, and

the issues that will need to be addressed and resolved in the Chapter 11 Cases.  On or around July

31, 2022, Mr. Frankel and the FCR Advisors were given access to a virtual data room containing

approximately 200 documents for purposes of conducting due diligence and analysis with respect

to the Debtors' assets and liabilities, insurance and other business affairs, focusing specifically on

personal injury-related claims.  The Debtors spent significant time reviewing information to

determine what could appropriately be shared with Mr. Frankel and the FCR Advisors prior to the

commencement of these Chapter 11 Cases.  Since giving Mr. Frankel and the FCR Advisors access

to the virtual data room, the Debtors have received additional diligence requests from the FCR

Advisors and continue to provide additional documents and respond to additional diligence

requests on a rolling basis.

32.    Appointing a different legal representative to serve as the FCR would not

only create inefficiencies as a result of the requisite duplicative work that would need to be

performed by the new legal representative to learn about the Debtors and their opioid, transvaginal

mesh, and ranitidine liabilities, but it would also require the Debtors' estates to incur costs they

would otherwise not have to incur.

33.    The time and costs that the Debtors' estates would expend if a new FCR

was appointed would unnecessarily deplete estate assets, ultimately reduce the amount of estate

funds potentially available to fund a trust that would pay out claims to current claimants and the

Future Claimants and delay meaningful discussions between the Debtors and representatives of

Future Claimants at the start of the Chapter 11 Cases, which are critical to reaching a conclusion of the Chapter 11 Cases.

34.     It is critically important that the Chapter 11 Cases proceed expeditiously in order to maximize the value of the Debtors' estates for the benefit of Future Claimants and other stakeholders.  The appointment of Mr. Frankel as the FCR avoids the unnecessary expense, delay, and duplication that would occur if a new representative were to be appointed and would have to begin due diligence and the process of retaining any additional advisors anew.  As such, it makes practical economic and good business sense for the Debtors, the Future Claimants and other stakeholders to retain Mr. Frankel as the FCR in the Chapter 11 Cases and benefit from the knowledge and experience he gained prepetition.

## IV.     Mr. Frankel Meets the Standard to Be Appointed as FCR.

35.     The applicable standard for appointing a future claimants' representative has evolved in recent years.  Early cases appointing future claimants' representatives required the appointee to be independent, but left open the precise legal standard.  *See*, *e.g.*, *In re Johns-Manville Corp.*, 36 B.R. 743, 758 (Bankr. S.D.N.Y. 1984), aff'd 52 B.R. 940 (S.D.N.Y. 1985). Courts now apply either a disinterestedness standard under section 105(14) of the Bankruptcy Code or the *guardian ad litem* standard.  Mr. Frankel meets both standards.

36.     This Court and other courts have determined that the applicable standard for assessing the proposed appointment of a future claimants' representative is that of "disinterestedness" under section 101(14) of the Bankruptcy Code.  *See*, *e.g.*, *In re The Roman Catholic Diocese of Rockville Centre, New York,* Case No. 20-12345 (SCC) (Bankr. S.D.N.Y. Oct. 27, 2021) [Docket No. 799] (order appointing FCR based on disinterestedness standard); *Vara v. Duro Dyne Nat'l Corp. (In re Duro Dyne Nat'l Corp)*, 2019 WL 4745879, at *9 (D.N.J. Sep. 30, 2019) (affirming *In re Duro Dyne*, Case No. 18-27963 (MBK) (Bankr. D.N.J. Oct. 16, 2018)

16

[Docket No. 191]) ("Without explicit direction from Congress, the legislative history and structure of the Bankruptcy Code show the most appropriate standard by which to evaluate the appointment of a future claimants' representative is the disinterested person standard under 11 U.S.C. § 101(14)"); *In re Maremont Corp.*, Case No. 19-10118 (KJC) (Bankr. D. Del. March 11, 2019) [Docket No. 126 at 98:4-8] (recognizing that "the majority of recent decisions by bankruptcy courts have determined the appropriate [standard] for assessing the proposed appointment of a [future claimants' representative is that of disinterestedness"). Under the disinterestedness standard, the appointee must (a) not be a creditor, an equity security holder, or an insider; (b) not have been a director, officer, or employee of the debtor within two years of the filing of the petition for bankruptcy; and (c) not have a materially adverse interest to the estate, any class of creditors, or any equity security holders "by reason of any direct or indirect relationship to, connection with, or interest in, the debtor, or for any other reason." 11 U.S.C. § 101(14).

37.     Other courts have found the *guardian ad litem* standard more appropriate. *See, e.g.*, *In re Cyprus Mines Corporation*, Case No. 21-10398 (LSS) (Bankr. D. Del.); *In re Imerys Talc America, Inc.*, Case No. 19-10289 (LSS), (Bankr. D. Del. May 8, 2019) [Docket No. 503 at 10] (concluding that the legal representative is "much more like a *guardian ad litem* than those persons in the Code subject to the disinterestedness standard"), aff'd 38 F.4th 361, 374 (3d Cir. 2022) ("agree[ing] with the Bankruptcy Court. . . . that the FCR standard requires more than disinterestedness"); *In re Fairbanks Co.*, 601 B.R. 831 (Bankr. N.D. Ga. Apr. 17, 2019) (relying on the guardian ad litem standard in appointing a legal representative for future asbestos claimants). Under the *guardian ad litem* standard, the future claimants' representative must "not only be disinterested and qualified" but also "capable of acting as an objective, independent, and

effective advocate for the best interests of the future claimants." *Id.* at 841. Further, the future claimants' representative's "loyalties must lie with the demand holders for whom he acts as a fiduciary, that is—the future claimants." *In re Imerys Talc America*, Case No. 19-10289 (LSS), (Bankr. D. Del. 2019) [Docket No. 503 at 10].

38.     In reliance on the Frankel Declaration, the Debtors believe that Mr. Frankel meets both the disinterested person standard and the *guardian ad litem* standard. Mr. Frankel (a) is not a creditor, equity security holder, or insider of the Debtors, (b) has not been employed or appointed as a director for the debtors in the past two years, and (c) does not have an interest materially adverse to any party, including the Future Claimants.

39.     Moreover, the Prepetition FCRA explicitly states that (a) the express purpose of Mr. Frankel serving as prepetition FCR is to protect the rights of Future Claimants, (b) Mr. Frankel's sole responsibility and loyalty is to the Future Claimants, (c) Mr. Frankel is not an employee, agent, counsel, or advisor to the Debtor, and (d) the Debtors have no right to control or influence how either Mr. Frankel or the FCR Advisors carry out their duties. The Prepetition FCRA additionally contains an explicit acknowledgement by the Debtors that Mr. Frankel's service as the FCR could be adverse to the interests of the Debtors. Finally, as set forth in the Frankel Declaration, not only has Mr. Frankel reviewed the parties-in-interest list provided by the Debtors and confirmed he does not have any conflicts of interests, but Mr. Frankel also represented in the Prepetition FCRA that his legal counsel reviewed the Debtors' list of potential parties-in-interest and confirmed they did not represent the Debtors, any known affiliate thereof or any party in connection with the Debtors' negotiations regarding a proposed restructuring. Accordingly, Mr. Frankel meets both the disinterested and *guardian ad litem* standards.

40.     For these reasons, the Debtors believe that the appointment of Mr. Frankel as the FCR will be in the best interests of the Future Claimants as well as in the best interests of the Debtors' estates.  The Debtors respectfully request that this Court enter the Proposed Order appointing Mr. Frankel to serve as the FCR.

## RESERVATION OF RIGHTS

41.     Nothing contained herein is or should be construed as: (a) an admission as to the validity of any claim against the Debtors, (b) a waiver of the Debtors' rights to dispute the amount of, basis for, or validity of any claim against the Debtors, (c) a waiver of any claims or causes of action that may exist against any creditor or interest holder, (d) a promise to pay any claim, (e) an approval, assumption, adoption, or rejection of any agreement, contract, program, policy, or lease between the Debtors and any third party under section 365 of the Bankruptcy Code, or (f) otherwise affecting the Debtors' rights under section 365 of the Bankruptcy Code to assume or reject any executory contract or unexpired lease.  If this Court grants the relief sought herein, any payment made pursuant to this Court's order is not intended to be and should not be construed as an admission to the validity of any claim or a waiver of the Debtors' rights to subsequently dispute such claim.

## NOTICE

42.     Notice of this Motion shall be given to (a) the Office of the United States Trustee for the Southern District of New York; (b) counsel to the administrative agent under the Debtors' prepetition credit agreement; (c) counsel to the indenture trustee under each of the Debtors' outstanding bond issuances; (d) counsel to the ad hoc committee of certain lenders under the Debtors' prepetition credit agreement and first and second lien holders of the Debtors' outstanding bond issuances; (e) counsel to the ad hoc committee of certain lenders under the Debtors' prepetition credit agreement and first lien, second lien, and unsecured holders of the

Debtors' outstanding bond issuances; (f) the U.S. Attorney for the Southern District of New York;

(g) the attorneys general for all 50 states and the District of Columbia; (h) the Debtors' 50 largest

unsecured creditors on a consolidated basis; (i) the Internal Revenue Service; (j) the Securities and

Exchange Commission; (k) the proposed future claimants representative in the Chapter 11 Cases;

(l) any party that has requested notice pursuant to Bankruptcy Rule 2002; and (m) any other party

entitled to notice pursuant to Local Rule 9013-1(b).  The Debtors submit that no other or further

notice need be provided.

## **NO PRIOR REQUEST**

43.     No prior request for the relief sought herein has been made to this Court or

any other court.

**[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]**

## **CONCLUSION**

WHEREFORE the Debtors respectfully request that this Court (a) enter the

Proposed Order in substantially the form attached hereto as **Exhibit A** and (b) grant such other

and further relief as may be just and proper.


Dated: August 16, 2022
      New York, New York        SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

                          By:    */s/ Paul D. Leake*
                                Paul D. Leake
                                Lisa Laukitis
                                Shana A. Elberg
                                Evan A. Hill
                                One Manhattan West
                                New York, New York 10001
                                Telephone: (212) 735-3000
                                Fax: (212) 735-2000


                                *Proposed Counsel for the Debtors*
                                *and Debtors in Possession*

## Exhibit A

**Proposed Order**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| *In re* | **Chapter 11** |
| **ENDO INTERNATIONAL plc, *et al.*,** | **Case No. 22-22549 (___)** |
| **Debtors.**[1] | **(Joint Administration Pending)** |

## ORDER (I) APPOINTING ROGER FRANKEL AS
## FUTURE CLAIMANTS' REPRESENTATIVE, EFFECTIVE AS
## OF THE PETITION DATE; AND (II) GRANTING RELATED RELIEF

Upon the motion (the "Motion")[2] of the debtors and debtors in possession (collectively, the "Debtors" and together with their non-debtor affiliates, the "Company") in the above-captioned cases (the "Chapter 11 Cases") for an order (this "Order") appointing Roger Frankel as future claimants' representative in the Chapter 11 Cases (the "FCR"), effective as of the Petition Date, all as more fully set forth in the Motion and the *Declaration of Roger Frankel Order (I) Appointing Roger Frankel as Future Claimants' Representative, Effective as of the Petition Date; and (II) Granting Related Relief* attached hereto as **Exhibit 1** (the "Frankel Declaration"); and this Court having reviewed the Motion and the Frankel Declaration, and having heard the statements of counsel regarding the relief requested in the Motion at a hearing before this Court, if any (the "Hearing"); and this Court having found that (a) this Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157(a) - (b) and 1334(b) and the Amended Standing Order of

---

[1]     The last four digits of Debtor Endo International plc's tax identification number are 3755.  Due to the large number of debtors in these chapter 11 cases, a complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/endo/.  The location of the Debtors' service address for purposes of these chapter 11 cases is: 1400 Atwater Dr, Malvern PA 19355.

[2]     Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

Reference M-431, dated January 31, 2012 (Preska, C.J.); (b) this is a core proceeding pursuant to

28 U.S.C. §§ 157(a) - (b) and 1334(b); (c) venue is proper before this Court pursuant to 28 U.S.C.

§§ 1408 and 1409; and (d) due and proper notice of the Motion and the Hearing was sufficient

under the circumstances; and this Court having determined that the legal and factual bases set forth

in the Motion establish just cause for the relief granted herein; and it appearing that the relief

requested in the Motion is in the best interests of the Debtors, their estates, creditors, and other

parties-in-interest; and upon all of the proceedings had before this Court and after due deliberation

and sufficient cause appearing therefore;

**IT IS HEREBY ORDERED THAT:**

1.      The Motion is GRANTED as set forth herein.

2.      All objections to the entry of this Order, to the extent not withdrawn or

settled, are overruled.

3.      Roger Frankel is hereby appointed as the FCR, effective as of the Petition

Date.

4.      The FCR is hereby appointed to protect the rights of any individual (such

individuals, the "Future Claimants"):

> (a)    who asserts one or more personal injury claims against a Debtor or
>        a successor of the Debtors' businesses based on a Debtor's conduct
>        either (i) before the Effective Date (as it relates to opioid products);
>        or (ii) before the Petition Date (as it relates to transvaginal mesh and
>        ranitidine products);
>
> (b)    whose claims relate to opioid products, transvaginal mesh products,
>        ranitidine products; and
>
> (c)    who could not assert such claims in the Chapter 11 Cases because,
>        among other reasons, the claimant: (i) was unaware of the injury as
>        of the Effective Date; (ii) has a latent manifestation of the injury
>        after the Effective Date; or (iii) as of the Effective Date, was
>        otherwise unable or incapable of asserting the claims based on the
>        injury.

5.      The definition of Future Claimants is without prejudice to the right of the Debtors or the FCR to file a motion seeking entry of an order modifying the definition of Future Claimants, or of this Court to modify such definition in connection with confirmation of any chapter 11 plan containing a discharge or approving the sale of substantially all assets "free and clear" of liabilities.

6.      The FCR is appointed subject to the following terms and conditions:

(a)     Standing.  The FCR shall have standing under section 1109(b) of the Bankruptcy Code to be heard as a party-in-interest in all matters relating to the Chapter 11 Cases and shall have such powers and duties of a committee, as set forth in section 1103 of the Bankruptcy Code, as are appropriate for an FCR.

(b)     Right to Receive Notices.  The FCR and professionals retained by the FCR and approved by this Court shall have the right to receive all notices and pleadings that are required to be served upon any statutory committee and its counsel pursuant to applicable law or an order of this Court.

(c)     Engagement of Professionals.  The FCR may, with prior approval from this Court pursuant to sections 105(a) and 1103 of the Bankruptcy Code and consistent with the treatment afforded other professionals in the Chapter 11 Cases, retain attorneys and other professionals.

(d)     Compensation.   The FCR shall apply for compensation in accordance with the Bankruptcy Code, the Local Bankruptcy Rules for the Southern District of New York, and any order entered by this Court establishing procedures for interim compensation and reimbursement of expenses of professionals.  Subject to Court approval, the FCR shall be compensated at an hourly rate of $1,160, subject to periodic adjustment, plus reimbursement of reasonable and documented expenses.

(e)     Limitation of Liability.  The FCR will not be liable for any damages or have any obligations other than as prescribed by order of this Court; *provided*, *however*, that the FCR may be liable for damages caused by willful misconduct or gross negligence.  The FCR will not be liable to any person as a result of any action or omission taken or made in good faith.

(f)     Indemnification.  The Debtors will indemnify, defend, and hold harmless the FCR and his partners, associates, principals, employees, advisors, and professionals (collectively, the "Indemnified Parties" and each, individually, an "Indemnified Party") from and against any losses, claims, damages, or liabilities (or actions in respect thereof) to which any Indemnified Party may become subject as a result of or in connection with the FCR's rendering of services in his capacity as the FCR, unless and until it is finally judicially determined that such losses, claims, damages, or liabilities were caused by gross negligence, willful misconduct, or bad faith on the part of one or more of the Indemnified Parties in performing their obligations.  The foregoing entitlement of the FCR shall include, without limitation, (i) the right to be indemnified against any liability related or resulting from any information provided by the FCR that is inaccurate in any respect as a result of misrepresentation, omission, failure to update, or otherwise, unless the FCR actually knew of such inaccuracy at the time of the misrepresentation, omission, failure to update, or other occurrence in such action or proceeding, whether such action is concluded, ongoing, or threatened, and (ii) the right to be indemnified for any expenses, including reasonable attorney's fees, that the FCR may incur in enforcing this indemnification provision.  Any such indemnification will be an allowed administrative expense under section 503(b) of the Bankruptcy Code.  For the avoidance of doubt, gross negligence, willful misconduct, or bad faith on the part of one Indemnified Party will not preclude indemnification for the other Indemnified Parties.  If, before the earlier of (i) the effective date of a plan confirmed in the Chapter 11 Cases, and (ii) the entry of an order closing the Chapter 11 Cases, an Indemnified Party believes that he, she, or it is entitled to payment of any amount by the Debtors on account of the Debtors obligations to indemnify, defend, and hold harmless as set forth herein, including, without limitation, the advancement of defense costs, the Indemnified Party must file an application for such amounts with this Court, and the Debtors may not pay any such amounts to the Indemnified Party before the entry of an order by this Court authorizing such payments.  The preceding sentence is intended to specify the period of time during which this Court has jurisdiction over the Debtors' obligations to indemnify, defend, and hold harmless as set forth herein, and is not a limitation on the duration of the Debtors' obligation to indemnify any Indemnified Party.  In the event that a cause of action is asserted against any Indemnified Party as a result of or in connection with the FCR's rendering services in his capacity as the FCR, the Indemnified Party shall have the right to choose his, her, or its own counsel.

7. The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Order in accordance with the Motion.

8. This Court retains exclusive jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Order.

Dated: [●], 2022
[      ], New York

_____
THE HONORABLE [_____]
UNITED STATES BANKRUPTCY JUDGE

**<u>Exhibit B</u>**

**Frankel Declaration**

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| *In re* | **Chapter 11** |
| **ENDO INTERNATIONAL plc**, *et al.*, | **Case No. 22-22549 (___)** |
| **Debtors.**[1] | **(Joint Administration Pending)** |

**DECLARATION OF
ROGER FRANKEL IN SUPPORT
OF THE DEBTOR'S MOTION FOR ENTRY
OF AN ORDER (I) APPOINTING ROGER FRANKEL AS
FUTURE CLAIMANTS' REPRESENTATIVE, EFFECTIVE AS
OF THE PETITION DATE; AND (II) GRANTING RELATED RELIEF**

I, Roger Frankel, under penalty of perjury, declare as follows:

1.      I am a partner in the law firm Frankel Wyron LLP ("FW,") which maintains offices at 2101 L Street, N.W. Washington, DC 20037.  Except as otherwise noted, I have personal knowledge of the matters set forth herein, and if called and sworn as a witness, I could and would testify competently thereto.

2.      This declaration (this "Declaration") is made in support of the above-captioned debtors' (collectively, the "Debtors" and together with their non-debtor affiliates, the "Company") *Motion for Entry of an Order (I) Appointing Roger Frankel as Future Claimants' Representative, Effective as of the Petition Date; and (II) Granting Related Relief* (the "Motion"),[2] which was filed contemporaneously herewith.

---

[1]      The last four digits of Debtor Endo International plc's tax identification number are 3755.  Due to the large number of debtors in these chapter 11 cases, a complete list of the debtor entities and the last four digits of their federal tax identification numbers is not provided herein.  A complete list of such information may be obtained on the website of the Debtors' claims and noticing agent at https://restructuring.ra.kroll.com/Endo. The location of the Debtors' service address for purposes of these chapter 11 cases is: 1400 Atwater Drive, Malvern, PA 19355.

[2]      Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Motion.

## **QUALIFICATIONS**

3.      I am a member of the District of Columbia bar and am duly admitted to practice in the courts of the District of Columbia, the United States Bankruptcy Court, and the United States District Court for the District of Columbia.

4.      I have practiced in the areas of business reorganization and creditors' rights since 1972.  Prior to founding FW in 2014, I was a partner and co-chair of the Global Restructuring Group at Orrick, Herrington & Sutcliffe LLP.

5.      My practice includes significant experience in complex bankruptcy and restructuring matters.  For over 20 years, I have both counseled clients and been appointed to fiduciary positions in complex mass tort bankruptcy cases involving the rights of future claimants. Examples of my mass tort bankruptcy engagements and appointments, in addition to my prepetition service as the legal representative for the debtors' future claimants, are set forth below:

(a)     I served as the court-appointed FCR in *In re Mallinckrodt plc Inc.,* Case No. 20-12522 (JTD) (Bankr. D. Del. 2021).  The plan of reorganization in those cases, which was confirmed on March 2, 2022, and became effective on June 16, 2022, established a qualified settlement fund with over $140 million in cash and deferred payment obligations plus additional assets.  I continue to serve as FCR in connection with the opioid personal injury trust established under the confirmed plan in the Mallinckrodt cases.

(b)     I served as the court-appointed FCR in *In re TK Holdings Inc.,* Case No. 17-11375 (BLS) (Bankr. D. Del. 2017).  The plan of reorganization in those cases, which was confirmed and became effective in April 2018, established a qualified settlement fund with over $125 million in cash plus additional assets in trust for the benefit of present and future personal injury claimants injured by defective Takata airbag inflators.  I continue to serve as FCR in connection with the trust established under the confirmed plan in the Takata cases.

(c)     I represented David Austern as the FCR in *In re W.R. Grace & Co.,* Case No. 01-01139 (Bankr. D. Del. 2001) from the time of Mr. Austern's appointment in 2004 until his death in 2013.  Following Mr. Austern's death, I was appointed as the successor FCR in the

*W.R. Grace* cases by the Bankruptcy Court for the District of Delaware. The plan of reorganization in those cases, which was confirmed and became effective in February 2014, established a qualified settlement fund with over $3 billion in assets in trust for the benefit of present and future asbestos personal injury claimants. I continue to serve as FCR in connection with the trust established under the confirmed plan in *W.R. Grace*.

(d)     I also represented Mr. Austern in the chapter 11 cases of *Combustion Engineering*, Case No. 03-10495 (Bankr. D. Del. 2003) in connection with the negotiation and successful confirmation of Combustion Engineering's plan of reorganization, which resulted in the establishment of a qualified settlement fund with more than $1 billion in assets in trust for the benefit of present and future asbestos personal injury claimants. Following Mr. Austern's death, I was appointed to serve as FCR in connection with the trust established under Combustion Engineering's confirmed plan and continue to serve in that capacity today.

(e)     I represent R. Scott Williams as the court-appointed FCR in the chapter 11 cases of *Congoleum Corporation*, Case No. 03-51524 (Bankr. D.N.J. 2005). The plan of reorganization confirmed in those cases established a qualified settlement fund of over $200 million in trust for the benefit of present and future asbestos personal injury claimants. I continue to represent Mr. Williams as FCR in connection with the trust established under Congoleum's confirmed plan.

(f)     I represented the debtors in *Shook & Fletcher Insulation Company*, Case No. 02-2771 (Bankr. N.D. Ala. 2002), in one of the first successful pre-packaged section 524(g) bankruptcy cases. In 2002, under its confirmed plan, Shook & Fletcher established a trust with over $100 million for the benefit of present and future asbestos personal injury claimants. I represented the trust until May 2020, when, following the death of the original trustee, I was appointed to serve as the successor trustee.

(g)     I presently serve as the court-appointed FCR in *In re Cyprus Mines Corporation*, Case No. 21-10398 (LSS) (Bankr. D. Del. 2021).

6.      Accordingly, I believe I am qualified to serve as FCR in the Chapter 11

Cases.

## **PROFESSIONAL COMPENSATION**

7.      On July 28, 2022, the Debtors and I entered into the Prepetition FCRA attached to the Motion as <u>Exhibit C</u>.  Among other things, the Prepetition FCRA expressly provides that (a) the express purpose of my serving as prepetition FCR is to protect the rights of Future Claimants, (b) my sole responsibility and loyalty is to Future Claimants, (c) I am not an employee, agent, counsel, or advisor to the Debtors, and (d) the Debtors have no right to control or influence how I or my professionals carry out our duties.  The Prepetition FCRA additionally contained an explicit acknowledgement by the Debtors that my services as FCR could be adverse to the interests of the Debtors and further states that my legal counsel reviewed the Parties in Interest List (as defined below) and confirmed they did not currently represent the Debtors, any known affiliate thereof, or any party in connection with the Debtors' negotiations regarding a proposed restructuring.

8.      Pursuant to the Prepetition FCRA, the Debtors agreed to compensate me and my professionals at our regular hourly rates for services rendered and to reimburse reasonable and necessary expenses.  The Debtors also agreed to post a retainer (as supplemented, the "<u>Retainer</u>") in the amount of $400,000 with FW as security for the payment of my fees and expenses, and the fees and expenses of FW, incurred in connection with our respective work during the prepetition period.

9.      Under the Prepetition FCRA, FW and I each submit separate invoices to the Debtors for fees and expenses incurred.  Pursuant to the Prepetition FCRA, after submission of an invoice, I may draw from the Retainer to pay my invoices and FW's invoices.  After receiving our invoices, the Debtors are to promptly replenish the Retainer in an amount equal to the amount of such invoices.

10.     Except as set forth in the applicable invoices, neither I nor FW have received compensation in the Chapter 11 Cases, nor has an agreement been made as to compensation to be paid.  No agreement or understanding exists between me and any other person (other than between me and FW) for the sharing of compensation received or to be received for services rendered by me in connection with the Chapter 11 Cases.

11.     I have agreed to charge a rate of $1,160 per hour for my incurred time, subject to periodic adjustment, plus reimbursement of actual and necessary out-of-pocket expenses.

12.     I will review any order entered by this Court establishing procedures for interim compensation and reimbursement of expenses of professionals, and I agree to comply with the provisions thereof to the best of my ability.

13.     I understand that my service as FCR  in connection with the Chapter 11 Cases, subject to approval by this Court, would be on the following terms:

(a)     <u>Standing</u>.  The FCR shall have standing under section 1109(b) of the Bankruptcy Code to be heard as a party-in-interest in all matters relating to the Chapter 11 Cases and shall have such powers and duties of a committee, as set forth in section 1103 of the Bankruptcy Code, as are appropriate for an FCR.

(b)     <u>Right to Receive Notices</u>.  The FCR and professionals retained by the FCR and approved by this Court shall have the right to receive all notices and pleadings that are required to be served upon any statutory committee and its counsel pursuant to applicable law or an order of this Court.

(c)     <u>Engagement of Professionals</u>.  The FCR may, with prior approval from this Court pursuant to sections 105(a) and 1103 of the Bankruptcy Code and consistent with the treatment afforded other professionals in the Chapter 11 Cases, retain attorneys and other professionals.

(d)     <u>Compensation</u>.  The FCR shall apply for compensation in accordance with the Bankruptcy Code, the Local Bankruptcy Rules for the Southern District of New York, and any order entered by this

Court establishing procedures for interim compensation and reimbursement of expenses of professionals.  Subject to Court approval, the FCR shall be compensated at an hourly rate of $1,160, subject to periodic adjustment, plus reimbursement of reasonable and documented expenses.

## **DISINTERESTEDNESS**

14.    The Debtors have provided me with various lists of names (collectively, the "Parties in Interest List") of individuals or institutions that are potentially interested parties (the "Parties in Interest") in the Chapter 11 Cases.

15.    I have reviewed the Parties in Interest List and conducted a search of my records and those of FW for connections to the Parties in Interest.  Unless otherwise indicated, this Declaration discloses connections to persons identified as Parties in Interest in matters in FW's records that are currently active or were active within the past two years.

(a)    As more fully described in the Motion, I served as prepetition FCR to represent the interests of the Future Claimants prepetition.

(b)    In connection with my prepetition work, I retained FW and YCST as counsel.  In addition, FW and YCST retained National Economic Research Associates, Inc. ("NERA") and Ducera Partners LLC ("Ducera") to assist them in connection with their legal advice to me with respect to my prepetition work.  I expect to seek approval from this Court to retain these professionals during the Chapter 11 Cases.

(c)    Mallinckrodt, Mallinckrodt Pharmaceuticals, and Sucampo Pharma Americas LLC are listed as parties in interest.  As noted above, I served as the FCR during Mallinckrodt's Chapter 11 proceedings, and YCST, FW, Ducera, and NERA served as my advisors.  I continue to serve as FCR, and YCST and FW continue to represent me in that capacity, in connection with the Mallinckrodt opioid personal injury trust.

(d)    NERA presently serves as an advisor to two personal injury compensation trusts in connection with which I serve as the FCR.  YCST, FW, Ducera, and NERA may represent me or serve as advisors to me in other matters in the future.

(e)    I serve as the Trustee of the Shook & Fletcher Asbestos Settlement Trust.  Wilmington Trust, NA serves as Delaware Trustee for the

Trust; FW represents the Trust; Keating, Muething & Klekamp PLL is litigation counsel for the Trust; and Ankura Consulting Group serves as the trust administrator and claims estimation expert for the Trust.

(f)     Ankura Consulting Group serves as an expert in connection with other asbestos victim compensation trusts in which FW and I also have roles.  Ankura serves as the claims estimation expert for me in my capacity as FCR for a trust.  Ankura and I have potentially adverse roles in connection with a trust for which Ankura serves as the claims estimation expert for the trust and I serve as FCR.  FW represents me as trustee or FCR in these matters.  In addition, Ankura serves as the claims estimation expert for a client of FW who serves as FCR to another asbestos settlement trust.  Ankura may serve as an expert or advisor to me in other matters in the future.

(g)     In connection with my role as FCR in *In re Cyprus Mines Corporation*, Case No. 21-10398 (LSS) (Bankr. D. Del. 2021), Togut, Segal & Segal LLP and FW represent me as FCR, and Archer & Greiner, P.C. serves as my New Jersey counsel in *In re LTL Management LLC*, Case No. 21-30589 (MBK) (Bankr. D.N.J. 2021).  In the related case of *In re Imerys Talc America, Inc. et al.*, Case No. 19-01289 (LSS) (Bankr. D. Del. 2019), James L. Patton, Jr. serves as the FCR, YCST serves as his counsel, and Ankura Consulting Group and Ducera serve as his advisors.

(h)     I served as a mediator in a matter in which W. Mark Lanier and the Lanier Law Firm represented a party to the mediation.  FW provided advice to me in that matter.  That matter has now concluded.

(i)     I served as a mediator in a matter in which Comcast was a party to the mediation.  That matter has now concluded.  FW provided advice to me in that matter.

16.     All of the matters discussed in clauses (c) through (i) of the above paragraph are wholly unrelated to the Chapter 11 Cases.

17.     To the best of my knowledge, insofar as I have been able to ascertain after reasonable inquiry based on the Parties in Interest List, and except as set forth in this Declaration, I do not represent, and have not represented, any entity in matters related to the Chapter 11 Cases.

18.     I am a "disinterested person" under section 101(14) of the Bankruptcy Code, in that:

(a)    Other than in connection with my prepetition engagement under the Prepetition FCRA, based upon the Parties in Interest List, and except as disclosed herein, I have no connection with the Debtors, their respective professionals, their creditors, the Office of the United States Trustee for the Southern District of New York (the "U.S. Trustee"), any person employed in the Office of the U.S. Trustee, or any other party with an actual or potential interest in the Chapter 11 Cases;

(b)    I am not a creditor, equity security holder, or insider of the Debtors;

(c)    I am not and was not, within two years of the Petition Date, a director, officer, or employee of the Debtors; and

(d)    I do not have an interest materially adverse to the Debtors, their estates, or any class of creditors or equity security holders, or the Future Claimants, by reason of any direct or indirect relationship to, connection with, or interest in the Debtors, or for any other reason.

19.    FW and I have in the past and/or currently work with and/or against a number of professionals involved in the Chapter 11 Cases in connection with matters wholly unrelated to the Chapter 11 Cases.

20.    Based on the foregoing disclosures, I believe that (a) I am independent of the Debtors and the Parties in Interest; (b) none of the matters disclosed in this Declaration has had or will have an adverse effect on my ability to carry out my duties as FCR to loyally and effectively represent the interests of the Future Claimants; and (c) pursuant to section 101(14) of the Bankruptcy Code, I am a "disinterested person" and do not have any interest that is materially adverse to the interests of the Future Claimants.

21.    If any new relevant facts or relationships bearing on the disclosures in this Declaration are discovered or arise, I will use reasonable efforts to identify such further developments and will promptly file a further supplemental declaration.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my information, knowledge and belief.

Executed:     August 16, 2022
                  Washington, DC

By:     _/s/ Roger Frankel_____
          Roger Frankel
          Proposed Future Claimants Representative
          2101 L Street, N.W.
          Washington, DC 20037

## Exhibit C

**Prepetition FCRA**

ROGER FRANKEL
FRANKEL WYRON LLP
2101 L STREET, NW
SUITE 800
WASHINGTON, DC 20037

July 28, 2022

Matthew J. Maletta
Executive Vice President, Chief Legal Officer, and Secretary
c/o Endo International plc
1400 Atwater Drive
Malvern, PA 19355

Re: Endo International plc

Dear Mr. Maletta

You have asked me to serve as the legal representative for certain future personal injury claimants (the "**FCR**") in conjunction with discussions and negotiations regarding a potential restructuring, the effectuation of which would be sought in a potential filing for relief under Chapter 11 of Title 11 of the United States Code by Endo International plc and one or more of its affiliates (collectively, the "**Company**"). The express purpose of this representation is to protect the rights of persons who might assert claims or demands against the Company in the future based on alleged injuries relating to opioid products, vaginal mesh products, ranitidine products, and any additional products as determined by the FCR and the Company in the future, for which the Company may be alleged to be liable (collectively, "**Future Claimants**"). In particular, I have been asked to review and familiarize myself with the Company's business affairs, their assets and liabilities, the relationship between the Company and its shareholders and affiliated companies, insurance issues, estimates of present and future liabilities, and any other due diligence items I may reasonably determine to review and familiarize myself in the exercise of my duties as FCR, and thereafter to participate in negotiations regarding a potential restructuring on behalf of Future Claimants.

I agree to undertake this representation upon the terms and conditions set forth in this letter. The Company's agreement to these terms and conditions constitutes a material inducement to me in entering into this agreement and agreeing to undertake this representation as the FCR

1.    The Company shall be fully liable for all reasonable and documented fees and expenses incurred by me and the FCR Professionals (as defined herein) in connection with my role as FCR prior to the filing of any chapter 11 petition for relief, including all reasonable and documented fees and expenses I incur prior to and during negotiations regarding a potential restructuring. My time will be billed at my standard hourly rate as established from time to time by my firm, Frankel Wyron LLP ("**FW**"). At present, my rate is $1,160 per hour.

2.    I have selected FW, a law firm in which I am a partner, to serve as my counsel. I intend to select and hire Young Conaway Stargatt & Taylor, LLP, Ducera Partners LLC, and National Economic Research Associates, Inc. as additional legal counsel and advisors (collectively with FW, the "**FCR Professionals**") to assist me in my role as FCR. The Company acknowledges

that: (a) I will require assistance from the FCR Professionals in the course of my engagement; and (b) the Company will be required to compensate the FCR Professionals in a timely manner on my behalf for their reasonable and documented fees and expenses, including payment of agreed-upon advance retainers. I will not retain counsel or advisors other than the FCR Professionals without the consent of the Company.

3.      Notwithstanding the obligations of the Company to pay my reasonable and documented fees and costs and those of the FCR Professionals in accordance with this agreement, the parties understand and acknowledge that my sole responsibility and loyalty is to the Future Claimants for whom I serve hereunder as FCR. My service as FCR is not intended to render me, and shall not be construed as rendering me, an employee or agent of the Company, or to render me counsel or an advisor to the Company, and the Company shall not have any right to control or influence how the FCR Professionals or I carry out our duties. The Company further understands that my service as the FCR could be adverse to the interests of the Company. The Company, therefore, hereby waives, after consultation with its counsel, any conflicts that could arise during the course of this engagement.

4.      I intend to provide the Company a monthly bill reflecting my reasonable and documented fees and expenses incurred each month, as well as bills I receive from the FCR Professionals for reasonable and documented fees and expenses. Permissible expenses include, without limitation, reasonable and documented expert fees, photocopying, postage and delivery costs, travel, and other customary charges. I reserve the right to submit bills for time and expenses I incur, and those incurred by the FCR Professionals, more frequently than once a month, and to require at any time the replenishment of the Retainer as described in the next paragraph.

5.      In light of the nature of the engagement currently contemplated, as a condition to my engagement, I and FW require from the Company a retainer (the "**Retainer**") at this time of $400,000. The FW wiring instructions are attached to this letter as **Exhibit A**. FW will hold the Retainer in FW's escrow account as security for my unpaid fees and expenses and those of FW. The Retainer will not accrue interest for the benefit of the Company. The Retainer is fully refundable to the Company to the extent not earned. Upon submitting each bill to the Company, I and FW will apply the funds from the Retainer to pay each such bill in full, and the Company will promptly replenish the Retainer to the $400,000 level and will pay any amount due with respect to each such bill in excess of the funds applied to each such bill from the Retainer to the extent funds from the Retainer did not pay each such bill in full. At the time of the final billing, I and FW will apply the appropriate amounts from funds remaining in the Retainer and return any balance to the Company. The Company agrees that, in the event bankruptcy petitions are filed by or against any affiliates of the Company, any amounts remaining in the Retainer will continue to be held by FW as security for all of my and FW's fees and expenses incurred in connection with this engagement.

6.      In the event that the Company or any affiliate of the Company files bankruptcy petitions, my service as FCR under this agreement will terminate immediately, and thereafter approval of the bankruptcy court having jurisdiction over the bankruptcy case of the filing entity or entities (the "**Bankruptcy Court**") will be required for my engagement to represent Future Claimants in the bankruptcy case. I reserve the right, on seven days' advance written notice to the Company, to terminate my service as the FCR and the retention of the FCR Professionals at any time prior to the filing of any bankruptcy proceedings if, in my sole judgment, I determine that the

2

Company is in breach of this agreement or the negotiations in a bankruptcy are not progressing reasonably. The Company reserves the right, on seven days' advance written notice to me, to terminate my engagement (and that of the FCR Professionals) hereunder for cause, which cause shall be described in the written notice and include a decision by the Company, in its sole discretion, to cease any further discussions or negotiations with the FCR. Any termination by me or the Company will not affect (i) the Company's obligation to pay any reasonable and documented fees earned and expenses incurred by me or by any of the FCR Professionals prior to the notice of termination, (ii) the Company's obligations under Paragraph 8 below (except as expressly provided therein), (iii) the confidentiality obligations described in Paragraph 9 below, or (iv) the obligations set forth in Paragraph 11 below. All of my unpaid fees and expenses and those of the FCR Professionals shall be paid prior to the filing of a bankruptcy petition, and the Company agrees that the FCR Professionals and I have the right to draw on funds on hand from the Company (including the Retainer) for that purpose or for the payment of any reasonable and documented fees and expenses which have been incurred as of the date of any such filing but have not yet been billed.

7.      In the event the Company or any of the Company's affiliates files a bankruptcy petition, the Company presently anticipates (but is not obligated, and does not hereby undertake) that the filing entity or entities would ask the Bankruptcy Court to appoint me to represent Future Claimants as their FCR during the bankruptcy case. The parties understand that if the Bankruptcy Court approves my continued service as the representative of Future Claimants, my fees and costs and those of the FCR Professionals incurred following the filing of a bankruptcy case will require Bankruptcy Court approval before they may be paid out of the debtor's or debtors' bankruptcy estate(s) in accordance with procedures established by the Bankruptcy Court.

8.      The Company hereby indemnifies and agrees to defend and hold harmless me and the FCR Professionals (for purposes of this Paragraph 8, collectively, the "**Indemnified Parties**" and individually, an "**Indemnified Party**"), to the fullest extent authorized by applicable law, from and against any losses, claims, damages, or liabilities (or actions in respect thereof, including without limitation any action or proceeding seeking discovery from any Indemnified Party of information relating to my work under this agreement or the work of any of the FCR Professionals) to which any Indemnified Party may become subject as a result of or in connection with my rendering services hereunder or an Indemnified Party rendering services to the FCR. The foregoing entitlement of the Indemnified Parties shall include, without limitation, (i) the right to be indemnified against any liability related to or resulting from any information provided to the Indemnified Parties by the Company or any of its advisors that is inaccurate in any respect as a result of misrepresentation, omission, failure to update, or otherwise, unless I or the applicable Indemnified Party actually knew of such inaccuracy at the time of the misrepresentation, omission, failure to update, or other occurrence; (ii) the right to bring an action against the Company to compel it to perform its obligations under this Paragraph 8 if such obligations have not been performed in full within twenty (20) days after receipt by the Company of a written claim by an Indemnified Party for indemnification and/or defense of an action or proceeding covered by this Paragraph 8 and/or payment of any defense expenses covered by this Paragraph 8, including reasonable and documented attorneys' fees incurred by an Indemnified Party in such action or proceeding, whether such action is concluded, ongoing, or threatened; and (iii) the right to be indemnified for any expenses, including reasonable and documented attorney's fees, that an Indemnified Party may incur in enforcing this Paragraph 8. In any such enforcement action or

3

proceeding, the burden of proving that an Indemnified Party is not entitled to indemnification, defense, or other rights provided by this Paragraph 8 shall be on the Company. If it is finally judicially determined that such losses, claims, damages, or liabilities were caused by fraud, willful misconduct, bad faith, or gross negligence on the part of an Indemnified Party in performing its obligations set forth under the terms and conditions of this agreement, then the Company's obligations to defend, hold harmless and indemnify such Indemnified Party shall terminate. The termination of the Company's obligations under the preceding sentence to an Indemnified Party shall not in any way limit or affect the Company's obligations to each other Indemnified Party. The rights provided by this Paragraph 8 shall not be exclusive of any other right that any Indemnified Party may have or hereafter acquire under any statute, provision of the Company's certificate of incorporation, bylaw, agreement, vote of stockholders or disinterested directors, court order or otherwise. In the event that full indemnification as contemplated by the foregoing provisions is not available to the Indemnified Parties as a matter of law, then, to the extent permitted by applicable law, each Indemnified Party's aggregate liability shall be limited to the total fees it collected for the services rendered and, in any event, shall be limited by a final adjudication of its relative degree of fault and benefit received. The Company's obligations under this Paragraph shall survive termination of this agreement. I reserve the right, in my sole discretion, to waive, but only by express written notice to such effect (and not by any other action or by inaction), any rights to indemnification that I may otherwise have under this Paragraph; provided, however, if I am appointed as the FCR by a final order of the Bankruptcy Court in the bankruptcy case of the Company or any of the Company's affiliates, these indemnification provisions shall automatically terminate without any further action required by the Company or me.

9.     The terms of that certain Confidentiality Disclosure Agreement, dated as of July 25, 2022, by and between me, Roger Frankel, and Endo Health Solutions, Inc. (the "**CDA**") are hereby incorporated herein by reference and shall continue in full force and effect in all respects. In the event that any conflict or inconsistency exists between the terms hereof and the terms set forth in the CDA, the terms of the CDA shall prevail. Upon any expiration or termination of this agreement, the CDA shall continue in full force without any modification thereto.

10.     I serve as the future claimants' representative in other matters and expect that I will agree or will be appointed to serve as a future claimants' representative or other fiduciary in other matters in the future. In addition, FW represents, and may represent in the future, clients holding positions or engaged to serve as future claimants' representatives in connection with matters including pending bankruptcy cases and post-bankruptcy victim compensation trusts. Additionally, FW may represent, and may represent in the future, clients seeking financial restructuring advice, or in connection with other representations not limited to financial restructuring advice, and these clients may owe debts or may otherwise hold and assert interests adverse to the Company. The Company has provided us with a list of potential parties in interest in connection with a restructuring of the Company or one or more of its affiliates. FW has reviewed its records and has confirmed that it does not currently represent the Company, any known affiliate thereof, or any party in connection with the Company's negotiations regarding a proposed restructuring. By countersigning this agreement below, you waive on behalf of the Company any and all actual conflicts that exist or may arise on account of the FCR Professionals' and my present and future representations in matters unrelated to the Company's bankruptcy of entities holding interests adverse to the Company.

11.    Upon the termination of this agreement, upon your request, FW will promptly return to the Company all records related to this matter or certify that it has securely destroyed all such records in accordance with the relevant terms of the CDA.

12.    This agreement shall become effective upon my receipt from the Company of the Retainer and a signed counterpart of this agreement, and shall apply to all work performed, and all fees and expenses I and FW have incurred, since the date we began work on this matter.

13.    Any modification of this agreement shall be effective only if in writing and signed by the parties hereto.

14.    This agreement shall be governed by the laws of the State of New York.


**[REMAINDER OF THIS PAGE INTENTIONALLY LEFT BLANK]**

***

Please execute this letter in the space provided below in order to indicate the Company's agreement to the terms set forth herein and return an executed copy of this letter to me.

Very truly yours,

Roger Frankel

AGREED:

ENDO INTERNATIONAL PLC

BY: _____

Name:    Matthew J. Maletta

Title:    EVP, Chief Legal Officer, and Company Secretary

*[Signature Page – FCR Engagement Letter]*