UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

NOT FOR PUBLICATION

------------------------------------------------------------x
In re:                                                     :
                                                           :
Endo International plc, *et al.*,                          :
                                                           :
                                              Debtors.     :
------------------------------------------------------------x

Case No. 22-22549 (JLG)
Chapter 11

Jointly Administered

## MEMORANDUM DECISION AND ORDER DENYING
## MOTION FOR LEAVE TO PROCEED WITH STATE COURT ACTION

**A P P E A R A N C E S:**

HOLWELL SHUSTER & GOLDBERG LLP
*Attorneys for ACE Property and Casualty Insurance Company, Chubb Custom Insurance Company, and Illinois Union Insurance Company*
425 Lexington Ave.
New York, NY 10017
By:    Michael S. Shuster
       Blair E. Kaminsky
       Daniel M. Sullivan
       Matthew Gurgel


NICOLAIDES FINK THORPE MICHAELIDES SULLIVAN LLP
*Attorneys for Everest National Insurance Company*
10 South Wacker Drive, 36th Floor
Chicago, IL 60606
By:    Charles A. Hafner
       Matthew S. Sorem
       Leena Soni


WILSON ELSER MOSKOWITZ EDELMAN & DICKER LLP
*Attorney for Certain Underwriters at Lloyd's London Subscribing to Policy Nos. LSRXS00198-16, LSRXS00285-17, LSRXS00456-19*
1133 Westchester Avenue
White Plains, NY 10604
By:    Eric G. Cheng

DENTONS US LLP
*Attorneys for Catlin Syndicate Limited A/K/A XL Syndicate Limited, Columbia Casualty Company, Greenwich Insurance Company, and XL Insurance America*
1221 Avenue of the Americas
New York, NY 10020
By:    Geoffrey Miller
1400 Wewatta Street, Suite 700
Denver, CO 80202
By:    Kathryn Guinn
100 Crescent Court Suite 900
Dallas, TX 75201
By:    Matthew T. Nickel
4520 Main Street Suite 1100
Kansas City, MO 64111
By:    Samantha Wenger


HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER
*Attorneys for Liberty Insurance Underwriters Inc. and The Ohio Casualty Insurance Company*
One Logan Square, 27th Floor
Philadelphia, PA 19103
By:    Ronald P. Schiller


CHOATE, HALL & STEWART LLP
*Attorneys for Liberty Insurance Underwriters Inc. and The Ohio Casualty Insurance Company*
Two International Place
Boston, MA 02110
By:    Douglas R. Gooding
       Robert A. Kole
       Caroline M. Trusty


HANGLEY ARONCHICK SEGAL PUDLIN & SCHILLER
*Attorney for Ironshore Specialty Insurance Company*
One Logan Square, 27th Floor
Philadelphia, PA 19103
By:    Ronald P. Schiller


MCKOOL SMITH, P.C.
*Attorneys for Matthew Dundon, in his capacity as Trustee for the General Unsecured Creditors' Trust*
1301 Avenue of the Americas, 32nd Floor
New York, NY 10019
By:    Kyle A. Lonergan

James H. Smith
Radu A. Lelutiu

GILBERT LLP
*Attorneys for Matthew Dundon, in his capacity as Trustee for the General Unsecured Creditors'
Trust*
700 Pennsylvania Avenue, SE Suite 400
Washington, DC 20003
By:    Richard J. Leveridge

**HON. JAMES L. GARRITY, JR.**
**U.S. BANKRUPTCY JUDGE**

## INTRODUCTION[1]

Matthew J. Dundon (the "GUC Trustee"), is the trustee for the General Unsecured

Creditors Trust (the "GUC Trust"), a statutory trust created by the Fourth Amended Plan of

Reorganization of Endo International plc and its debtor affiliates (the "Plan").[2] In that capacity, he

commenced an action against certain Insurers, including the DE Plaintiff Insurers,[3] seeking

insurance coverage under certain insurance policies in the United States District Court for the

Eastern District of Pennsylvania (the "Pennsylvania Court") (the "Pennsylvania Action"),[4] The

DE Plaintiff Insurers filed answers to the GUC Trust Complaint and, immediately thereafter,

---

[1] Capitalized terms that are not defined herein shall have the meanings ascribed to them in the Plan.

[2] *See Fourth Amended Joint Chapter 11 Plan of Reorganization of Endo International plc and its Affiliated Debtors*, ECF No. 3849. References to "ECF No. __" are documents filed on the electronic docket of the Chapter 11 Case.

[3] The "DE Plaintiff Insurers" refers to movants ACE Property and Casualty Insurance Company; Catlin Syndicate Limited a/k/a/ AXA XL Syndicate Limited; Certain Underwriters at Lloyd's London Subscribing to Policy Nos. LSRXS00198-16, LSRXS00285-17, LSRXS00456-19; Chubb Custom Insurance Company; Columbia Casualty Company; Everest National Insurance Company; Greenwich Insurance Company; Illinois Union Insurance Company; Ironshore Specialty Insurance Company; Liberty Insurance Underwriters Inc.; The Ohio Casualty Insurance Company; and XL Insurance America, Inc. The DE Plaintiff Insurers are a subset of the defendant Insurers in the Pennsylvania Action.

[4] See *Matthew Dundon, as the Tr. of the Endo Gen. Unsecured Creditors' Tr. v. ACE Prop. & Cas. Ins. Co., et al.*, No. 24-04221 (E.D. Pa.). References to the docket sheet of the Pennsylvania Action shall be to "EDPA ECF No. __."

commenced a declaratory judgment action in Delaware Superior Court (the "Delaware Court") against the GUC Trust, the GUC Trustee and a subset of the Insurers (the "Delaware Action"). In it they seek to resolve some of the insurance coverage disputes at issue in the Pennsylvania Action. The DE Plaintiff Insurers did not obtain leave of the Court prior to commencing the Delaware Action.

The matter before the Court is the DE Plaintiff Insurers' *Notice of Pending State Court Action or, in the Alternative, Motion for Leave to Proceed With State Court Action* (the "Notice & Motion"),[5] in which they purport to (i) notify the GUC Trustee and this Court of the pending Delaware Action, and (ii) in the alternative and to the extent necessary, move this Court for leave to proceed with the Delaware Action. The Trustee filed an objection to the Notice & Motion (the "Objection"),[6] and the DE Plaintiff Insurers filed a reply in further support of the Notice & Motion (the "Reply").[7]

The Court heard argument on these matters. For the reasons set forth herein the Court finds that by application of the *Barton* Doctrine, the DE Plaintiff Insurers are enjoined from prosecuting the Delaware Action. The Court denies their request for leave to prosecute the action and directs them to dismiss the action.

## **JURISDICTION**

This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the Amended Standing Order of Referral of Cases to Bankruptcy Judges of the United States District

---

[5] *Motion to Authorize State Court Action to Proceed*, ECF No. 4795.

[6] *Objection To Insurers' Notice Or, in the alternative, Motion for Leave to Proceed With State Court Action*, ECF No. 4810.

[7] *Reply in Further Support of Notice of Pending State Court Action or, in the alternative, Motion for Leave to Proceed With State Court Action*, ECF No. 4815.

Court for the Southern District of New York (M-431), dated January 31, 2012 (Preska, C.J.). This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). In addition, pursuant to the Confirmation Order[8] and Plan, this Court has retained jurisdiction over the Chapter 11 Cases and all matters arising out of, or related to, the Chapter 11 Cases and the Plan, including, among other things, to enter and implement such orders as may be necessary or appropriate to execute, implement, or consummate the provisions of the Plan, the Confirmation Order, and any agreements and documents in connection with or contemplated by the Plan, the Confirmation Order, the PSA, and the Disclosure Statement.

## **BACKGROUND**

On August 16, 2022 (the "Petition Date"), Endo International plc and seventy-five of its affiliated Debtors each commenced chapter 11 cases (the "Chapter 11 Cases") by filing a petition for relief under chapter 11 of the Bankruptcy Code. On May 25, 2023, and May 31, 2023, certain additional Debtors also commenced Chapter 11 Cases by filing petitions for relief under chapter 11 of the Bankruptcy Code. The Chapter 11 Cases are being jointly administered.

## **The GUC Trust**

On March 22, 2024, the Court confirmed the Plan. *See* Confirmation Order. On April 23, 2024, the Plan became effective (the "Effective Date").[9] The GUC Trust[10] is a statutory trust created by section 6.2 of the Plan, and the GUC Trust Agreement, dated April 23, 2024, by and

---

[8] *See Findings of Fact, Conclusions of Law, and Order (i) Confirming the Fourth Amended Joint Chapter 11 Plan of Reorganization of Endo International PLC and Its Affiliated Debtors and (II) Approving the Disclosure Statement with Respect Thereto*, ECF No. 3960.

[9] *Notice of (I) Entry of Confirmation Order, (II) Occurrence of Effective Date, and (III) the Administrative Expense Claims Bar Date*, ECF No. 4212.

[10] Under the Plan, the term "GUC Trust" means "the Voluntary GUC Creditor Trust to be established pursuant to the UCC Resolution Term Sheet and in accordance with the GUC Trust Documents." Plan § 1.1.224. Those documents include the GUC Trust Agreement. *See id.* §§ 1.1.235 ("GUC Trust Documents"); 1.1.225 ("GUC Trust Agreement").

among Endo International plc, on behalf of itself and the other Debtors, Endo, Inc., UMB Delaware

Inc., or its successor, as Delaware Trustee, and Matthew J. Dundon, in his capacity as Trustee for

the GUC Trust.[11] The Plan calls for the establishment of the GUC Trust "for the purposes described

in this Plan and any other purposes more fully described in the GUC Trust Documents, and the

GUC Trust . . . shall be subject to the jurisdiction of the Bankruptcy Court." Plan § 6.2(a). It

provides that the GUC Trust "shall be formed for purposes of, in each case, in accordance with

this Plan and the GUC Trust Documents . . . (i) receiving, collecting, holding, administering,

liquidating, and distributing the assets of the GUC Trust for the benefit of the beneficiaries thereof

. . . ." *Id.* § 6.2(a)(I).

Under the agreement, "Trust Assets" include the "Trust Transferred Assets" held by the

GUC Trust on or after the Effective Date. GUC Trust Agreement § 1.2.135 ("Trust Assets"). In

turn, those assets include "Transferred Insurance Rights," and all materials required to be

transferred to the GUC Trust pursuant to the Cooperation Agreement. *Id.* § 1.2.143 ("Trust

Transferred Assets"). The Transferred Insurance Rights include "GUC Trust Insurance Rights,"

as that term is defined in the Plan. *Id.* § 1.2.131 ("Transferred Insurance Rights"). The "GUC Trust

Insurance Rights" include GUC Trust Insurance Policies and rights to Claims or Causes of Action

attributable to those policies. *See* Plan § 1.1.237.

The Plan authorizes the GUC Trustee,[12] in consultation with the GUC Trust Oversight

Board to "undertake actions on behalf of the GUC Trust, without the need for any additional

---

[11] *See* Seventh Plan Supplement, Ex. 1-A, ECF No. 4213 (the "GUC Trust Agreement").

[12] The Plan defines the "GUC Trustee" as "the Person serving in such capacity as identified in the Plan Supplement." Plan § 1.1.243. It provides that the GUC Trustee "shall have and perform all of the duties, responsibilities, rights, and obligations of GUC Trustee set forth in the GUC Trust Documents." *Id.* § 6.2(c).

approvals, authorization, or consents, and without any further notice to or action, order, or approval of the Bankruptcy Court, in each case, in accordance with this Plan and the GUC Trust Documents." Plan § 6.2(c). The GUC Trust Agreement vests the GUC Trustee with the "general executive responsibility for the conduct of the affairs of the GUC Trust in consultation with the GUC Trust Oversight Board . . . ." GUC Trust Agreement § 7.3.1. Without limitation, the agreement expressly authorizes the GUC Trustee "to hold, manage, dispose of, sell, and convert to Cash, the Trust Assets," and "to investigate, prosecute, settle, liquidate, dispose of, and/or abandon the Causes of Action belonging to the GUC Trust." *Id.* §§ 7.3.2(b), (h). The Plan identifies the "Sources of Plan Distributions" to include the "GUC Trust Litigation Consideration," Plan § 5.2(a)(iv), as well as "insurance proceeds," *id.* § 5.2(c)(ii), and "proceeds of the pursuit of any Claims or Causes of Action . . . , *id.* § 5.2(c)(iv). The GUC Trust Litigation Consideration includes the GUC Trust Insurance Rights. *Id.* § 1.1.239.

The Plan provides that the GUC Trust "shall be subject to the jurisdiction of the Bankruptcy Court." Plan § 6.2(a). Under the Plan, this Court "retain[s] jurisdiction over the Chapter 11 Cases and all matters arising out of or related to the Chapter 11 Cases and this Plan pursuant to sections 105(a) and 1124 of the Bankruptcy Code . . . ." Plan § 13.1. That includes jurisdiction to "adjudicate, decide, or resolve any and all matters related to any Cause of Action, including, with respect to the GUC Trust Litigation Consideration . . . to the extent set forth in the GUC Trust Documents", *id.* § 13.1(f), and "resolve any cases, controversies, suits, disputes, or Causes of Action that may arise in connection with the consummation, interpretation, or enforcement of this Plan or any Person's obligations incurred in connection with this Plan," *id.* § 13.1(i). Section 14.2 of the GUC Trust Agreement is clear that this Court retains jurisdiction over all matters relating to the agreement, including the Trust Assets, although it vests the GUC Trust with the power to bring

(or cause to have brought) any action in any court of competent jurisdiction to prosecute any Cause

of Action belonging to the GUC Trust. GUC Trust Agreement § 14.2.[13]

### The Pennsylvania Action

On August 15, 2024, the GUC Trustee commenced the Pennsylvania Action by filing a

complaint (the "GUC Trust Complaint")[14] in the Pennsylvania Court against the DE Plaintiff

Insurers, as well as certain other insurers[15] (collectively with the DE Plaintiff Insurers, the

"Insurers") that issued and/or underwrote certain insurance policies. The lawsuit seeks insurance

coverage under the policies of the Insurers related to (i) transvaginal surgical mesh products (the

"Mesh Claims"); (ii) opioid products, including brand name products, such as Opana and Opana

ER, and generic opioids, as well as liability for other opioid manufacturers' products and illicit

---

[13] As relevant, section 14.2 of the GUC Trust Agreement provides, as follows:

> 14.2 Jurisdiction. During the pendency of the Chapter 11 Cases the Bankruptcy Court shall have jurisdiction regarding the GUC Trust, the GUC Trustee, the GUC Trust Oversight Board, and the Trust Assets, including the determination of all disputes arising out of or related to administration of the GUC Trust, and following the Effective Date, while the Bankruptcy Cases remain open, shall have continuing jurisdiction and venue to hear and finally determine all disputes and related matters arising out of or related to this Trust Agreement or the administration of the GUC Trust; provided, however, that (i) notwithstanding anything to the contrary in this Section or elsewhere in this Trust Agreement, the GUC Trust shall have the power and authority to bring (or cause to have brought) any action in any court of competent jurisdiction to prosecute any Cause of Action belonging to the GUC Trust . . . .

GUC Trust Agreement § 14.2.

[14] *Complaint* [filed in Pennsylvania Action], *see* EDPA ECF No.1.

[15] Those insurer are: AEGIS Electric & Gas International Services 5 Limited ("AEGIS I"); AEGIS Electric & Gas International Services Limited ("AEGIS II"); Ascot Corporate Name Limited; Aspen Insurance UK Limited; Atrium Corporate Capital Limited; AXA XL Insurance Company UK Limited; Beazley Underwriting Limited; Chaucer Corporate Capital (No. 3) Limited; Coverys Capital Limited; Endurance Specialty Insurance Limited; Everest Corporate Member Limited; Federal Insurance Company; Gemini Insurance Company; Hiscox Dedicated Corporate Member Limited; Lexington Insurance Company; Liberty Specialty Markets Bermuda Limited; Markel International Insurance Company Limited (Markel Europe PLC F/K/A Alterra Europe PLC); MS Amlin Corporate Member Limited; Newline Corporate Name Limited; Phoenix Insurance Company; QBE Insurance Corporation; Renaissance Corporate Capital (UK) Limited; St. Paul Fire and Marine Insurance Company; StarStone Specialty Insurance Company; TDC Specialty Insurance Company; Travelers Indemnity Company of America; Travelers Property Casualty Company of America; and Vibe Corporate Member Limited (collectively with the DE Plaintiff Insurers, the "Insurers").

opioids (the "Opioid Claims"); and (iii) ranitidine products, including generic versions of Zantac (the "Ranitidine Claims"). *See generally* GUC Trust Complaint.

On November 26, 2024, the vast majority of the Insurers filed answers in response to the GUC Trust Complaint. After answering the complaint, QBE Insurance Corporation ("QBE Insurance") filed a disclosure statement that identified its principal place of business as New York, which is the same domicile as the GUC Trustee.[16] Additionally, certain Insurers, including those from which the GUC Trustee seeks coverage related to the Mesh Claims, invoked arbitration clauses in their policies or the policies to which they follow form. The GUC Trustee moved to stay litigation related to claims under those policies, which the Pennsylvania Court granted.[17] AEGIS I and AEGIS II moved to stay litigation of the GUC Trustee's claims pursuant to the existence of an arbitration clause.[18] The Pennsylvania Court denied this motion, holding that "the insurance coverage issues can be litigated and resolved in tandem with the claims that are being arbitrated."[19]

**The Delaware Action**

On November 26, 2024, the DE Plaintiff Insurers filed a complaint (the "Delaware Complaint")[20] against the GUC Trust, the GUC Trustee, and certain Insurers, commencing the Delaware Action. That action seeks to resolve whether coverage exists for the Opioid Claims and the Ranitidine Claims (the "Underlying Claims"), but not the Mesh Claims. The same day, the DE

---

[16] *Defendant QBE Insurance Corporation's Rule 7.1 Disclosure Statement*, EDPA ECF No. 162.

[17] *Orders granting Motion to Stay*, *See* EDPA ECF No. 138-140.

[18] *Motion to Stay*, EDPA ECF No. 193.

[19] *Order denying Motion to Stay*, EDPA ECF No. 197.

[20] The Delaware Complaint is annexed as Exhibit A to the Notice & Motion.

Plaintiff Insurers filed the Notice & Motion to "notify" this Court of the existence of the Delaware Action, or in the alternative, seek retroactive leave to file the suit they had already filed.

**<u>The Notice & Motion</u>**

The DE Plaintiff Insurers contend that the Pennsylvania Court lacks subject matter jurisdiction over the Pennsylvania Action because there is not complete diversity of citizenship between the Trustee and the Insurers. Notice & Motion ¶ 3. Specifically, they contend that in the GUC Trust Complaint, the GUC Trustee alleges that he is a citizen of New York, and, on information and belief, QBE Insurance Corporation one of the Insurers, is also a citizen of New York. *Id.* ¶ 5. Moreover, they contend that the GUC Trustee is seeking coverage from carriers for Mesh Claims under policies that contain or incorporate arbitration provisions, and the GUC Trustee and the first-layer insurer already have begun to select arbitrators to resolve their disputes. *Id.* ¶ 6. They assert that the remaining coverage issues, involving the Underlying Claims, will likely need to be resolved in another forum. *Id.*

In that light, they maintain that they commenced the declaratory judgment action in the Delaware Court to obtain a prompt resolution of whether there is coverage for the Underlying Claims. *Id.* ¶ 8. They assert that the Delaware Court is an appropriate forum to litigate the coverage disputes because, as a court of general jurisdiction, it has subject matter jurisdiction over questions of insurance coverage for the Underlying Claims, and also has personal jurisdiction over both the GUC Trust (a statutory trust created under Delaware law) and the GUC Trustee. *Id.* (citations omitted).

In their paper, the DE Plaintiff Insurers purport to submit notice of the Delaware Action to give the GUC Trustee an opportunity to be heard regarding the applicability of the *Barton* Doctrine to their prosecution of the Delaware Action. *Id.* ¶ 2. They argue that the *Barton* Doctrine does not

apply to the Delaware Action because the GUC Trustee has elected to litigate the insurance coverage issues in the Pennsylvania Court and because those issues involve pre-petition contracts. *Id.* ¶ 11.

Alternatively, they assert that if the Court finds that the *Barton* Doctrine is applicable, they seek leave of the Court to pursue their claims against the GUC Trust and GUC Trustee in the Delaware Action. *Id.* ¶ 2. They contend that they have alleged prima facie claims against the GUC Trust and GUC Trustee, as the Delaware Action seeks a declaratory judgment to resolve the Underlying Claims that the GUC Trustee agrees are ripe and justiciable. *Id.* ¶¶ 12-13. They also contend that the Court would have to abstain from hearing the matters because the dispute is a noncore proceeding based on a state law cause of action. *Id.* ¶ 14.

## **The Objection**

The GUC Trustee objects to the Notice & Motion and contends that the Court should direct the DE Plaintiff Insurers to dismiss the Delaware Action. Objection at 2. He complains that the DE Plaintiff Insurers' prosecution of the Delaware Action is interfering with his administration of the GUC Trust, and his exercise of the powers and duties that this Court conveyed upon him under the GUC Trust Agreement. In broad strokes, he says that the *Barton* Doctrine is applicable to the Delaware Action because it bars suits against court-appointed trustees acting for the benefit of estate creditors, irrespective of whether the trustee faces personal liability in the suit. *Id.* at 6-7. He also contends that neither exception to the *Barton* Doctrine is relevant. *Id.* at 7. Finally, he argues that the Court should deny the DE Plaintiff's request for retroactive leave to file the Delaware Action. *Id.* at 9. First, he contends that because a complaint filed in violation of the *Barton* Doctrine is void ab initio, the Court must direct the DE Plaintiff Insurers to dismiss the Delaware Action. *Id.* Second, he contends that the DE Plaintiff Insurers should not be given leave to file the Delaware

Action because they have not made a prima facie case that there is any basis to proceed with the Delaware Action instead of the first-filed Pennsylvania Action. *Id.* at 9-10.

**The Reply**

The DE Plaintiff Insurers further argue that the *Barton* Doctrine is inapplicable because this Court does not have exclusive jurisdiction over the insurance litigation coverage disputes at issue in the Pennsylvania and Delaware litigations. Reply ¶ 5. They contend that the GUC Trustee has failed to cite any authority holding that *Barton* applies in circumstances in this case where (i) this Court (i.e., the "appointing court")—by approving the Plan—has determined that the state-law insurance coverage disputes can properly be resolved by another court and (ii) the GUC Trustee has agreed that the disputes are not within the Court's exclusive jurisdiction—as shown by the GUC Trustee's own decision to commence the coverage litigation in the Pennsylvania Federal Court. *Id.* ¶¶ 8-9. They also contend the Court should exercise the discretion to grant retroactive leave to proceed with the Delaware Action because the Delaware Action is not without foundation, and they claim the timing of their request is not a reason to deny it. *Id.* ¶¶ 16, 18.

## LEGAL PRINCIPLES

The *Barton* Doctrine was created from common law by the Supreme Court in *Barton v. Barbour,* 104 U.S. 126 (1881). There, the Supreme Court recognized the "general rule that before suit is brought against a receiver leave of the court by which he was appointed must be obtained." *Id*. at 128. The Supreme Court held:

> [W]hen the court of one State has . . . property in its possession for administration as trust assets, and has appointed a receiver to aid in the performance of its duty by carrying on the business to which the property is adapted . . . a court of another State has no jurisdiction, without leave of the court by which the receiver was appointed, to entertain a suit against him . . . .

*Id.* at 136-37. "This doctrine has become a black letter one: 'An unbroken line of cases . . . has imposed [the *Barton* Doctrine] as a matter of federal common law.'" *Sec. Investor Prot. Corp. v. Bernard Madoff Inv. Sec. LLC,* 460 B.R. 106, 116 (Bankr. S.D.N.Y. 2011), *aff'd* 474 B.R. 76 (S.D.N.Y. 2012) ("*Madoff*") (quoting *Katz v. Kucej (In re Biebel),* No. 08-3115, 2009 WL 1451637, at *3 (Bankr. D.Conn. May. 20, 2009 (*citing In re Linton,* 136 F.3d 544, 545 (7th Cir.1998))).

The doctrine applies equally to receivership and bankruptcy cases. *See Lebovits v. Scheffel (In re Lehal Realty Assocs.),* 101 F.3d 272, 276 (2d Cir. 1996) (noting the "well-recognized line of cases" extending the *Barton* Doctrine to a bankruptcy trustee); *MF Global Holdings, Ltd. v. Allied World Assur. Co. (In re MF Global Holdings Ltd.)*, 562 B.R. 866, 873 (Bankr. S.D.N.Y. 2017) ("*MF Global*") (applying doctrine to court-appointed Plan Administrator under confirmed chapter 11 plan). Accordingly, "a party must first obtain leave of the bankruptcy court before it initiates an action in another forum against a bankruptcy trustee or other officer appointed by the bankruptcy court for acts done in the officer's official capacity." *In re Gen. Growth Properties, Inc.*, 426 B.R. 71, 74 (Bankr S.D.N.Y. 2010) (quoting *Beck v. Fort James Corp. (In re Crown Vantage, Inc.),* 421 F.3d 963, 970 (9th Cir.2005)) (internal quotation marks omitted).

The *Barton* Doctrine is based on the principle that "a trustee in bankruptcy is an officer of the court that appoints him." *In re Lehal Realty Assocs.,* 101 F.3d at 276 (citations omitted). "[T]he [*Barton*] Doctrine is intended to protect the [appointing] court's 'overriding interest in [the] administration of the estate.'" *McIntire v. China MediaExpress Holdings, Inc.*, 113 F. Supp. 3d 769, 773 (S.D.N.Y. 2015) (quoting *In re Lehal Realty Associates*, 101 F.3d at 277); *accord MF Global*, 562 B.R. at 873 (citing *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993) (explaining that the *Barton* Doctrine "enables the Bankruptcy Court to maintain better

control over the administration of the estate")). A "central purpose of the *Barton* Doctrine is to ensure the receiver's appointing court control over the receivership assets . . . ." *McIntire*, 113 F. Supp. 3d at 775. Relatedly, the doctrine gives effect to the appointing court's strong interest in protecting the trustee from personal liability for acts taken within the scope of the trustee's official duty. *In re Lehal Realty Associates*, 101 F.3d at 27; *see also In re Linton*, 136 F.3d at 545 ("If debtors, creditors, defendants in adversary proceedings, and other parties to a bankruptcy proceeding could sue the trustee in state court for damages arising out of the conduct of the proceeding, that court would have the practical power to turn bankruptcy losers into bankruptcy winners, and vice versa."). Accordingly, "the *Barton* Doctrine applies to all types of litigation against a trustee, including declaratory and injunctive relief and a claim for damages." *In re Inmet Mining, LLC*, Adv. No. 24-7002, 2024 WL 3586837, at *2 (Bankr. E.D. Ky. Jul. 30, 2024) (citation omitted); *see, e.g., Madoff,* 460 B.R. 106 (court enjoining declaratory judgment action brought against a trustee in the Cayman Islands); *In re Gen. Growth Properties, Inc*., 426 B.R. at 76 (holding *Barton* Doctrine applies to shareholder action seeking a court order directing the debtors' board of directors to "obtain a transaction" and to refrain from entering into confidentiality agreements with potential asset purchasers.).

## ANALYSIS

There are two recognized exceptions to the *Barton* Doctrine: (i) a statutory carve-out under 28 U.S.C. § 959(a); and (ii) the "*ultra vires*" exception. *Nazareno v. Cardello*, No. 20-2242, 2021 WL 2194570, at *3 (E.D.N.Y. Apr. 28, 2021). Neither exception is applicable in this case.[21]

---

[21] Section 959(a) provides, in relevant part, that "[t]rustees . . . may be sued, without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with such property." 28 U.S.C. § 959(a). The GUC Trustee is not currently conducting business in connection with this case. Accordingly, this exception is inapplicable. *See MF Global*, 562 B.R. at 874 n.10 (noting that a section 959(a) exception is inapplicable where "a trustee acting in his official capacity conducts no business connected with the property other than to perform

Accordingly, the issues before the Court are whether the *Barton* Doctrine applies to the Delaware Action, and if it does apply, whether the Court should provide the DE Plaintiff Insurers retroactive leave to file that action. The Court considers those matters below.

### Whether the *Barton* Doctrine Bars the Delaware Action

The GUC Trustee is a court-appointed fiduciary. In the Pennsylvania Action, he is acting in his official capacity and in furtherance of the mandate under the GUC Trust agreement, that was approved under the Plan, that he liquidate and distribute the GUC Trust Assets—including known insurance policies that do or may provide coverage to the Debtors—for the benefit of GUC Trust beneficiaries. The DE Plaintiff Insurers commenced the Delaware Action to circumvent the adjudication of the issues properly before the Pennsylvania Court under the Plan. In so acting, they have "initiat[ed] an action in another forum against [the GUC Trustee] appointed by [this Court] for acts done in [his] official capacity." *In re Gen. Growth Properties, Inc.*, 426 B.R. at 74. The Delaware Action falls squarely within the scope of the *Barton* Doctrine, even as the DE Plaintiff Insurers are seeking declaratory relief against the Trustee.

The DE Plaintiff Insurers advance two main arguments against the application of the *Barton* Doctrine. First, they argue that the doctrine is not applicable because this Court does not have exclusive jurisdiction over the insurance litigation coverage disputes at issue in the Pennsylvania and Delaware litigations. They contend that by approving the Plan and GUC Trust Agreement, this Court has determined that the state-law insurance coverage disputes can properly be resolved by another court, and the GUC Trustee has agreed that the disputes are not within the

---

administrative tasks necessarily incident to the consolidation, preservation, and liquidation of assets in the debtor's estate") (citing *In re Lehal Realty Assocs.*, 101 F.3d at 276). The *ultra vires* exception applies where "the receiver takes possession of property belonging to another." *In re Cumberbatch*, 657 B.R. 683, 698 (Bankr. E.D.N.Y. 2024). That exception is not applicable, as the GUC Trustee is not alleged to have taken property from another. *Nazareno*, 2021 WL 2194570, at *4 (E.D.N.Y. Apr. 28, 2021).

Court's exclusive jurisdiction—as shown by the GUC Trustee's own decision to commence the coverage litigation in the Pennsylvania Court.

Second, they contend that the *Barton* Doctrine does not apply because the Delaware Action merely seeks to resolve insurance coverage disputes under pre-petition contracts. They maintain that such contractual matters fall outside *Barton*'s scope and do not implicate the GUC Trustee's administration of the GUC Trust.

Neither argument has merit. Nothing in the Plan or GUC Trust Agreement authorizes the DE Plaintiff Insurers to sue the GUC Trustee in Delaware—or anyplace else, without first obtaining this Court's approval. In other words, the provisions in the Plan and GUC Trust Agreement authorizing the GUC Trustee to file suits in other courts have no bearing on the application of the *Barton* Doctrine. Under the Plan and GUC Trust Agreement, this Court retains jurisdiction over the Trust Assets, including the insurance policies and the proceeds of those policies.

The DE Plaintiff Insurers' characterization of their Delaware Action as merely involving pre-petition contracts ignores well-settled law that insurance proceeds are property of the bankruptcy estate. *See In re U.S. Lines, Inc.*, 197 F.3d 631, 638 (2d Cir. 1999) ("Indemnity insurance contracts, particularly where the debtor is faced with substantial liability claims within the coverage of the policy, may well be . . . the most important asset of the . . . [the] estate." (citations and internal quotation marks omitted)). A similar argument was rejected in *MF Global.*, where the court held that the insurers violated the *Barton* doctrine by filing proceedings to enforce pre-petition arbitration clauses without first obtaining leave from the bankruptcy court, because such actions interfered with the Plan Administrator's court-sanctioned efforts to marshal and liquidate assets that were property of the estate. *See MF Global,* 562 B.R. at 876-77. Similarly

here, the Delaware Action, by seeking to determine insurance coverage that constitute property of the bankruptcy estate, interferes with the GUC Trust's court-authorized mandate to marshal and liquidate estate assets.

The cases that the DE Plaintiff Insurers rely on are not binding on this Court and, in any event, are plainly distinguishable. In *Carroll v. Abide*, 788 F.3d 502, 506 (5th Cir. 2015), the Fifth Circuit found *Barton* inapplicable due to the district court's withdrawal of jurisdiction from the bankruptcy court, where the trustee's actions were conducted entirely under district court oversight. In *Chua v. Ekonomou*, 1 F.4th 948, 955 (11th Cir. 2021), the Eleventh Circuit found *Barton* did not apply to claims arising from a terminated receivership where no contested property remained under the appointing court's jurisdiction. In *Tufts v. Hay,* 977 F.3d 1204, 1209-10 (11th Cir. 2020), the Eleventh Circuit declined to apply *Barton* because the bankruptcy case had been dismissed and the claims at issue in that action would have no "conceivable effect" on the estate.

Here, by contrast, this Court maintains exclusive and continuing jurisdiction over the bankruptcy estate, as explicitly preserved under the Plan and the GUC Trust Agreement. Unlike the circumstances in *Carroll*, *Chua*, and *Tufts*, where the appointing courts' authority had ceased or the matters raised had no conceivable effect on the estate, this Court's jurisdiction remains, and this Court continues to oversee the Trustee's recovery and consolidation of estate assets, including insurance proceeds the GUC Trustee is pursuing.

Therefore, since the DE Plaintiff Insurers' Delaware Action constitutes a suit against the Trustee in another court, *Barton* applies, which "require[s] leave of the appointing court before a suit may go forward in another court against the trustee." *In re Lehal Realty Assocs.*, 101 F.3d at 276. Because the DE Plaintiff Insurers did not obtain such leave, "[t]he only appropriate remedy,

therefore, is to order cessation of the improper action." *In re Gen. Growth Properties*, 426 B.R. at 75 (internal quotation marks omitted).

## **Whether Retroactive Leave to File the Delaware Action is allowed**

The DE Plaintiff Insurers alternatively argue that even if the *Barton* Doctrine applies, this Court should grant them retroactive leave to proceed with the Delaware Action because the action concerns state law issues better suited for resolution in the Delaware state court. The Court finds no merit to that contention. A complaint filed in violation of the *Barton* Doctrine is void ab initio and lacks subject matter jurisdiction. *See McIntire*, 113 F. Supp. 3d at 774. The jurisdictional defect cannot be cured through retroactive leave. *Id.*

The DE Plaintiff Insurers' reliance on *Certain Underwriters at Lloyd's London - Syndicate 1861 v. Daileader*, No. 22-2038, 2023 WL 185518 (S.D.N.Y. Jan. 13, 2023) ("*Daileader*"), to argue that 28 U.S.C. § 1334(c)(2) mandates the Court to abstain from hearing issues raised in the Delaware Action, is misplaced. *Daileader* did not involve the *Barton* Doctrine and addressed a different issue—whether the federal court should remand a properly removed state court action based on mandatory abstention principles. *Id.* at *4. The court's analysis in that case turned on the strong presumption favoring remand where federal jurisdiction is doubtful. *Id.* Those considerations are not relevant here, as this case involves the Court's authority to prevent unauthorized suits against a court-appointed trustee under the *Barton* Doctrine, rather than a federal court's discretion to remand a properly removed state court action.

Moreover, courts have denied retroactive leave to circumvent *Barton* Doctrine even in cases involving strong competing policy interests. For instance, the court denied retroactive leave to file an arbitration despite the "strong preference in favor of arbitration." *McIntire*, 113 F. Supp. 3d at 775. The court emphasized that the *Barton* Doctrine implements "major policies deemed to

be of overriding importance." *Id.* at 775. Here, the DE Plaintiff Insurers have not identified any comparable policy interests that would justify departing from the general rule that actions filed in violation of the *Barton* Doctrine cannot be salvaged through retroactive leave.

While the DE Plaintiff Insurers point to the comprehensiveness of the Delaware Action compared to the Pennsylvania Action to support their request for retroactive leave, that argument misses the mark. The Delaware Action's alleged merits are irrelevant because the action is void ab initio due to the DE Plaintiff Insurers' failure to obtain this Court's leave before filing. *See Id.* 774. Moreover, their argument that the Court must abstain is likewise irrelevant because, having found that the *Barton* Doctrine bars the exercise of subject matter jurisdiction over the Delaware Action, the Court cannot—and need not—assess its purported comprehensiveness, alleged merits, or the necessity for abstention.

Accordingly, the Court declines to grant the DE Plaintiff Insurers retroactive leave to proceed with the Delaware Action.

## <u>CONCLUSION</u>

The *Barton* Doctrine bars the DE Plaintiff Insurers' Delaware Action against the Trustee that was filed without leave, and the Court declines to allow the DE Plaintiff Insurers to proceed with their Delaware Action. Accordingly, the Delaware Action is enjoined, and the DE Plaintiff Insurers are ordered to dismiss their Delaware Action. DE Plaintiff Insurers' Motion is DENIED.

IT IS SO ORDERED.

Dated:  January 22, 2025
      New York, New York

                                                        /s/ *James L. Garrity, Jr.*
                                                        Hon. James L. Garrity, Jr.
                                                        U.S. Bankruptcy Judge